**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Teamsters Local 617 Pension and Welfare Funds, on behalf of itself and all other similarly situated,<br><br>       Plaintiff,<br><br>vs.<br><br>Apollo Group, Inc.; John G. Sperling; Todd S. Nelson; Kenda B. Gonzales; Peter V. Sperling; Daniel E. Bachus; Dino J. Deconcini, J. Jorge Klor De Alva; Thomas C. Wier; John R. Norton, III; Hedy F. Governar; John Blair,<br><br>       Defendants. | No. 2:06-CV-2674-PHX-RCB<br><br>**ORDER** |

This is a securities fraud class action brought pursuant to the Securities Exchange Act of 1934 as amended by the Private Securities Litigation Reform Act of 1995 ("the Reform Act" or "the PSLRA"). Currently pending before the court are four competing motions, which were filed on January 3, 2007, wherein the movants are each seeking appointment as lead plaintiff pursuant to section 78u-4(a)(3) of the Reform Act. Additionally, the movants are seeking court approval of their respective counsel as lead counsel

1  and liaison counsel in accordance with section 78u-4(a)(3)(B) (v)

2  of that Act.  Having determined that oral argument is unnecessary,

3  the court rules as follows.

4       Teamsters Local 617 Pension and Welfare Funds ("Teamsters

5  Local"), which filed the class action complaint herein, filed the

6  first motion for appointment as lead plaintiff (doc. 21).  It is

7  seeking approval of the the law firm of Schoengold Sporn Laitman &

8  Lometti, P.C. as lead counsel, and Dyer & Butler, LLP as liaison

9  counsel.  The second motion for appointment as lead plaintiff was

10  filed by Folksam Asset Management ("Folksam Asset"), and it seeks

11  approval of Motley Rice LLC as lead counsel and Mitchell & Forest,

12  P.C. as liaison counsel (doc. 25).  The Pension Trust Fund for

13  Operating Engineers ("Operating Engineers Fund") filed the third

14  motion seeking appointment as lead plaintiff, and for approval of

15  the law firm of Lerach Coughlin Stoia Geller Rudman & Robbins LLP

16  ("Lerach Coughlin") to serve as lead counsel and the law firm of

17  Buckley & King to serve as liaison counsel (doc. 30).

18       The fourth and final motion for appointment as lead plaintiff

19  was filed by the Bricklayers Fringe Benefit Fund, the Louisiana

20  District Attorneys' Retirement System; Capitalia Asset Management

21  SCR Spa and Capitalia Investment Management S.A. (collectively "the

22  Apollo Institutional Investors Group" or "AIIG").  See Doc. 34 at

23  1.  AIIG is seeking approval of Pomerantz Haudek Block Grossman &

24  Gross LLP and Labaton Sucharow & Rudoff LLP as co-lead counsel and

25  Martin & Bonnett, P.L.L.C. as liaison counsel.  In addition to

26  filing the enumerated motions, the movants filed proposed pre-trial

27  orders aimed at management of this complex litigation.

28

1    Responses to these various motions were timely filed by two of

2    the putative plaintiffs – the Operating Engineers Fund (doc. 50)

3    and Folksam Asset (doc. 49), as well as by defendants (doc. 48).

4    The Apollo Institutional Investors Group also filed a response, but

5    it was one day late.  The Operating Engineers Fund seems to suggest

6    that under Local Rule 7.2(i), the court should deem this untimely

7    opposition as consent to granting its motion.  See Doc. 53 at 2.

8    There is no need to invoke that Rule however because although AIIG

9    continues to pursue its own appointment as lead plaintiff, in its

10   response, tellingly, it concedes that the Operating Engineers

11   "still has . . . greater losses than the other movants[,]"

12   including AIIG.  See Doc. 51 at 4.

13   Folksam Asset's response is equally telling in that it

14   expressly indicates that it "does *not* oppose the Operating

15   Engineer's appointment [as lead plaintiff][.]" Doc. 49 at 3

16   (emphasis added).  Nor does Folksam Asset "question the ability of

17   [Operating Engineer Fund's] proposed counsel," Lerach Coughlin.

18   Id.  Even though it is "not tak[ing] the position that Operating

19   Engineers should not be appointed[]" as lead plaintiff, Folksam

20   Asset raises the specter of a conflict if the court appoints that

21   Fund as lead plaintiff and approves its selected counsel.  This

22   conflict which Folksam Asset anticipates (incorrectly as it turns

23   out) is due to the fact that Lerach Coughlin formerly represented

24   Alaska Electrical Pension Fund, a plaintiff in a related

25   stockholder derivative action against Apollo Group, Inc., one of

26   the defendants herein.  See Doc. 50, exh. B thereto (Alaska

27   Electrical Pension Fund, Derivatively on Behalf of Apollo Group,

28

1  Inc. v. Sperling, et al., No. CV-06-2124-PHX-ROS (D. Ariz. Jan. 4,
2  2007) (granting plaintiff's *ex parte* application for an order
3  approving the substitution of Provost Umphrey Law Firm, LLP. for
4  Lerach Coughlin).

5      Of equal if not more import is that defendants are "tak[ing]
6  no position" as to any of these motions.  Defs. Resp. (doc. 48) at
7  2.  Moreover, defendants do not even hint at the possibility that
8  Lerach Coughlin may have a conflict.  At this juncture defendants
9  only concern is that the various proposed pre-trial management
10 orders "seek[] to impose obligations on [them] beyond the
11 requirements of the Federal Rules of Civil Procedure or otherwise
12 may be premature[.]" Id.  Therefore, defendants have submitted
13 their own proposed pre-trial order for the court's consideration.
14 If the court does not sign that proposed order, defendants are
15 seeking an order requiring appointed lead plaintiff, through its
16 counsel, "to meet and confer pursuant to Rule 26(f) of the Federal
17 Rules of Civil Procedure . . . to negotiate a case management order
18 for the Court's consideration." Id.  The Operating Engineers Fund
19 has "no[] objection to negotiating a case management order pursuant
20 to Fed. R. Civ. P. 26(f)[,]" as defendants urge.  See Doc. 53 at 2,
21 n. 1.

22                              ***Background***

23     Broadly stated, the class action complaint alleges that
24 defendant Apollo Group and various of its individual officers and
25 directors engaged in securities fraud, including backdating stock
26 options.  Amidst a "nation-wide" backdating options scandal, in
27 June 2006, Apollo Group "flatly denied" backdating stock options
28

however.  Doc. 1 at 2, ¶ 4.  According to the complaint, a few months later, on October 18, 2006, Apollo Group "for the first time disclosed that '[v]arious deficiencies in the process of granting and documenting stock options have been identified[.]'" Id. at 3, ¶ 6.  At that same time, Apollo Group "disclosed" a "possible restatement of [its] financial statements when the potential errors are quantified and assessed." Id. at 3, ¶ 7.  "The reaction of the markets to this news was," the complaint alleges, "sharp and swift[,]" with a "drop" in one day of "22.86% of Apollo Group's stock prices. Id. at 3, ¶ 8.

Based upon the foregoing, the complaint further alleges that during the Class Period defendants violated Sections 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, by making materially false and misleading statements "in an effort to maintain artificially high market prices for Apollo's securities[.]" Id. at 24, ¶ 83.  Plaintiff is also asserting a claim for "control person" liability against the individual defendants pursuant to section 20(a) of that Act.  See id. at 27-28, ¶¶ 92-95.

## Discussion

## I.  Lead Plaintiff

### A.  Governing Legal Standards

#### 1.  Notice

The PSLRA sets forth a detailed procedure which putative plaintiffs must follow when filing a securities fraud class action such as this.  The first plaintiff to file such an action must, within 20 days of filing, "cause to be published, in a widely

1  circulated national business-oriented publication or wire service,

2  a notice[.]" 15 U.S.C. § 78u-4(a)(3)(A)(i). Such notice "shall .

3  . . advis[e] members of the purported plaintiff class . . . of the

4  pendency of the action, the claims asserted therein, and the

5  purported class period[.]" 15 U.S.C. § 78u-4(a)(3)(A)(i)(I). The

6  undisputed purpose of the PSLRA's notice requirement is "to ensure

7  that the most adequate plaintiff emerges to the position of

8  representing the class." Employers-Teamsters v. Anchor Capital

9  Advisors, 2007 WL 2325079, at *2, n.2 (9th Cir. Aug. 16, 2007).

10        To that end, class members who want to be appointed lead

11  plaintiff must make a motion within 60 days of that statutorily

12  mandated publication. See 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). "Any

13  class member, regardless of whether he has filed a complaint, may

14  move for appointment as lead plaintiff." Ferrari v. Gisch, 225

15  F.R.D. 599, 602 (C.D.Ca. 2004) (citing 15 U.S.C. § 78u-

16  4(a)(3)(B)(i)). If more than one action is filed, only the

17  plaintiff in the first filed action is required to publish notice.

18  See 15 U.S.C. § 78u(4)(a)(3)(A)(ii). However, "[e]ach prospective

19  lead plaintiff must provide a sworn certification representing

20  inter alia that he or she has read the complaint, did not purchase

21  the security at the direction of counsel or in order to participate

22  in any private action, and is willing to serve as a representative

23  party." Richardson v. TVIA, Inc., 2007 WL 1129344, at *3 (N.D.

24  Cal. April 16, 2007) (citing 15 U.S.C. § 78u-4(a)(2)(A)(i)-(iii)).

25        On November 2, 2006, the Teamsters Local filed its class

26  action complaint and published the statutorily mandated notice on

27  Yahoo! Finance. See Doc. 22 (Decl'n of Jay. P. Saltzman (Jan. 3,

28

1  2007)), exh. 2 thereto.  Each of the movants timely brought their

2  respective motions under the Reform Act for appointment as lead

3  plaintiff and approval of lead counsel.  Each movant has likewise

4  included the statutorily required certification.[1]  Despite the lack

5  of serious challenges to the appointment of the Operating Engineers

6  Fund as lead plaintiff,[2] the court must still follow the PSRLA's

7  "clear path" for selecting a lead plaintiff thereunder.  See  In re

8  Cavanaugh, 306 F.3d 726, 729 (9th Cir. 2002).

9                    ***2.  Presumptive Lead Plaintiff***

10                        ***a.  Financial Stake***

11      The PSLRA requires that the court "'shall appoint as lead

12  plaintiff the member or members of the purported plaintiff class

13  that [it] determines to be most capable of adequately representing

14  the interests of the class members.'"  Anchor Capital Advisors, 2007

15  WL  2325079,  at  *2  (quoting  15  U.S.C.  §  78u-4(a)(3)(B)(i)).

16  Recognizing that the PSLRA "narrowly" defines "most capable[,]"

17  the Ninth Circuit has held that "[t]he 'most capable' plaintiff-and

18  hence the lead plaintiff-is the one who has the greatest stake in

19  the outcome of the case, so long as he meets the requirements of

20  Rule 23."  Cavanaugh, 306 F.3d at 729 (footnote omitted).  Thus, in

21  interpreting the PSLRA, the Ninth Circuit has set forth "a simple

22

23

24      [1]      See Doc. 22 (Saltzman Decl'n.), exh. B thereto; Doc. 27 (Decl'n of
   Lauren Antonino (Jan. 3, 2007)), exh. A thereto; Doc. 33 (Decl'n of Michael
25  Salcido (Jan. 3, 2007)), exh. C thereto; and Doc. 35 (Decl'n of Patrick V.
   Dahlstrom)), exh. B thereto.

26      [2]      In its Reply, Folksam Asset does contest appointment of the Apollo
27  Institutional Investors Group as lead plaintiff.  But aside from noting the
   possibility of a conflict in terms of Lerach Coughlin serving as lead counsel (a
   conflict which Folksam admits "need not [be] determine[d] at this stage"),
28  Folksam is not challenging the propriety of appointing the Operating Engineers
   Fund as lead plaintiff.  See Doc. 54 at 4-5.

1  three-step process for identifying the lead plaintiff" thereunder.

2  Id.  As previously noted, the first step is notice.

3      Step two focuses on "the losses allegedly suffered by the

4  various plaintiffs[.]" Id.  In this regard, "[t]he district court

5  must compare the financial stakes of the various plaintiffs and

6  determine which one has the most to gain from the lawsuit." Id. at

7  730 (footnote omitted).  The significance of this inquiry is

8  evident from the Cavanaugh Court's recognition that "a

9  straightforward application of the {PSLRA], . . . provides no

10 occasion for comparing plaintiffs with each other on any basis

11 *other than* their financial stake in the case." Id. at 732

12 (emphasis added).

13      Next, the court "must . . . focus its attention on *that*

14 plaintiff and determine, based on the information he has provided

15 in his pleadings and declarations, whether he satisfied the

16 requirements of Rule 23(a), in particular those of 'typicality' and

17 'adequacy.'" Id. (footnote omitted) (emphasis in original).  "If

18 the plaintiff with the largest financial stake in the controversy

19 provides information that satisfies these requirements, he becomes

20 the *presumptively most adequate* plaintiff." Id. (emphasis added).

21 On the other hand, "[i]f the plaintiff with the greatest financial

22 stake does not satisfy the Rule 23(a) criteria, the court must

23 repeat the inquiry, this time considering the plaintiff with the

24 next-largest financial stake, until it finds a plaintiff who is

25 both willing to serve and satisfied the requirements of Rule 23."

26 Id.  "This process must be  repeated sequentially until all

27 challenges have been exhausted." Id. at 731 (citation and footnote

28 omitted).

1    Because the motions for appointment as lead counsel were filed
2    practically simultaneously, the movants were unaware of the
3    financial losses of the others when they filed their respective
4    motions.   For instance, initially Folksam Asset declared that
5    "[u]pon information and belief," it "has the 'largest financial
6    interest in the relief sought by the class' of any class member who
7    has appeared[.]" Doc. 26 at 9.   In a similar vein, the Apollo
8    Institutional Investors Group indicated that "[a]s of the time of
9    the filing of this motion [January 3, 2007]," it "believes that it
10   has the largest financial interest of anyone in the relief sought
11   by the Class." Doc. 34 at 11.

12       A review of the pleadings and declarations undisputably shows,
13   however, that it is the Operating Engineers Fund, a large
14   institutional investor, which allegedly sustained the largest
15   losses -- $12,334,428.51.   Doc. 33 (Salcido Decl'n), exh. B
16   thereto.  The next two putative plaintiffs run a distant second in
17   terms of claimed losses.  Folksam Asset "acquired 95,214 shares of
18   Apollo common stock . . . during the . . . Class Period (27,697 net
19   shares), had net expenditures of over $1.03 million thereon, and
20   suffered losses of over $1.41 million." Doc. 26 at 9 (citing doc.
21   27 (Antonino Decl'n), exh. A thereto (doc. 27-2) at 2, ¶ 8; and
22   exh. C (doc. 27-4) thereto).  Similarly, the Apollo Institutional
23   Investors Group "purchased . . . 97,177 shares of Apollo common
24   stock; . . . expended $5,765,457 for their shares of [that] stock;
25   . . . retained 60,135 net retained shares; and . . . suffered
26   $1,416,264 in losses related to their purchases." Doc. 34 at 8
27   (citing doc. 35 (Dahlstom Decl'n), exh. F thereto) (other citations
28   omitted).

1    The fourth movant, Teamsters Local sustained drastically lower
2  losses than the Operating Engineers Fund, and less than the other
3  two movants.  The Local "expended approximately $1,610,479 and
4  purchased 25,550 shares of Apollo [stock] during the Class
5  Period[,] sustaining "estimated" losses of "approximately
6  $583,244."  Doc. 21 at 2; and doc. 22 (Saltzman Decl'n), exh. C
7  thereto.

8    Consistent with the Reform Act which "provides in categorical
9  terms that the *only* basis on which a court may compare plaintiffs
10  competing to serve as lead is the size of their final stake in the
11  controversy[,]" this court easily finds that the Operating
12  Engineers Fund has the largest financial stake in this litigation.
13  See Cavanaugh, 306 F.3d at 732 (emphasis in original).  Operating
14  Engineers Fund, therefore, is the "most adequate plaintiff."  See
15  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Thus, the court will next, as
16  it must,"focus its attention" on the Operating Engineers Fund to
17  see whether it satisfies the typicality and adequacy requirements
18  of Fed. R. Civ. P. 23.  See Cavanaugh, 306 F.3d at 730 ("Once it
19  determines which plaintiff has the biggest stake, the court must
20  appoint that plaintiff as lead, unless it finds that he does not
21  satisfy the typicality or adequacy requirements.")

22    The court will limit its analysis under Rule 23 because "[a]
23  wide ranging analysis is not appropriate to determine whether [the
24  Operating Engineers Fund] has made a prima facie showing that [it]
25  satisfies the requirements of Rule 23[.]" See Tanne v. Autobytel,
26  Inc., 226 F.R.D. 659,666 (C.D. Cal. 2005).  Indeed, examination of
27  the other two factors under Rule 23, numerosity and the existence
28  of common questions of law or fact, "is deferred until the lead

1  plaintiff moves for class certification[]" under that Rule.

2  *Richardson*, 2007 WL 1129344, at *4.

3  　　　　　　　　*b.  Typicality*

4  　　　"Rule 23(a)(3) requires that 'the claims or defenses of the

5  representative parties are typical of the claims or defenses of the

6  class.'" <u>Dukes v. Wal-Mart, Inc.</u>, 474 F.3d 1214, 1232 (9th Cir.

7  2007) (quoting Fed. R. Civ. P. 23(a)(3)).  Under that Rule's

8  "permissive standards, representative claims are 'typical' if they

9  are reasonably coextensive with those of absent class members; they

10  need not be substantially identical."  <u>Id.</u> (internal quotation

11  marks and citation omitted).  As the Ninth Circuit has recognized

12  on more than one occasion, "[s]ome degree of individuality is to be

13  expected in all cases, but that specificity does not necessarily

14  defeat typicality."  <u>Id.</u> (citing <u>Staton v. Boeing Co.</u>, 327 F.3d

15  938, 957 (9th Cir. 2003)).  Thus, "[t]he test for typicality[]" as

16  the defined by the Ninth Circuit, "is whether other members have

17  the same or similar injury, whether the action is based on conduct

18  which is not unique to the named plaintiffs, and whether other

19  class members have been injured by the same conduct."  <u>Id.</u>

20  (internal quotation marks and citations omitted).

21  　　　That test is easily met here.  The Operating Engineers Fund,

22  as with the other putative class members, purchased Apollo Group

23  stock during the Class Period.  And, also just like the other

24  putative class members, the Operating Engineers Fund was adversely

25  affected by the allegedly false and misleading statements

26  defendants made so as to artificially inflate the value of the

27  Apollo Group's stock.  Further, the Operating Engineers Fund, as

28  well as the other putative class members suffered financial losses

1  allegedly as a result of defendants' violations of the securities

2  laws.

3         **c. _Adequacy_**

4     Having found that the Operating Engineers Fund's claims are

5  typical of the class, the court will next briefly consider whether

6  that Fund can adequately "protect the interests of the class[]" in

7  accordance with Rule 23.  The adequate representation element of

8  Rule 23 "requires: (1) that the proposed representative Plaintiffs

9  do not have conflicts  of interest with the proposed class, and (2)

10  that  Plaintiffs  are  represented  by  qualified  and  competent

11  counsel."  Dukes, 474 F.3d at 1233 (citations omitted).

12     As with the typicality requirement, the adequacy requirement

13  is readily met here.  There is no evidence that the Operating

14  Engineers Fund is in any way antagonistic to, or has a conflict

15  with, any putative member of the class.  What is more, given the

16  sizeable financial losses (over $12 million) which it allegedly

17  sustained, plainly the Operating Engineers Funds has a more than

18  "sufficient  interest  in  the  outcome  of  th[is]  case  to  ensure

19  vigorous  advocacy."  See  Ferrari,  225  F.R.D.  at  607  (citation

20  omitted).    Further, there is no doubt that in retaining Lerach

21  Coughlin as its lead counsel, the Operating Engineers Fund has

22  chosen "qualified and competent counsel."  See  In re Enron Corp.

23  Securities, 2006 WL 4381143, at *20 (S.D. Tex. 2006) (describing

24  Lerach Coughlin as a "firm . . . comprised of probably the most

25  prominent securities class action attorneys in the country[]").

26  Thus because the Operating Engineers Fund is the plaintiff with the

27  largest  financial  losses,  and  because  it  satisfies  both  the

28  typicality and adequacy requirements, it is "the presumptively most

1   adequate plaintiff[,]" and hence is "entitled to lead plaintiff
2   status[.]" See Cavanaugh, 306 F.3d at 730 (internal quotation marks
3   and footnote omitted) and 732.

4          **3.  Rebuttal**

5          The third step under Cavanaugh is that a court must "give
6   other plaintiffs an opportunity to rebut the presumptive lead
7   plaintiff's showing that it satisfies Rule 23's typicality and
8   adequacy requirements." Cavanaugh, 306 F.3d at 730. The Cavanaugh
9   Court stressed the fact "[t]hat the presumption is rebuttable does
10  not mean that it may be set aside for any reason that the court may
11  deem sufficient." Id. at 729 n.2.  "Rather, the statute provides
12  that the presumption 'may be rebutted *only upon proof* . . . that
13  the presumptively most adequate plaintiff' does not satisfy the
14  adequacy or typicality requirements of Rule 23." Id. (quoting 15
15  U.S.C. § 78u-4(a)(3)(B)(iii)(II)) (emphasis added).  The record in
16  the present case is completely void of any such proof.  Thus, after
17  engaging in the  mandatory sequential statutory process, the court
18  is left with the firm conviction that the Operating Engineers Fund
19  is "the most capable of adequately representing the interests of
20  the  class  members."   See  15  U.S.C.  §  78u-4(a)(3)(B)(i).
21  Accordingly, the court grants that Fund's motion for appointment as
22  lead plaintiff under the PSLRA.

23         Before addressing the issue of lead counsel, the court is
24  compelled to address Folksam Asset's suggestion, in its Reply that
25  if the court is "concerned about this possible conflict" due to the
26  fact that Lerach Coughlin was formerly counsel in one of the
27  related stockholder's derivative actions, then it should appoint
28  Folksam Asset as "co-lead plaintiff and its proposed lead counsel

1  as co-lead counsel[.]" Doc. 54 at 5.   Significantly, defendants

2  have not raised any such "concern;" nor does the court have one.

3  Thus, it declines Folksam Asset's request that "at a minimum" it be

4  appointed co-lead plaintiff with the Operating Engineers Fund.  See

5  id.   In denying this request, the court adopts the sound reasoning

6  of the court in Tanne:

7           Most of the cases appointing co-lead plaintiffs
           predate Cavanaugh, or are from jurisdictions
8           outside the Ninth Circuit.  The rationales
           they offer for the appointment of co-lead
9           plaintiffs, moreover, appear to be fundamentally
           at odds with Cavanaugh's interpretation of the PSLRA
10          and its outlining of the process to be used in
           identifying a lead plaintiff.  Additionally,
11          [Folksam Asset] has not shown that the appointment
           of co-lead plaintiffs is preferable to the appointment
12          of a single lead plaintiff in this case.
           Rather, the court concludes, a co-lead plaintiff
13          structure is unnecessary[.]

14  See Tanne, 226 F.R.D. at 673.

15  **II.  *Lead & Liaison Counsel***

16      Once a lead plaintiff is appointed, the Reform Act mandates

17  that plaintiff "shall, *subject to the approval of the court*, select

18  and retain counsel to represent the class."   15 U.S.C. § 78u-

19  4(a)(3)(B)(v) (emphasis added).   "A court may disturb the lead

20  plaintiff's choice of counsel only if it appears necessary to

21  'protect the interests of the class.'" Tanne, 226 F.R.D. at 673

22  (citing 15 U.S.C. § 78u-(a)(3)(B)(iii)(II)(aa)).  Here, there is no

23  need to "disturb" the Operating Engineer Fund's choice of Lerach

24  Coughlin to serve as lead counsel and Buckley King to serve as

25  liaison counsel.  A careful review of the resumes for each of those

26  firms (doc. 33 (Salcido Decl'n), exhs. D and E thereto), persuades

27  the court that both possess the requisite degree of experience and

28  qualifications  to  adequately  represent  the  interests  of  the

1   putative class.   Thus,  the court approves the Operating Engineer

2   Fund's selection of Lerach Coughlin to serve as lead counsel and

3   the law firm of Buckley King to serve as liaison counsel, "but

4   cautions that this must not result in the duplication of any

5   expenses to the class."[3]   See Richardson, 2007 WL 1129344, at *6.

6                              ***Conclusion***

7          For the reasons set forth herein, IT IS ORDERED that the

8   motion  by  Pension  Trust  Fund  for  Operating  Engineers  for

9   appointment as lead plaintiff and for approval of the selection of

10  the law firm of Lerach Coughlin Stoia Geller Rudman & Robbins LLP

11  to serve as lead counsel, and Buckley King to serve as liaison

12  counsel (doc. 30) is GRANTED;

13         IT IS FURTHER ORDERED that the motions of the other movants,

14  Teamsters Local 617 Pension and Welfare Funds (doc. 21); Folksam

15  Asset Management (doc.  25); and the Apollo Institutional Investors

16  Group (doc. 34) are DENIED; and

17         IT IS FURTHER ORDERED that within thirty (30) days of the date

18  hereof, Lerach Coughlin, as lead counsel shall, negotiate and file

19  with the court a proposed pre-trial case management order.

20         DATED this 10th day of September, 2007.

21

22

23                                  _____
                                            Robert C. Broomfield
24                                    Senior United States District Judge

25  Copies to all counsel of record

26

27       [3]      "The court approves the appointment of liaison counsel on the
        understanding that its role will be limited to procedural advice and services
28      related to litigating in this district."   Tanne, 226 F.R.D. at 673 (citation
        omitted).
                                      - 15 -