1   BUCKLEY KING
    MICHAEL SALCIDO, No. 009828
2   2020 North Central Avenue, Suite 1120
    Phoenix, AZ  85004
3   Telephone:  602/424-2550
    602/424-2566 (fax)
4   salcido@buckleyking.com

5   Liaison Counsel

6   COUGHLIN STOIA GELLER
       RUDMAN & ROBBINS LLP
7   JEFFREY W. LAWRENCE
    CHRISTOPHER M. WOOD
8   100 Pine Street, Suite 2600
    San Francisco, CA  94111
9   Telephone:  415/288-4545
    415/288-4534 (fax)
10  jeffreyl@csgrr.com
    cwood@csgrr.com
11
    Lead Counsel for Lead Plaintiff
12
                    UNITED STATES DISTRICT COURT
13
                         DISTRICT OF ARIZONA
14
    TEAMSTERS LOCAL 617 PENSION        )  No. 2:06-cv-02674-RCB
15  AND WELFARE FUNDS, on behalf of    )
    itself and all other similarly situated,  )  CLASS ACTION
16                                     )
                          Plaintiff,   )  LEAD PLAINTIFF'S OMNIBUS
17                                     )  OPPOSITION TO DEFENDANTS'
        vs.                            )  MOTIONS TO DISMISS THE SECOND
18                                     )  AMENDED COMPLAINT FOR
    APOLLO GROUP, INC., et al.,        )  VIOLATIONS OF THE FEDERAL
19                                     )  SECURITIES LAWS
                          Defendants.  )
20  _____ )  ORAL ARGUMENT REQUESTED

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................. 1

II.  BACKGROUND ................................................................................. 3

III.  PROCEDURAL HISTORY ................................................................ 5

    A.  In a March 31, 2009 Order, the Court Denied Defendants' Motions to Dismiss .............................................................................. 5

        1.  Lead Plaintiff's Section 10(b) Claims Were Upheld in Part ............. 5

        2.  Lead Plaintiff's Section 20(a) Claims Are Based on the Sustained Section 10(b) Claims .......................................................... 7

        3.  The Insider Trading Claim Against Blair Was Upheld in Part ......... 7

    B.  Lead Plaintiff's Amended Complaint Pleads the Reasons for Falsity with Particularity as the Court Required .................................... 8

        1.  Lead Plaintiff's Falsity Allegations Have Been Streamlined as the Court Directed .............................................................................. 8

        2.  The Amended Complaint Provides Additional Allegations of Scienter and Control ........................................................................... 9

IV.  ARGUMENT ..................................................................................... 10

    A.  The Amended Complaint Alleges Falsity with Particularity ...................... 10

        1.  Apollo's Restatement Admits Its Earnings Statements Were False and Misleading ......................................................................... 10

        2.  False Statement Allegations Regarding APB 25 and IRS Code Section 162(m) Have Been Streamlined to Satisfy the PSLRA ................................................................................................ 12

        3.  The Amended Complaint Pleads False Sarbanes-Oxley Act of 2002 Certifications with Particularity ................................................ 13

        4.  The Amended Complaint Explains Why the Denials of Misconduct Were False When Made ................................................ 13

    B.  Defendants Cannot Meaningfully Contest Falsity, and So Confuse Falsity with Scienter – Allegations Which This Court Has Already Upheld ............................................................................................... 13

    C.  The Amended Complaint Adequately States a Claim for Control Person Liability ............................................................................................ 16

    D.  The Amended Complaint Adequately States a Claim for Insider Trading Against Blair .................................................................................. 17

1

2                                                                              **Page**

3       E.      Defendants' *De Facto* Motion for Reconsideration Should Be
                Rejected ................................................................................ 19

4
                1.      Defendants' "Backdating" Challenges Must Again Be
5                       Rejected ...................................................................... 20

6               2.      Having Already Found Lead Plaintiff to Have Adequately
                        Alleged Scienter, Defendants' Renewed Assertions Should
7                       Once Again Be Rejected .............................................. 26

8               3.      Defendants' Verbatim Repetition of Already Rejected
                        Facially Implausible Loss Causation Assertions Should Be
9                       Again Rejected ............................................................ 30

10      F.      Defendants' Motion to Strike Should Be Denied as the Allegations
                Are Relevant to Lead Plaintiff's Claims ...................................... 31

11  V.  CONCLUSION ................................................................................... 32

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## CASES

*380544 Can., Inc. v. Aspen Tech., Inc.*,
    544 F. Supp. 2d 199 (S.D.N.Y. 2008) ................................................................. 14

*Berger v. Xerox Ret. Income Guar. Plan*,
    231 F. Supp. 2d 804 (S.D. Ill. 2002),
    *aff'd*, 338 F.3d 755 (7th Cir. 2003) ............................................................... 10, 20

*Berson v. Applied Signal Tech., Inc.*,
    527 F.3d 982 (9th Cir. 2008) ................................................................. 28

*Caiola v. Citibank, N.A.*,
    295 F.3d 312 (2d Cir. 2002) ................................................................. 28

*Chan v. Orthologic Corp.*,
    No. 96-1514 PHX RCV, 1998 WL 1018624
    (D. Az. Feb. 5, 1998) ................................................................. 18

*Christianson v. Colt Indus. Operating Corp.*,
    486 U.S. 800 (1988) ................................................................. 19

*Edmonds v. Getty*,
    524 F. Supp. 2d 1267 (W.D. Wash. 2007) ................................................................. 20

*Ganino v. Citizens Utils. Co.*,
    228 F.3d 154 (2d Cir. 2000) ................................................................. 16

*Gebhardt v. ConAgra Foods, Inc.*,
    335 F.3d 824 (8th Cir. 2003) ................................................................. 16, 28

*Glazer Capital Mgmt., LP v. Magistri*,
    549 F.3d 736 (9th Cir. 2008) ................................................................. 14

*Helwig v. Vencor, Inc.*,
    251 F.3d 540 (6th Cir. 2001) ................................................................. 28

*In re Amgen, Inc. Sec. Litig.*,
    544 F. Supp. 2d 1009 (C.D. Cal. 2008) ................................................................. 17

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
    324 F. Supp. 2d 474 (S.D.N.Y. 2004) ................................................................. 11, 14

**Page**

*In re CNET Networks, Inc.*,
483 F. Supp. 2d 947 (N.D. Cal. 2007) ................................................... 23

*In re Comverse Tech., Inc. Sec. Litig.*,
543 F. Supp. 2d 134 (E.D.N.Y. 2008) ................................................... 29

*In re Countrywide Fin. Corp. Sec. Litig.*,
588 F. Supp. 2d 1132 (C.D. Cal. 2008) .................................................. 31

*In re Cylink Sec. Litig.*,
178 F. Supp. 2d 1077 (N.D. Cal. 2001) .......................................... 11, 14

*In re Finisar Corp. Derivative Litig.*,
542 F. Supp. 2d 980 (N.D. Cal. 2008) ................................................... 22

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008),
*cert. denied*, 129 S. Ct. 1993 (2009) ............................................... 6, 31

*In re Juniper Networks, Inc. Sec. Litig.*,
542 F. Supp. 2d 1037 (N.D. Cal. 2008) ................................................ 29

*In re Monster Worldwide, Inc. Sec. Litig.*,
251 F.R.D. 132 (S.D.N.Y. 2008) .......................................................... 16

*In re Openwave Sys. S'holder Derivative Litig.*,
503 F. Supp. 2d 1351 (N.D. Cal. 2007) ..................................... 2, 21, 22

*In re THQ, Inc. Derivative Litig.*,
No. BC 357 600, 2007 WL 4990689
(Cal. Super. Ct. Oct. 11, 2007) ............................................................ 12

*In re VeriFone Sec. Litig.*,
784 F. Supp. 1471 (N.D. Cal. 1992),
*aff'd*, 11 F.3d 865 (9th Cir. 1993) ....................................................... 18

*In re Zoran Corp. Derivative Litig.*,
511 F. Supp. 2d 986 (N.D. Cal. 2007) ...................................... 11, 22, 29

*Institutional Investors Group v. Avaya, Inc.*,
564 F.3d 242 (3d Cir. 2009) .......................................... 4, 13, 29, 32

**Page**

*Johnson v. Aljian*,
    490 F.3d 778 (9th Cir. 2007),
    *cert. denied*, 128 S. Ct. 1650 (2008) ..................................................... 19

*Ley v. Visteon Corp.*,
    543 F.3d 801 (6th Cir. 2008)............................................. 10, 14, 15

*Lormand v. US Unwired, Inc.*,
    565 F.3d 228 (5th Cir. 2009)...................................................... 31

*Maniscalco v. Brother Int'l Corp. (USA)*,
    No. 06-CV-04907 (FLW), 2009 U.S. Dist. LEXIS 52188
    (D.N.J. June 19, 2009)....................................................... 16

*Marksman Partners, L.P. v. Chantal Pharm. Corp.*,
    927 F. Supp. 1297 (C.D. Cal. 1996)................................... 16

*Middlesex Ret. Sys. v. Quest Software Inc.*,
    527 F. Supp. 2d 1164 (C.D. Cal. 2007).................... 11, 24, 29

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993) ............................................... 18

*Pirraglia v. Novell, Inc.*,
    339 F.3d 1182 (10th Cir. 2003)..................................... 24, 25

*Plymouth County Ret. Ass'n v. Schroeder*,
    576 F. Supp. 2d 360 (E.D.N.Y. 2008)................................ 29

*Provenz v. Miller*,
    102 F.3d 1478 (9th Cir. 1996)........................................... 30

*Rosenberg v. Gould*,
    554 F.3d 962 (11th Cir. 2009)............................ 26, 27, 28, 29

*Siemers v. Wells Fargo & Co.*,
    No. C 05-04518 WHA, 2007 U.S. Dist. LEXIS 31287
    (N.D. Cal. Apr. 17, 2007)................................................. 16

*United Techs. Corp. v. Mazer*,
    556 F.3d 1260 (11th Cir. 2009) ........................................ 24

**Page**

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
      §78j(b) .............................................................................................. *passim*
      §78t(a) .......................................................................... 7, 9, 17, 32
      §78t-1 ............................................................................... 7, 18, 19
      §78u-4(b)(1) ............................................................................ 13
      §7201, *et seq*. ............................................................ 10, 13, 14, 15

Publ. L. No. 104-67,
      109 Stat. 737 (1995) ....................................................... *passim*

Fed. R. Civ. P.
      9(b) .......................................................................................... 1

17 C.F.R.
      §10b-5 ..................................................................................... 18

**SECONDARY AUTHORITIES**

Accounting Principles Board Opinion
      No. 25 ........................................................................... *passim*

Internal Revenue Service Code
      §162(m) ......................................................... 3, 12, 13, 14

*SEC Staff Accounting Bulletin: No. 99 – Materiality,*
      64 Fed. Reg. 45151 (Aug. 19, 1999) ................................ 15, 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.      INTRODUCTION

On March 31, 2009, the Court issued a 138-page Order denying Apollo Group, Inc.'s ("Apollo" or the "Company") and certain of the individual defendants' motions to dismiss lead plaintiff's §10(b) claim, and ordering lead plaintiff to streamline its falsity allegations before allowing discovery to commence.   Order (Dkt. No. 105) at 37-38, 137.   Lead plaintiff's Amended Complaint, filed on April 30, 2009, responds to the Court's concerns by clearly and concisely setting forth the 54 statements which lead plaintiff alleges were false and misleading, as well as detailed explanations of why each individual statement was false and misleading.[1]  ¶¶49-69, 72-78.

Rather than answering the Amended Complaint, defendants now attempt to use the filing of the Amended Complaint as an opportunity to seek reconsideration of contentions they earlier briefed and that have already been rejected by this Court.   Other assertions simply refuse to acknowledge or address critical allegations in the Amended Complaint.   Such a *de facto* motion for reconsideration is prohibited by this district's local rules, limiting such motions to issues not previously brought to the court's attention.   LRCiv 7.2(g).   Lead plaintiff is nonetheless forced to respond to defendants' "everything and the kitchen sink" tactics, which at times repeat already rejected assertions almost verbatim.

Defendants' challenges to lead plaintiff's amended falsity allegations are similarly unpersuasive.   In compliance with Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the Amended Complaint alleges exactly the financial statements which Apollo admits were false and misleading, as well as who made such statements and why such statements were false – including the amount of the overstatements when applicable.   ¶¶49-66.   The Amended Complaint also details the numerous accounting

---

[1]      "Amended Complaint" refers to Lead Plaintiff's Second Amended Complaint for Violations of the Federal Securities Laws (Dkt. No. 112).   (All paragraph ("¶") references herein are to the Amended Complaint.)   "Complaint" refers to Lead Plaintiff's Complaint for Violations of the Federal Securities Laws, filed on November 23, 2007 (Dkt. No. 71).

1  and policy statements which defendants admit were false and misleading, who made such

2  statements, and why they were false.  ¶¶67-69.

3          Making clear that no amount of detail will satisfy them, defendants' only defense is to

4  insist on the impossible – seeking to require that lead plaintiff must set forth the details of

5  each and every offending stock option grant and its precise effect on each admittedly false

6  earnings statement.  This is an absurd suggestion that no party could comply with prior to

7  discovery, and courts have simply not required such onerous detail to survive a motion to

8  dismiss in similar circumstances involving stock option backdating.  *Infra* §IV.A.1.  Indeed,

9  Apollo, with access to all of its internal documents and personnel, and with the assistance of

10  teams of lawyers and forensic accountants, spent almost a year attempting to discern such

11  detail, virtually none of which is public.

12          Having failed to undermine lead plaintiff's falsity allegations, defendants, as before,

13  resort to making unqualified assertions of fact which have little or no basis in the record, and

14  which often are demonstrably contrary to any plausible reading of lead plaintiff's allegations.

15  For example, as discussed further below, Apollo claims that the filing of a Form 4 two days

16  after a stock option grant is "incontrovertible evidence" that such a grant could not have been

17  backdated.  Apollo MTD at 9.[2]  Yet, one of the very cases cited by defendants holds the

18  exact opposite.  *In re Openwave Sys. S'holder Derivative Litig.*, 503 F. Supp. 2d 1351, 1356

19  (N.D. Cal. 2007).  Defendants even admit that one stock option grant could have been

20  backdated by a single day, rendering their Form 4 theory simply absurd.  *Infra* §IV.D.1.

21  Similarly, Apollo claims, without any basis in fact, that the increase in net income in a few

22  reporting periods as a result of restatement is "irreconcilable" with deliberate misconduct,

23  asserting that Apollo would not deliberately understate net income.  Apollo MTD at 17-18.

24  Yet, this contention ignores the possibility that such an effect could have merely been caused

25  _____

26  [2]      "Apollo MTD" and "Indiv. Defs' Mem." refer to Motion to Dismiss by Defendant
   Apollo Group, Inc. and Memorandum of Points and Authorities in Support of Motion to
27  Dismiss, or in the Alternative, to Strike, respectively.

28

1  by the cancellation of backdated stock options granted in prior periods, which would be

2  entirely consistent with lead plaintiff's claims.

3      This Court should not, and need not, revisit the entirety of its Order, as urged by

4  defendants.   Having reorganized and streamlined the Complaint to plead falsity with

5  particularity, which this Court otherwise found to state a viable claim, defendants' motions

6  to dismiss should be denied.

7  **II.      BACKGROUND**

8      The Court is familiar with the factual allegations of this action.  Order at 2-12; Lead

9  Plaintiff's Omnibus Opposition to Defendants' Motions to Dismiss, filed March 24, 2008

10  (Dkt. No. 94) ("Pl's 2008 MTD Opp.") at 5-10.  In brief, lead plaintiff alleges that for years,

11  Apollo and certain individual defendants issued false and misleading statements to the

12  market which overstated Apollo's net income by failing to account for stock option expenses

13  incurred as a result of Apollo's practice of routinely granting in-the-money stock options.

14  Defendants also falsely stated that Apollo complied with Accounting Principles Board

15  Opinion No. 25 ("APB 25") and IRS Code §162(m), falsely attested to the adequacy of

16  Apollo's internal controls, and finally, when the truth about defendants' misconduct began to

17  be revealed, falsely denied that any misconduct had occurred.  When the truth about

18  defendants' misconduct and Apollo's negative financial condition began to be revealed to the

19  market, Apollo's stock price declined, causing losses to Apollo's shareholders.

20      Apollo has never contested that it issued materially false and misleading statements

21  during the Class Period (November 28, 2000 through October 18, 2006), nor that it was

22  obligated to restate financial results to record material additional compensation expenses and

23  reductions in net income after its misconduct was first brought to light by inquiring analysts.

24  Further, as this Court has already held, after a highly detailed analysis, lead plaintiff has

25  already adequately alleged that defendants knew, or were deliberately reckless in not

26  knowing, about the falsity of their misstatements. Order at 94.  The allegations supporting

27  an inference of scienter include:

28

- Apollo admitted that certain defendants **falsified documents** regarding the approval of stock option grants. ¶¶7, 94.

- Apollo admitted that defendants later attempted to **cover-up** their misconduct regarding the granting of stock options as it concerned "**the Company's financial reporting.**" ¶¶94, 96.[3]

- Defendants' longstanding misconduct violated Generally Accepted Accounting Principles, as well as Apollo's own publicly stated accounting policies. ¶¶2, 6, 145.

- Apollo admitted that it "restated its SEC filings with regards, primarily, to **backdating of stock option grants**." ¶99.

- Defendants' misconduct involved the violation of simple, clear and unambiguous accounting rules, designed to **enrich Apollo's executives officers,** all of whom received backdated options. ¶98.

- Apollo **lacked any semblance of internal controls** in the granting, approving, and accounting for stock option grants. ¶¶69, 73, 109.

- In many instances, Apollo cannot determine whether stock option grants were ever properly approved. ¶104(e).

- Apollo's failure to record known compensation expenses resulted in the Company's net income being overstated by 5.6% during the Class Period, and as much as 23.6% in FY01. ¶8.

- Defendant Todd Nelson ("Nelson") had the authority to approve stock option grants for the Company's §16 officers, selected the grant date for stock options beginning in August 2001, received backdated options, and "was **preoccupied primarily with the stock price and not with the functioning of the company**." ¶108.

As the Court held in the Order, such allegations, considered collectively, create an inference that it is at least as likely as any opposing inference that defendants knew or were deliberately reckless in not knowing of the falsity of the alleged misstatements. Order at 84; *see Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 269 (3d Cir. 2009); *see also* Lead Plaintiff's Supplemental Briefing Re *Corinthian*, *Gilead* and *Applied Signal*, filed September 8, 2008 (Dkt. No. 101).

---

[3]  Emphasis is added and citations are omitted unless otherwise noted.

- 4 -

III.     **PROCEDURAL HISTORY**

    A.     **In a March 31, 2009 Order, the Court Denied Defendants'
Motions to Dismiss**

        On March 31, 2009, after having received 154 pages of briefing on defendants' motions to dismiss lead plaintiff's Complaint, the Court issued a comprehensive and thorough Order granting in part and denying in part defendants' motions to dismiss.

        **1.     Lead Plaintiff's Section 10(b) Claims Were Upheld in Part**

        Considering lead plaintiff's §10(b) claim, the Court denied the motions to dismiss with respect to defendants. Nelson, Kenda B. Gonzales ("Gonzales"), John R. Norton III ("Norton"), John Blair ("Blair"), and Apollo, while granting the motions to dismiss with respect to defendants Daniel E. Bachus ("Bachus"), Dino J. DeConcini ("DeConcini"), Hedy Govenar ("Govenar"), Brian E. Mueller ("Mueller"), Laura Noone ("Noone"), John G. Sperling and Peter Sperling (collectively, the "Sperlings").  Order at 137-38.

        <u>Scienter</u>:   Addressing scienter, the Court examined lead plaintiff's allegations collectively and found that lead plaintiff had alleged a strong inference of scienter with respect to defendants Nelson, Gonzales, Norton, Blair and Apollo. *Id.* at 39-94.  The Court held that the Complaint "contains allegations as to their responsibility for, and rather extensive involvement with, the stock option granting and accounting processes." *Id.* at 79. While executive position alone would not support an inference of scienter, "'allegations that the defendant signed false financial documents, approved options grants, oversaw the options granting process, or was intimately involved in deciding when and to whom options would be granted may support a strong inference of scienter.'" *Id.*  The Order then detailed lead plaintiff's allegations "that defendant Nelson engaged in not just one of the activities listed above, ***but in all of them and more***." *Id.* at 80.  The Court held that such allegations, and similar allegations with respect to defendant Gonzales, were "certainly enough . . . to defeat these motions to dismiss in that 'the malicious inference is at least as compelling as any opposing innocent inference.'" *Id.* at 81-82.

1    The Court also discussed the detailed allegations regarding the involvement of

2    defendants Norton and Blair, the members of Apollo's Compensation Committee, in

3    Apollo's stock option granting process, and found that such allegations "give rise to the

4    inference that at the very least they were deliberately reckless in not knowing of the

5    backdating." *Id.* at 83.

6    The Order also discussed the types of misstatements for which lead plaintiff had

7    adequately alleged scienter. The Court held that lead plaintiff's allegations "permit a strong

8    inference of scienter to be drawn as to defendants Nelson, Norton and Blair with respect to

9    the falsity of their statements regarding Apollo's stock option granting practices." *Id.* at 58.

10   Further, the Court held that lead plaintiff's allegations as to Nelson, Gonzales, Norton and

11   Blair, "'create an inference greater than the sum of [their] parts,' that they acted with

12   knowledge or at least were deliberately indifferent as to [the] falsity of their statements

13   regarding accounting for stock-based compensation expenses and the existence of internal

14   controls in that regard." *Id.* at 84.

15   <u>Loss Causation</u>:   The Court's Order also held that lead plaintiff had adequately

16   alleged loss causation with respect to Apollo's October 18, 2006 announcement that

17   "various deficiencies in the process of granting and documenting stock options
     have been identified to date.  The accounting impact of these matters has not
18   been quantified.   There can be no assurances that the results of the
     investigation will not require a possible restatement of the Company's
19   financial statements when the potential errors are quantified and assessed."

20   *Id.* at 115.  The Court rejected defendants' attempts to "minimize the significance of the

21   October 18th news release," stating that lead plaintiff's theory that Apollo's stock price

22   dropped in response to the October 18 announcement is "'not facially implausible [a]fter

23   *Gilead*, that is all the Ninth Circuit demands." *Id.* at 116 (citing *In re Gilead Scis. Sec. Litig.*,

24   536 F.3d 1049, 1057 (9th Cir. 2008), *cert. denied*, 129 S. Ct. 1993 (2009)).

25   <u>Falsity</u>:  Lastly, with respect to falsity, while the Court recognized the categories of

26   statements lead plaintiff alleged to be false and misleading (*id.* at 105-06), and the relevance

27   of Apollo's restatement (*id.* at 37), the Court found that the Complaint did not adequately

28   explain "'***why*** the defendant's alleged statements or omissions are deceitful.'" *Id.* (emphasis

- 6 -

by the Court).  Instead of granting "dismissal based on the form of the pleading," however, the Court ordered lead plaintiff to "'streamline and reorganize the complaint before allowing it to serve as the document controlling discovery.'"  *Id.* at 37-38.

### 2.   Lead Plaintiff's Section 20(a) Claims Are Based on the Sustained Section 10(b) Claims

The Order stated that "plaintiff has not adequately pled a primary violation of section 10(b) as to defendants Bachus, DeConcini, Govenar, Mueller, Noone, and the Sperlings. Therefore, the court grants the motion by these defendants to dismiss the section 20(a) claims as against them."  *Id.* at 125-26.  On April 2, 2009, lead plaintiff filed a motion for reconsideration on the basis that lead plaintiff was not required to plead a primary violation of §10(b) by that §20(a) defendant in order to state a claim under §20(a).  Lead Plaintiff's Motion to Reconsider, filed on April 2, 2009 (Dkt. No. 107) ("Pl's Recon. Mot.").  The Court ordered defendants to respond to lead plaintiff's motion for reconsideration, and briefing was completed on April 23, 2009.  As discussed below, the Amended Complaint adequately alleges a claim for violation of §20(a) against defendants based on §10(b) predicate violations by other defendants.

### 3.   The Insider Trading Claim Against Blair Was Upheld in Part

The Court found that lead plaintiff had not adequately alleged contemporaneous trading with respect to all defendants except Blair.  Order at 123-24.  Those defendants have been eliminated from the Amended Complaint.  However, the Order found that lead plaintiff had stated a predicate §10(b) claim with respect to Blair, and that lead plaintiff traded contemporaneously with Blair.  Lead plaintiff stands on its §20A allegations as to defendant Blair only.  As discussed below, despite defendants' continued attempts to add a new requirement to §20A which is found nowhere in the statute or any other judicial discussion, lead plaintiff's §20A claim is adequately pled with respect to defendant Blair.

1

2

**B.     Lead Plaintiff's Amended Complaint Pleads the Reasons for
Falsity with Particularity as the Court Required**

3

Lead plaintiff filed its Amended Complaint on April 30, 2009 (Dkt. No. 112).  The

4

Amended Complaint does not eliminate or alter any of the factual allegations which the

5

Court previously relied upon in denying defendants' motions to dismiss.  Rather, in

6

compliance with the Court's Order, the Amended Complaint (i) streamlines lead plaintiff's

7

allegations of falsity, (ii) adds certain additional factual allegations, (iii) eliminates certain

8

duplicative or redundant allegations on which the Court did not rely, and (iv) eliminates

9

certain claims against certain defendants which the Court found to be lacking.

10

**1.     Lead Plaintiff's Falsity Allegations Have Been
Streamlined as the Court Directed**

11

Primarily, the Amended Complaint streamlines and reorganizes lead plaintiff's falsity

12

allegations as instructed in the Court's Order.  *Compare* Complaint, ¶¶53-87 *with* Amended

13

Complaint, ¶¶45-69.  Responding to the Court's primary concern that the Complaint quoted

14

overly lengthy portions of Apollo's financial filings while lacking clear explanations of why

15

each statement was false, the Amended Complaint is "'clear and concise in identifying the

16

false statements and articulating the factual allegations supporting an inference that the

17

statement is false and misleading.'"  Order at 37-38; *see, e.g.*, ¶49.  The Amended Complaint

18

first identifies the financial statements and press releases issued by Apollo and/or the other

19

defendants throughout the Class Period which Apollo's restatement admits were materially

20

false and misleading.  ¶¶49-66.  Where disclosed by Apollo, the Amended Complaint alleged

21

how much Apollo's financial statements were overstated by defendants' failure to account

22

for stock options issued below fair market value.  *E.g.*, ¶49(b).  While the material falsity of

23

such statements cannot be contested in light of Apollo's restatement, the Amended

24

Complaint also explains exactly why such statements were false and misleading.  *E.g.*,

25

¶¶49(b), 50(c), 51(c).

26

The Amended Complaint goes on to identify other statements issued by defendants

27

during the Class Period relevant to Apollo's stock option practices which were false and

28

misleading.  ¶¶67-69.  As alleged, the falsity of many of these statements is specifically admitted by Apollo in its restatement.  ¶¶67(a), 68(f), 69(e).

### 2.   The Amended Complaint Provides Additional Allegations of Scienter and Control

The Amended Complaint adds certain additional facts which further strengthen lead plaintiff's other allegations as well.  For example, the Amended Complaint puts beyond dispute the fact that Gonzales understood that stock option expenses were required to be accounted for over the vesting period of the stock option – or typically for four years after the stock option grant in Apollo's case.  The Amended Complaint references a conference call hosted by Gonzales and Nelson where Gonzales acknowledged that she was aware that Apollo was required to record compensation expenses for stock options in the quarter in which they vested.  ¶46.  Such statements strengthen lead plaintiff's scienter allegations which this Court has already found to be sufficient.

Further, as discussed below, the Amended Complaint strengthens lead plaintiff's §20(a) claims by specifically alleging the numerous false and misleading financial statements signed by defendants during the Class Period, as well as adding material additional admissions and allegations about the Sperlings' control of Apollo, including Apollo's statements that "[b]y controlling 92.9% of our voting power, John and Peter Sperling are able to elect all members of our board of directors and control substantially all actions to be taken by our shareholders.  As a result, they are able to maintain control over our operations and business."  ¶161.

Because the Amended Complaint thoroughly addresses the issues the Court ordered lead plaintiff to address, large parts of defendants' motions to dismiss which attempt to relitigate issues and contentions which have already been comprehensively briefed by the parties and decided by this Court should be summarily rejected.  If defendants believed that the Order was erroneous, they should have moved for reconsideration.  Defendants should not be allowed to sidestep this Court's strict limitations on motions for reconsideration.  CivLR 7.2(g).  Such tactics are highly prejudicial to lead plaintiff, who must respond out of

1    an abundance of caution.  *See Berger v. Xerox Ret. Income Guar. Plan*, 231 F. Supp. 2d 804,

2    820 (S.D. Ill. 2002) ("Court's prior rulings 'are not intended as mere first drafts, subject to

3    revision and reconsideration at a litigant's pleasure.' . . . [I]ll-founded requests for

4    reconsideration of issues previously decided 'needlessly take the court's attention from

5    current matters and visit inequity upon opponents who, prevailing in an earlier proceeding,

6    must nevertheless defend their position again and again.'"), *aff'd*, 338 F.3d 755 (7th Cir.

7    2003).  In any case, such contentions, even if they were proper to raise at this stage, are

8    meritless, as discussed below.

9    **IV.    ARGUMENT**

10          **A.      The Amended Complaint Alleges Falsity with Particularity**

11          The Order clearly recognized the types of statements alleged to be false and

12    misleading in the Complaint:

13          First, allegedly Apollo's "financial statements were false and misleading
            because they failed to account for stock option expenses."  Second, the FAC
14          alleges that Apollo falsely represented that it "account[ed] for its stock-based
            awards in accordance with [APB 25].  The third alleged fraudulent activity is
15          that "defendants signed false [SOX] . . . certifications . . . attest[ing] to the
            adequacy of Apollo's internal controls" pertaining to stock option grants.
16

17    Order at 105-06 (alterations by the Court).  The Court, however, ordered lead plaintiff to

18    replead its falsity allegations, stating that lead plaintiff "must be 'clear and concise in

19    identifying the false statements and articulating the factual allegations supporting an

20    inference that the statement is false or misleading.'"  *Id.* at 38.

21          The Amended Complaint remedies this deficiency by precisely identifying the

22    statements lead plaintiff alleges to be false, and providing particularized factual allegations

23    explaining why such statements are false and misleading.

24          **1.      Apollo's Restatement Admits Its Earnings Statements**
                       **Were False and Misleading**

25          A restatement is an admission that a company's previously issued financial results

26    were materially false and misleading.  *Ley v. Visteon Corp.*, 543 F.3d 801, 813 (6th Cir.

27    2008).  "Although a restatement is not an admission of wrongdoing, the mere fact that

28    financial results were restated is sufficient basis for pleading that those statements were false

- 10 -

1    when made." *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 486

2    (S.D.N.Y. 2004).

3    Here, Apollo's restatement is an admission that its reported financial results issued

4    throughout the Class Period, and indeed prior to the Class Period, were materially false and

5    misleading when made.  *See* ¶¶2, 96.  The Amended Complaint alleges, as clearly and

6    concisely as possible, each individual false and misleading earnings release and financial

7    statement throughout the Class Period, as well as who made such statements.  ¶¶49-66;

8    Amended Complaint, Exs. 1-35.

9    Most importantly, the Amended Complaint clearly identifies why such financial

10   statements were false and misleading: They overstated Apollo's net income and understated

11   Apollo's compensation expenses as a result of Apollo's failure to account for compensation

12   and tax expenses associated with stock options priced below the fair market value of

13   Apollo's common stock on the date of the grant.  ¶¶49-66.  Further, the Amended Complaint

14   details, wherever possible, the exact amount of net income overstated.  For example, for

15   FY01, Apollo's net income was overstated by $20.5 million, or 23.6%.  ¶49(b).  In FY02,

16   Apollo's net income was overstated by $17.2 million, or 12%.  ¶53(c).

17   These allegations of falsity are as detailed, if not far more detailed, than allegations

18   that have been upheld in comparable stock option backdating cases, and cases involving

19   restatements.  *Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1190 (C.D.

20   Cal. 2007) (Plaintiffs adequately alleged the material falsity of the company's financial

21   statements without alleging the unreported expenses for each year that the company

22   improperly granted options, let alone each grant date.); *In re Zoran Corp. Derivative Litig.*,

23   511 F. Supp. 2d 986, 1011 (N.D. Cal. 2007) ("The financial statements falsely stated that

24   Zoran was in compliance with proper accounting procedures and that compensation expenses

25   were being properly accounted for. . . .  As to materiality, plaintiff has pled that Zoran had to

26   restate its financials . . . as a result of the alleged misstatements and the accompanying delays

27   in filing financial statements. . . .  Accordingly, plaintiff has pled that defendants made

28   material misstatements under this element."); *In re Cylink Sec. Litig.*, 178 F. Supp. 2d 1077,

1  1084 (N.D. Cal. 2001) ("[T]he mere fact that . . . statements were restated at all" is sufficient

2  to establish falsity at the pleading stage.); *see also In re THQ, Inc. Derivative Litig.*, No.

3  BC 357 600, 2007 WL 4990689, at 6 (Cal. Super. Ct. Oct. 11, 2007) ("The level of

4  particularity demanded by defendants ventures into the realm of evidentiary facts and,

5  frankly, indicates . . . that no amount of specificity would satisfy them."). Lawrence Decl.,

6  Ex. C.[4]

7          **2.      False Statement Allegations Regarding APB 25 and IRS
                      Code Section 162(m) Have Been Streamlined to Satisfy
8                    the PSLRA**

9          Lead plaintiff's allegations with respect to APB 25 and IRS Code §162(m) are also

10  streamlined and concise. With respect to APB 25, the Amended Complaint sets forth the

11  statements in Apollo's Forms 10-K which assured the market that

12          [t]he Company applies the recognition and measurement principles of
             Accounting Principles Board Opinion No. 25, Accounting for Stock Issued to
13          Employees, and related interpretations in accounting for those plans. Stock-
             based employee compensation expense is not reflected in the Consolidated
14          Statement of Operations as all options granted under those plans had an
             exercise price equal to the market value of the underlying common stock on
15          the date of grant.

16  ¶68(a)-(e). The Amended Complaint also clearly identified why these statements were false

17  and misleading – Apollo outright admitted as much: "[T]he Company did not maintain

18  effective control over the granting of stock options and the related recording and disclosure

19  of compensation expense under APB 25. . . . [T]he Company did not correctly apply the

20  requirements of APB 25." ¶68(f).

21          Similarly, with respect to IRS Code 162(m), the Amended Complaint sets forth the

22  statements in Apollo's Forms 10-K which stated to the market that

23          [t]he Company's policy is to comply with the requirements of Section 162(m)
             and maintain deductibility for all executive compensation, except in
24          circumstances where we conclude on an informed basis that it is in the best

25  _____

26  [4]     "Lawrence Decl." refers to the Declaration of Jeffrey W. Lawrence in Support of
    Lead Plaintiff's Omnibus Opposition to Defendants' Motions to Dismiss the Second
27  Amended Complaint for Violations of the Federal Securities Laws, filed concurrently
    herewith.

28

interest of the Company and the shareholders to take actions with regard to the payment of executive compensation which do not qualify for tax deductibility.

¶67(a)-(d).  The Amended Complaint then identifies why these statements were false and misleading.  Apollo admits that it did not maintain control over deductions under IRS Code §162(m) and that it claimed deductions to which it was not entitled.  ¶67(e).  These allegations could not be clearer, and satisfy the PSLRA.  15 U.S.C. §78u-4(b)(1).

### 3.   The Amended Complaint Pleads False Sarbanes-Oxley Act of 2002 Certifications with Particularity

The Amended Complaint also sets forth in detail the Sarbanes-Oxley Act of 2002 ("SOX") certifications signed by Nelson and Gonzales that attested to the adequacy of Apollo's internal controls.  ¶69(a)-(d).  Despite certifying the adequacy of Apollo's internal controls year after year, Apollo's restatement definitely states that effective controls were neither designed nor in place to detect the fraud alleged herein, nor to provide reasonable assurances regarding the propriety of Apollo's stock option granting programs.  ¶69(e).

### 4.   The Amended Complaint Explains Why the Denials of Misconduct Were False When Made

Lastly, the Amended Complaint alleges that certain of Apollo's denials of misconduct throughout the Class Period were materially false and misleading because defendants knew or were deliberately reckless in not knowing that Apollo had in fact engaged in the very misconduct that they were denying.  ¶¶72-78; *Avaya*, 564 F.3d at 270.

### B.   Defendants Cannot Meaningfully Contest Falsity, and So Confuse Falsity with Scienter – Allegations Which This Court Has Already Upheld

This Court has never held that Apollo did not make false statements.  Rather, it simply required lead plaintiff to streamline such allegations in order for the Complaint to serve as a tool for discovery.  Order at 37-38.  Having done so, this case should move forward.

Defendants, however, relying on the thinnest of legal authority – much of which is unreported or taken out of context, assert that lead plaintiff has not alleged falsity with respect to any of the false and misleading statements in the Amended Complaint.  Apollo MTD at 7-14.  Despite having admitted to filing false financial results (¶¶49-66), attesting to

inaccurate SOX certifications (¶69) and making false statements about their stock option granting practices (¶¶67-68), defendants claim that lead plaintiff has not alleged a single actionable false statement.

Numerous courts have agreed with *Visteon* that a restatement alone is enough to plead falsity under the PSLRA. *Cylink*, 178 F. Supp. 2d at 1083; *380544 Can., Inc. v. Aspen Tech., Inc.*, 544 F. Supp. 2d 199, 217 (S.D.N.Y. 2008); *Atlas Air*, 324 F. Supp. 2d at 486. For the purpose of alleging falsity, it is irrelevant whether defendants knew that their statements were false. Nevertheless, defendants attempt to challenge lead plaintiff's falsity allegations primarily by confusing falsity and scienter. The Ninth Circuit has rejected such tactics. *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 742 (9th Cir. 2008) (reversing district court for "conflat[ing] the issue of scienter with the issue of falsity").

For example, the fact that the Amended Complaint only identifies six specific backdated grant dates does not make defendants' statements any less false. *See* Apollo MTD at 14-15. Lead plaintiff has never claimed that the entirety of Apollo's restatement was caused by options granted on those six dates, although defendants do not contest that such grants did in fact contribute to the restatement. Rather, the backdating of such grants supports a strong inference that defendants made such admittedly false statements knowingly, or with severe recklessness.

Next, defendants' reinterpretation of their statements regarding APB 25 and IRS Code §162(m) fails to render their statements any less false. Indiv. Defs' Mem. at 11. Apollo's statements regarding APB 25 during the Class Period were false and misleading for each year that its failure to comply with APB 25 resulted in a compensation expense that was not previously taken. As Apollo admits, as a result of its failures to comply with APB 25, it was forced to record a $49.3 million pre-tax compensation expense for FY01-FY06. ¶68(f). Similarly, contrary to Apollo's assurances that it applied IRS Code §162(m), Apollo admitted that it failed to follow IRS Code §162(m) from FY01-FY06 resulting in a cost of $34.2 million. ¶67(e). The falsity of such statements cannot be disputed.

Defendants' attack on lead plaintiff's allegations of false SOX certifications is similarly in error. Again attempting to conflate the analysis of falsity and scienter, defendants apparently believe that because this Court held that signing false SOX statements alone did not establish scienter, such statements could not have been false. Indiv. Defs' Mem. at 10-11 (citing Order at 59-60). This is incorrect. Apollo's admission that its internal controls were not designed and in place to provide reasonable assurances as to the accuracy of Apollo's stock option granting practices is a direct contradiction of each and every SOX certification signed by Nelson and Gonzales during the Class Period, which assured investors that such protections were in place. ¶69. Further, even with respect to scienter, as the Order held, the false SOX certifications signed by Nelson and Gonzales, when considered collectively with lead plaintiff's other scienter allegations, did in fact support a strong inference of scienter. Order at 80-82 (Nelson's and Gonzales' false SOX certifications, in combination with other scienter allegations, support a strong inference of scienter.).

Lastly, materiality is not at issue here. A restatement is by definition material. *Visteon*, 543 F.3d at 813. Indeed, the standards for judging materiality for the purposes of requiring a restatement are "in substance identical to the formulation used by the courts in interpreting the federal securities laws." *SEC Staff Accounting Bulletin: No. 99 – Materiality*, 64 Fed. Reg. 45151 (Aug. 19, 1999). By definition, Apollo cannot claim that any of its restated financial statements are not material.

Apollo does not dispute that its net income was materially overstated by $59 million during the restatement period. ¶2. As discussed in the Amended Complaint, for some fiscal years the overstatement of income was massive: In FY01, the restatement reduced Apollo's net income by $20.6 million, or 23.6%, and in FY02, the restatement reduced Apollo's net income by $17.3 million, or 12%. ¶8. Apollo also suggests, however, that because the restatement led to an increase in net income in certain financial reporting periods covered by the restatement, Apollo's stock option misconduct could not have been knowing or intentional because an understatement of net income is "irreconcilable" with deliberately misconduct. Apollo MTD at 17-18. This contention is at best premature, and at worst

- 15 -

1    dangerously misleading.   Apollo offers no explanation or legal support whatsoever to

2    support its contention that such understatements of income as a result of the restatement

3    support an opposing inference nor could they.   *See id.*   Indeed, such an accounting effort

4    could merely have been caused by the cancellation of previously issued backdated stock

5    options.

6         In any case, determinations of materiality are not based solely on dollar amounts.[5]

7    *See Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 162 (2d Cir. 2000).   Further, misstatements

8    regarding stock option expenses and self-enrichment are related to issues of management

9    integrity, and as such are inherently material to stockholders.   *See Siemers v. Wells Fargo &*

10   *Co.*, No. C 05-04518 WHA, 2007 U.S. Dist. LEXIS 31287, at *26 (N.D. Cal. Apr. 17, 2007)

11   ("The integrity of management is always of importance to investors.");   *In re Monster*

12   *Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 139 (S.D.N.Y. 2008) ("[B]ecause [defendant]

13   personally certified the false statements in this case, they can be seen as 'impugn[ing] the

14   integrity of management,' which in itself would [be] material to investors.");   *see also*

15   *Gebhardt v. ConAgra Foods, Inc.*, 335 F.3d 824, 829-30 (8th Cir. 2003).   Because none of

16   Apollo's false statements is "'so obviously unimportant to a reasonable investor that

17   reasonable minds could not differ on the question of their importance,'" materiality is not yet

18   at issue.   *Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F. Supp. 1297, 1306 (C.D.

19   Cal. 1996).

20        **C.    The Amended Complaint Adequately States a Claim for Control**
              **Person Liability**

21

22        Lead plaintiff's motion for reconsideration, which is now fully briefed, sets forth in

23   detail the case law related to lead plaintiff's control person claim, and the standards that must

24   [5]     Apollo notes that the Amended Complaint includes bad debt expense in its allegations
25   of misstatements of net income in 2004 and 2005.   Apollo MTD at 17.   While such bad debt
     expenses may be relevant in parsing out defendants' misconduct during discovery, lead
26   plaintiff agrees that such bad debt expenses do not appear to be the result of Apollo granting
     options below fair market value.   Regardless, the inclusion of these numbers does not
27   provide a basis for dismissal.   *See Maniscalco v. Brother Int'l Corp. (USA)*, No. 06-CV-
     04907 (FLW), 2009 U.S. Dist. LEXIS 52188, at *5 (D.N.J. June 19, 2009).

28

be met for pleading a §20(a) claim.  Pl's Recon. Mot. (Dkt. No. 107); Reply in Support of Lead Plaintiff's Motion to Reconsider, filed April 30, 2009 (Dkt. No. 111) ("Pl's Recon. Reply").  As lead plaintiff advised the Court in its motion for reconsideration, the Amended Complaint provides additional detail making clear that defendants signed multiple false financial statements throughout the Class Period.  ¶¶159-165.  Such allegations are sufficient to state a claim under §20(a).  Order at 125 (citing *In re Amgen, Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1037 (C.D. Cal. 2008)).

In addition, the Amended Complaint provides additional details about the Sperlings' admitted control of Apollo through their ownership for substantially all of Apollo's voting stock:

> Our Chairman and Chief Executive Officer, John G. Sperling, Ph.D., and his son, Peter V. Sperling, who is also one of our directors as well as our Senior Vice President, Secretary, and Treasurer, own 92.9% of our Class B common stock, which is our only series of voting stock.  By controlling 92.9% of our voting power, John and Peter Sperling are able to elect all members of our board of directors and control substantially all actions to be taken by our shareholders.  ***As a result, they are able to maintain control over our operations and business.***

¶161.  In light of lead plaintiff's pleading burdens with respect to a §20(a) claim, such allegations are plainly enough to plead control.  *See generally* Pl's Recon. Reply (Dkt. No. 111).

In response, defendants simply repeat, at times almost verbatim, the same contentions made in their briefing on lead plaintiff's motion for reconsideration.  *E.g.*, *compare*, Opposition to Lead Plaintiff's Motion to Reconsider, filed on April 20, 2009 (Dkt. No. 110) ("Indiv. Defs' Recon. Opp.") at 7-8 *with* Indiv. Defs' Mem. at 20.  Such contentions have been comprehensively addressed in lead plaintiff's prior papers, and lead plaintiff will not repeat them yet again.

### D.    The Amended Complaint Adequately States a Claim for Insider Trading Against Blair

Defendants again assert that the insider trading claims against Blair should be dismissed because lead plaintiff has not alleged that Blair's trading was out of proportion

with his prior trading.  Indiv. Defs' Mem. at 14 (citing Order at 123).  Indeed, this time they even incorrectly assert that the "Ninth Circuit requires" such prior trading history.  *Id.* at 1.

Defendants are attempting to confuse a §20A insider trading claim (which has no requirement that an insider's trade be out of line with other trades) with a Rule 10b-5 insider trading claim (which does have such a requirement to show *scienter*).  In their initial motion to dismiss, defendants claimed that "the Complaint fails to allege that these three Defendants' trades were out of line with their prior trading history."  Individual Defendants' Motion to Dismiss, filed January 22, 2008 (Dkt. No. 82) at 26.  Yet neither the statute, nor any of the cases cited by defendants support the proposition that a plaintiff must plead such element to state a §20A claim.  *See Neubronner v. Milken*, 6 F.3d 666, 670 n.5 (9th Cir. 1993) (discussing insider trading in the context of a §10(b) claim and specifically noting that the plaintiff "did not proceed under §20A"); *In re VeriFone Sec. Litig.*, 784 F. Supp. 1471, 1488-89 (N.D. Cal. 1992) (no requirement that trades were out of line, and noting the distinction between alleging a §20A insider trading claim and insider trading as evidence of scienter "in the context of an implied 10b-5 action against an insider"), *aff'd*, 11 F.3d 865 (9th Cir. 1993).  This is consistent with *Chan v. Orthologic Corp.*, No. 96-1514 PHX RCV, 1998 WL 1018624 (D. Az. Feb. 5, 1998).  *Chan* discussed insider trading as a component of scienter with respect to a §10(b) claim.  *Id.* at *12.  *Chan* is not relevant to an insider trading under §20A.

As *VeriFone* states: "A careful parsing of the somewhat tangled initial sentence of §20A discloses that an insider – one who trades while in the possession of material, nonpublic information – is liable only where an independent violation of another provision of the securities laws has occurred" and plaintiff has traded contemporaneously with such defendant.  784 F. Supp. at 1488.  This Court has already held that lead plaintiff stated a predicate §10(b) claim, and that lead plaintiff alleged contemporaneous trading.  Order at 123-24.  That is sufficient to state a §20A claim.  Indeed, no court has ever held that a plaintiff must plead that a defendant's trades were out of line with prior trading in order to state a claim for insider trading under §20A, and the statute itself contains no such

requirement.  15 U.S.C. §78t-1.  Indeed, in *Johnson v. Aljian*, 490 F.3d 778, 783 (9th Cir. 2007), *cert. denied*, 128 S. Ct. 1650 (2008), which comprehensively addressed §20A claims and found that §20A did not require that the predicate §10(b) claim be even actionable, there is no mention whatsoever of such a requirement.

Lead plaintiff's §20A claim against Blair should be upheld.  Defendants' continued urging that this Court apply an erroneous legal standard should be rejected.  The Amended Complaint adequately states a §20A claim against Blair.

**E.    Defendants' *De Facto* Motion for Reconsideration Should Be Rejected**

Defendants did not move for reconsideration of the Court's March 31, 2009 Order. Rather, they insisted on filing renewed motions to dismiss, and stated to lead plaintiff and this Court that they required additional pages in excess of the limits provided in the local rules to do so.  Stipulation to Exceed Page Limit and Extend Time to Respond, filed June 11, 2009 (Dkt. No. 118) at 1.  However, defendants' motions to dismiss devote a substantial portion of their pages to renewed attacks on issues this Court has already decided, and to issues that were previously raised in the parties' already voluminous filings.  Such contentions, which are functionally equivalent to an untimely motion for reconsideration, are improper and should be rejected.  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) ("A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'").

Defendants in this case appear intent on repeatedly advancing rejected theories.  Such assertions should be reviewed with the understanding that "[t]he Court's prior rulings 'are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure,'" and that "ill-founded requests for reconsideration of issues previously decided 'needlessly take the court's attention from current matters and visit inequity upon opponents

who, prevailing in an earlier proceeding, must nevertheless defend their position again and again.'"  *Berger*, 231 F. Supp. 2d at 820.

Even if the Court were to again consider the merits of such assertions, defendants' renewed attacks on lead plaintiff's allegations, and this Court's Order, lack merit and can be easily dispatched.

### 1. Defendants' "Backdating" Challenges Must Again Be Rejected

Defendants' motions to dismiss once again assert that the Amended Complaint must be dismissed because it does not adequately allege a "backdating" claim.  Indiv. Defs' Mem. at 6-7.  As lead plaintiff made clear over a year ago, this case is based on defendants' knowingly false and misleading statements about Apollo's financial results and stock option grating practices.  Pl's 2008 MTD Opp. at 22-25.  Indeed, the Order correctly analyzed backdating as a circumstance contributing to a strong inference of scienter, not an independent claim.  Order at 47-53 (analyzing backdating as a component of scienter, and noting that the "principle means by which plaintiff is attempting to show scienter is through allegations of stock option backdating").

This Court has of course already considered these exact same assertions (*compare* Motion to Dismiss by Defendant Apollo Group, Inc., filed on January 22, 2008 (Dkt. No. 81) at 12-14 *with* Indiv. Defs' Mem. at 12-13), devoting six pages of its Order to a detailed discussion of why such contentions are erroneous.  Order at 47-53.  Contrary to defendants' insistence that lead plaintiff prove its case at this early stage, the Court correctly recognized that to support an allegation of scienter "'at the pleading stage, the plaintiff need not prove that backdating occurred but rather must only allege circumstances from which it may be reasonably inferred that backdating as opposed to an innocent bookkeeping error occurred.'"  *Id.* at 48 (quoting *Edmonds v. Getty*, 524 F. Supp. 2d 1267, 1274 (W.D. Wash. 2007)).  Nothing in the Amended Complaint changes this analysis.  To the contrary, defendants themselves still cannot dispute that Apollo's own internal investigation admitted that there was evidence of backdating with respect to certain grants.  ¶94.

1     Defendants, however, seize on lead plaintiff's addition of one backdated 2003 stock

2     option grant as a pretext to repeat their already rejected contentions.   The Amended

3     Complaint alleges that Apollo granted options to defendants John Sperling, Nelson,

4     Gonzales and Noone, purportedly dated on October 20, 2003, when Apollo's stock was

5     trading at $60.90 a share.[6]   ¶44.  In the two days after the purported grant date, Apollo's

6     stock jumped $3.05, or 5% to close at $63.95 on October 22, 2003, the date that this grant

7     was reported to the Securities and Exchange Commission ("SEC").   Declaration of Michael

8     J. Farrell, filed June 15, 2009 (Dkt. No. 124), Exs. 7-13.  As a result, the October 20, 2003

9     grants were already $1.7 million in the money on the date they were reported to the SEC.

10    Defendants' over-enthusiastic attack on this grant allegation, which they insist calls

11    into question the entirety of lead plaintiff's allegations, should be easily rejected.

12    Defendants assert that because the October 20, 2003 stock option grant was timely reported

13    to the SEC, the grant could not have been backdated.  Apollo MTD at 7-9; Indiv. Defs'

14    Mem. at 4-5.  Apollo asserts that filing of such Forms 4 is "incontrovertible evidence that

15    this grant was not retroactively priced."  Apollo MTD at 9; *see also* Indiv. Defs' Mem. at 4-

16    5.  Yet these contentions are undermined by the very case law cited by defendants, as well as

17    defendants' own admissions.

18    Defendants' claim that "courts consistently hold that filing of Forms 4 within two

19    days negates an inference of retroactive pricing," is without question an erroneous statement

20    of the law.  Apollo MTD at 10 n.20; Indiv. Defs' Mem. at 4.  While Apollo cites *Openwave*

21    as having "reject[ed] backdating claims with respect to grants for which defendants filed

22    Form 4s within 1-2 days" (Apollo MTD at 9 n.16), *Openwave* actually says the exact

23    opposite.  503 F. Supp. 2d at 1350 ("For [certain grants,] however, it appears that the stock

24    _____

25    [6]     As the individual defendants correctly recognized, the strike price on October 20,
      2003, $60.90, was the lowest price that Apollo's stock traded during the entire 2003 *fiscal*
26    year.  Apollo apparently believes that the inadvertent omission of the word "fiscal" in the
      Amended Complaint negates the entirety of the reminder of lead plaintiff's allegations.
27    Apollo MTD at 7-8.  It does not.  Apollo does not dispute that $60.90 was the lowest price of
      the month and the lowest price of the fiscal year.

28

1  price increased in the two days following the grants.  ***Backdating stock options by two days***

2  ***is still backdating.***  These three grant dates may therefore still support plaintiffs' claims,

3  despite the filing of Forms 4 within two days of the grants.").  Indeed, here, as in *Openwave*,

4  Apollo's stock price increased in the two days after the October 20 grant date, thus

5  supporting lead plaintiff's claims.  *Id.*

6        In fact, numerous courts have come to the common sense conclusion that a timely

7  filed Form 4 does not eliminate the possibility of backdating, but simply restricts such

8  backdating to two days.  *Id.*; *Zoran*, 511 F. Supp. 2d at 1006 ("This is not to say that

9  backdating is completely impossible within a two-day window . . . but only to say that on

10  any given business day, the range of phony dates is restricted to only two for those who file

11  on time."); *In re Finisar Corp. Derivative Litig.*, 542 F. Supp. 2d 980, 994 (N.D. Cal. 2008)

12  ("The delay in filing a Form 4 with the SEC reporting option grants may support an

13  indication of backdating in that it is theoretically possible to manipulate the grant date during

14  the window between the grant date and the public reporting of the option grant to the SEC.").

15  A two-day reporting window does not eliminate the possibility of misconduct, and there is

16  the potential for substantial self-enrichment if a company's stock price increases sharply in a

17  day or two.  Indeed here, Nelson's stock options were $915,000 in the money by the time

18  such options were reported on October 22, 2003.  ¶44.  This is an extraordinary gain in two

19  days – greater than Nelson's entire base salary for FY04.  Lawrence Decl., Ex. A.[7]

20        What is more baffling about defendants' attack here (apart from the legal error), is

21  that just four pages before their statement that backdating would be impossible within two

22  days, Apollo admits that for one grant date, there was in fact a possibility that such grant was

23  backdated by a single day.  Apollo MTD at 3.  Apollo states that "a grant date may have

24

25

---

26  [7]    *See* Request for Judicial Notice in Support of Lead Plaintiff's Omnibus Opposition to
   Defendants' Motions to Dismiss the Second Amended Complaint for Violations of the
27  Federal Securities Laws, filed concurrently herewith.

28

1   been retroactively selected for three grants (*one, by a day*)." *Id.*[8] This admission, while once

2   again flying in the face of defendants' insistence that no possible misconduct could have

3   occurred, directly contradicts their later assertions that backdating within a two-day window

4   would be impossible.[9]   Rather Apollo actually admits that such one-day backdating may

5   have happened here.  It is entirely plausible, and consistent with Apollo's admissions, that on

6   October 21, 2003, Nelson retroactively selected the October 20 grant date, giving himself

7   almost $1 million of unvested and undisclosed gains, and then reported such grants to the

8   SEC on October 22, 2003.   Thus, the 2003 grant only further supports an inference of

9   scienter with respect to defendants' backdating, which this Court has already found, and does

10  nothing to undermine the Court's prior conclusions.

11         Defendants also assert that lead plaintiff's charts deliberately use varying scales to

12  make such charts look "suspicious."  Indiv. Defs' Mem. at 7.  Lead plaintiff submits that

13  Apollo's stock option granting history speaks for itself, and is "suspicious" enough on its

14  own.  While defendants may not have taken all the money out of the bank vault (*In re CNET

15  Networks, Inc.*, 483 F. Supp. 2d 947, 961 (N.D. Cal. 2007)), Apollo purported to grant

16  options at periodic lows over multiple years.  Such a pattern is highly incriminating, and

17  reasonably contributes to a strong inference of scienter.

18

19  _____

20  [8]      Lead plaintiff agrees that "context" is important for backdating allegations.  Indiv.
    Defs' Mem. at 5.  This is precisely why Apollo's admission that it may have been engaged in

21  one-day backdating for a certain grant is important here.  ¶44.  This admission shows that the
    case law relied on by Apollo for the proposition that backdating by two days would be

22  unlikely, is simply inapplicable to the factual context here, where such conduct has been
    admitted.

23  [9]      Apollo's continued claim that there is an "absence of any other factual support for the
    claim of 'backdating,'" once again demonstrates its unwillingness to even acknowledge the

24  wealth of allegations, including defendants' own statements, that this Court has already
    found to be probative of defendants' misconduct.  *Infra* §II.  Order at 80-82.  Defendants'

25  refusal to tackle such serious allegations speaks for itself.  Perhaps defendants have taken to
    heart the dubious advice of General Sir Anthony Cecil Hogmanay Melchett: "That's the

26  spirit, George.  If nothing else works, then a total pig-headed unwillingness to look facts in
    the face will see us through."  *Black Adder IV - Black Adder Goes Forth*: *Episode 4 – Plan

27  D: Private Plane* (BBC television broadcast, Oct. 19, 1989).

28



**Apollo Group**
**December 1, 1998 - December 1, 2003**

◇ = Date and price of the six out of seven
stock option grants reported in Apollo's
Forms 10-K between December 1, 1998
and December 1, 2003 which are alleged
to have been backdated.  ¶¶39-44

12/18/98 @ $11.39
4/19/99 @ $10.22
1/12/00 @ $8.39
12/15/00 @ $14.84
9/21/01 @ $32.03
10/20/03 @ $60.90

Dollars Per Share

$70
$60
$50
$40
$30
$20
$10
$0

12/01/1998    07/16/1999    02/28/2000    10/09/2000    05/23/2001    01/10/2002    08/23/2002    04/08/2003    11/18/2003
   03/25/1999    11/04/1999    06/19/2000    01/31/2001    09/19/2001    05/03/2002    12/13/2002    07/30/2003

The remainder of defendants' contentions essentially faults lead plaintiff for not providing the details regarding defendants' fraud which is only known to defendants. Apollo MTD at 13; Indiv. Defs' Mem. at 7. For example, while defendants fault lead plaintiff for not analyzing the 100 grants which were at issue for the purposes of Apollo's restatement, they fail to acknowledge that most of such grants were never publicly disclosed, and thus lead plaintiff could not, nor is it required to, provide the level of detail demanded by defendants. *Pirraglia v. Novell, Inc.*, 339 F.3d 1182, 1193 n.14 (10th Cir. 2003); *see also United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1272 (11th Cir. 2009). *Quest* is inapposite, despite Apollo's claims to the contrary. Apollo MTD at 11. There is nothing in the *Quest* opinion to suggest that the plaintiffs or the court looked at every stock option ever granted at Quest Software, Inc. Rather, it appears that the court only discussed the grants alleged by plaintiffs to have been backdated. *Quest*, 527 F. Supp. 2d at 1181 ("The option grants at

issue are those granted on April 14, 2000, March 28, 2001, April 4, 2001, October 1, 2001, August 6, 2002, and August 7, 2002.").  Indeed, it does not appear that a plaintiff in any class or derivative action involving allegations of stock option backdating has ever presented details regarding undisclosed stock options which were not publicly reported by a company prior to receiving discovery (as Apollo insists is necessary), yet many such cases have been upheld.  Obviously, even under the PSLRA, the lead plaintiff is not required to provide details of improper transactions known only to the defendants.  "This is asking too much of the plaintiffs, who cannot be expected, at the pleading stage, to describe in detail documents and paperwork that would presumably be kept, if at all, in [defendants'] private files." *Novell*, 339 F.3d at 1193 n.14.

Apollo's assertions of "cherry-picking" and "hand-selected grants," are also contradicted by the actual allegations contained in the Amended Complaint.  Apollo MTD at 11-13; Indiv. Defs' Mem. at 7.  Far from cherry-picking grants, the Amended Complaint alleges that, between 1998 and 2003, ***all but one*** (six out of seven) of Apollo's stock options reported in Apollo's Forms 10-K were backdated.  ¶¶37-44.  This is systematic and considered fraudulent conduct by and for the benefit of Apollo's most senior executives, not "cherry-picking."[10]  Apollo has admitted that backdating could have occurred, admitted to routinely issuing false and misleading statements, and the Court has already held that lead plaintiff adequately alleged scienter with respect to such statements.  Order at 77-84.  This is all that is required.

---

[10]    Apollo's baseball analogy (Apollo MTD at 12 n.22), while colorful, fails because the vast majority of "at bats" that Apollo claims lead plaintiff has ignored are not publicly known.  Indeed, it is very reasonable to assume that if one had seen a baseball player hit a home-run on six of seven "at bats," there will likely be many more home-runs once one has the opportunity to review the many more other "at bats" which have yet to be seen.

1
2

## 2. Having Already Found Lead Plaintiff to Have Adequately Alleged Scienter, Defendants' Renewed Assertions Should Once Again Be Rejected

3      The Order allocates 55 pages to its comprehensive analysis of scienter and concludes

4   that lead plaintiff's allegations as to Nelson, Gonzales, Norton and Blair, "'create an

5   inference greater than the sum of [their] parts,' that they acted with [scienter]." *Id.* at 84.

6   Apollo now asserts that "new facts, analysis, and case law," warrant a different outcome.

7   This pretext is easily rejected.

8      Defendants offer no new "analysis." Apollo states that "because the 'crux' of the case

9   is now alleged fraudulent overstatement of earnings and income, Plaintiff must plead facts

10  creating a strong inference of scienter as to the alleged overstatement of earnings and

11  income." Apollo MTD at 21 (emphasis omitted); *see also* Indiv. Defs' Mem. at 3. Yet the

12  "crux" of the case has *always* been Apollo's overstatement of earnings and income, and the

13  Court has already disposed of the exact issue that Apollo seeks to raise anew. Order at 28

14  ("Turning to what it concedes is the '[t]he gravamen of' the FAC, 'the reporting of false and

15  misleading financial results . . . .'"). The Court has already held lead plaintiff alleged

16  scienter as to Nelson, Gonzales, Blair and Norton with respect to the "falsity of their

17  statements regarding accounting for stock-based compensation expenses and the existence of

18  internal controls in that regard." *Id.* at 84.

19     Similarly, defendants offer no new relevant "case law." Rather, they cite to one fact-

20  bound out-of-circuit decision, issued two months before this Court's ruling. *Rosenberg v.*

21  *Gould*, 554 F.3d 962 (11th Cir. 2009). Because *Rosenberg* is limited to its unique facts –

22  which are quite different from the facts alleged here – it offers no basis for this Court to

23  revisit its previous thorough scienter analysis.

24     First, *Rosenberg* involved a defendant who had *no accounting experience* and who

25  *made no class period statements to the market regarding stock option accounting*, holding

26  it plausible that such an individual might not realize that certain backdated options could

27  cause earnings to be minimally overstated three to six years later. *Id*. at 964. Here, both

28  Gonzales and Nelson participated in a conference call where Gonzales admitted that she was

aware that Apollo was required to record compensation expenses for stock options in the quarter in which they vested. ¶46. Indeed, the same conference call transcript confirms that Apollo's analysts were very interested in the effects of Apollo's stock option compensation expenses on its financial reporting:

> Q. Christopher Gutek: Okay. Great. And actually I had a somewhat related question. When you converted from the UOPX options to APOL options, there is still a remaining $23 million of equity compensation expense?

> A. Kenda Gonzales: That's correct.

> Q. Christopher Gutek: Was there none of that in the quarter?

> A. Kenda Gonzales: **No, because it comes when the options vest** and our options all vest at August 31. . . .

¶46; Lawrence Decl., Ex. B. Thus, unlike *Rosenberg*, Gonzales and Nelson admit they knew the effects of backdating on Apollo's earnings in the years after the grants as the improper stock options continued to vest. Further, in contrast to *Rosenberg*, Gonzales, Apollo's longtime CFO, had significant accounting experience. Gonzales has a Bachelor of Accountancy degree from the University of Oklahoma, was a Certified Public Accountant with Peat Marwick, Mitchell and Company, and has been serving as a CFO since 1985 – almost 25 years. ¶116.

Second, unlike *Rosenberg*, defendants here **did** make false public statements about Apollo's stock option policies during the Class Period. Thus, defendants affirmatively told the market that Apollo was doing one thing (correctly accounting for options) while, at the same time, causing Apollo to do another (not expensing the options appropriately). These facts – unrebutted by defendants – reveal scienter. In *Rosenberg*, however, the court noted that the company's 2000 and 2001 SEC filings contained representations about fair market value for stock options – but also acknowledged that the class period was not until April 23, 2004 through August 11, 2006. 554 F.3d at 964. Here, defendants specifically told the market, **throughout the Class Period**, that Apollo granted stock options with "an exercise price equal to the market value of the underlying common stock on the date of grant." ¶68. Defendants also specifically told the market that Apollo applied APB 25, meaning that

1   Apollo would **take a compensation expense** for the difference between the price on the grant

2   date and the price used for the option.  ¶68.  Thus, defendants' statements further distinguish

3   this case from *Rosenberg*.

4        Apollo's restatement admitted that defendants' policy statements were false.  ¶¶67(e),

5   68(f).  Common sense and case law make obvious that defendants' representations to the

6   market about how Apollo accounts for stock options weigh heavily in favor of their scienter.

7   *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987 (9th Cir. 2008) (Once defendants

8   choose to speak about a company issue, they are bound to speak in a manner that will not

9   mislead investors.); *see also Caiola v. Citibank, N.A.*, 295 F.3d 312, 331 (2d Cir. 2002)

10  ("[U]pon choosing to speak, one must speak truthfully about material issues."); *accord*

11  *Helwig v. Vencor, Inc.*, 251 F.3d 540, 560-61 (6th Cir. 2001).

12       Third, *Rosenberg* involved only "minimally overstated earnings" during the class

13  period in that case.  554 F.3d at 964.  Here, in contrast, Apollo's earnings were overstated by

14  as much as 25.5% in 2001, 19% in 2002, and 5.6% for the Class Period as a whole.  ¶8.

15  Such material overstatements of earnings further contribute to an inference of scienter.  And

16  while *Rosenberg* also discusses the impact of the backdating at Witness Systems as a

17  percentage of net revenue (554 F.3d at 966), comparisons to net **revenue** provide no insight

18  into the effect of defendants' misconduct on the Company's **earnings**, which are clearly

19  material to the market.  *Gebhardt*, 335 F.3d at 830 ("More than a revenue loss was involved

20  here.  There was also a loss in net income, a figure that may be of more significance to

21  investors.").

22       Lastly, *Rosenberg* lacks many of the other scienter allegations present here which the

23  Court has found contribute to a strong inference of scienter.  In *Rosenberg*, there were no

24  allegations that the company was preparing and maintained falsified documents.  ¶94.  Nor

25  were there allegations that defendants took steps to cover-up their misconduct regarding the

26  granting of stock options as it concerned "the Company's financial reporting," as has been

27

28

admitted here.  *Id.*  Simply put, *Rosenberg* does not apply here.[11]  The *Rosenberg* opinion does not so much as mention a single Ninth Circuit opinion – much less acknowledge or address the numerous district court orders from within the Ninth Circuit discussed by this Court which have upheld similar claims.  *E.g.*, *Quest*, 527 F. Supp. 2d 1164; *Zoran*, 511 F. Supp. 2d 986.

In fact, new case law decided since the March 31, 2009 Order strongly supports lead plaintiff's allegations and the holistic consideration of such allegations undertaken by the Court in its earlier Order.  In *Avaya*, the Third Circuit addressed the standards for pleading scienter in light of *Tellabs*.  The Third Circuit noted that scienter does not rest "on the presence or absence of certain types of allegations but on a practical judgment about whether, accepting the whole factual picture painted by the Complaint, it is at least as likely as not that defendants acted with scienter."  *Avaya*, 564 F.3d at 269.  As this Court previously held, "'a defendant cannot gain dismissal by de-contextualizing every statement in a complaint that goes to scienter.'"  Order at 45.  Indeed, it was precisely the whole factual picture painted in lead plaintiff's Complaint which established a strong inference of scienter.  *Id.* at 81-82.  If anything, the Amended Complaint only draws this picture more clearly still.

---

[11]     The fact that some of the stock options alleged to have been backdated were issued before the Class Period does not render the false statements made ***during*** the Class Period inactionable.  It is those statements that affected the price of Apollo's stock and ultimately caused lead plaintiff's losses.  Courts addressing the issue have recognized that it is false statements, not the stock option grants, which form the basis of the fraud.  *In re Juniper Networks, Inc. Sec. Litig.*, 542 F. Supp. 2d 1037, 1050 (N.D. Cal. 2008) ("In the context of an options backdating case based on a fraud on the market theory, this means the backdating of an option grant, in and of itself, does not give rise to the violation. Rather, the violation occurs when a false representation concerning the option grant is publicly [sic] disclosed because it is only at that point that investors [sic] reliance may be presumed."); *In re Comverse Tech., Inc. Sec. Litig.*, 543 F. Supp. 2d 134, 155 (E.D.N.Y. 2008) (Where the gravamen of the complaint is the false and misleading statements issued by the company which failed to disclose, account for, or expense the backdating of stock options the statute of limitations period "begins to run on the date of such disclosures, not on the date of grant of the backdated options."); *accord Plymouth County Ret. Ass'n v. Schroeder*, 576 F. Supp. 2d 360, 376-77 (E.D.N.Y. 2008).  This Court agreed, limiting only the actionable false statements to those occurring after November 2, 2001.  Order at 137.

1

2

### 3.   Defendants' Verbatim Repetition of Already Rejected Facially Implausible Loss Causation Assertions Should Be Again Rejected

3    The Order held that lead plaintiff had adequately alleged loss causation with respect to

4  Apollo's October 18, 2006 announcement that

5

6

7

> "various deficiencies in the process of granting and documenting stock options have been identified to date.  The accounting impact of these matters has not been quantified.    There can be no assurances that the results of the investigation will not require a possible restatement of the Company's financial statements when the potential errors are quantified and assessed."

8  Order at 115.  Unsatisfied with this portion of the Order, Apollo once again asserts that lead

9  plaintiff has failed to allege any plausible theory of loss causation.  Apollo MTD at 2, 19-21.

10    Repeating the exact same contention it made in its September 8, 2008 supplemental

11  briefing (Supplemental Memorandum in Support of Motion to Dismiss by Defendant Apollo

12  Group, Inc., filed September 8, 2008 (Dkt. No. 102) at 9, Apollo again asserts that because

13  lead plaintiff's counsel filed a shareholder derivative case alleging stock option backdating

14  on September 5, 2006, several weeks before the filing of this action, Apollo's October 18,

15  2006 announcement that there were deficiencies in Apollo's stock option grants and that a

16  restatement could be forthcoming could not have revealed any new information to the

17  market.  Apollo MTD at 2, 19-21.

18    Apollo gives lead plaintiff's counsel far too much credit for the movements of the

19  market.  It is completely implausible, as Apollo suggests, that the market would treat the

20  filing of a private lawsuit alleging misconduct with the same weight as an admission from a

21  defendant that previously denied misconduct had in fact occurred and that a restatement

22  would be forthcoming.

23    In any case, such a purported "truth-on-the-market" defense, even if it had merit, is

24  obviously not to be undertaken on a motion to dismiss, and Apollo does not even cite the

25  leading case in the Ninth Circuit discussing the doctrine.  *Provenz v. Miller*, 102 F.3d 1478,

26  1493 (9th Cir. 1996) (discussing the "heavy burden of proof" borne by defendants in

27  asserting truth-on-the-market at summary judgment).  Apollo's flippant and conclusory

28

1   treatment of this factually intensive issue, on which it bears the burden of proof, is simply

2   another example of its willingness to make desperate contentions in support of dismissal.

3          Lastly, defendants take issues with lead plaintiff's continued inclusion of the series of

4   partial disclosures regarding Apollo's stock option troubles which the Court previously held

5   were insufficient to plead loss causation.   Indiv. Defs' Mem. at 21; Order at 104-14.

6   However, these allegations are clearly still relevant to the alleged fraud; and further

7   proceedings, discovery, and expert testimony may shed further light on the significance of

8   these allegations and disclosures.   After all, "showing loss causation is not precluded by a

9   series of disclosures; serial disclosures just make it more difficult for plaintiffs as a practical

10  matter."  *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1200 (C.D. Cal.

11  2008) (citing *Gilead*, 536 F.3d at 1055, for the proposition that "partial disclosures may 'not

12  contain enough information to significantly undermine' a misrepresentation, but that does

13  not render them nonactionable *per se*"); *see also Lormand v. US Unwired, Inc.*, 565 F.3d

14  228, 255 (5th Cir. 2009) (proving loss causation only requires that "when the 'relevant truth'

15  about the fraud *began to leak out* or otherwise make its way into the marketplace it caused

16  the price of the stock to depreciate and thereby proximately cause the plaintiff's economic

17  loss").   Because such disclosures are nonetheless relevant to lead plaintiff's claims, and may

18  inform the loss causation analysis at a subsequence stage of this litigation, this inclusion of

19  such allegations, even assuming they are not actionable per se at this time, is entirely proper.

20         **F.     Defendants' Motion to Strike Should Be Denied as the**
               **Allegations Are Relevant to Lead Plaintiff's Claims**

21

22         Recognizing the likelihood that the Court will uphold the Amended Complaint,

23  defendants ask that the Court strike certain allegations from the Amended Complaint.  Indiv.

24  Defs' Mem. at 3, 20-22.   As discussed above, lead plaintiff's inclusion of the pre-October

25  loss allegations is appropriate.  *Supra*, §IV.D.3.  Further, defendants ask the Court to strike

26  certain allegations regarding stock sales, resignations, and Mueller's state of mind.  Indiv.

27  Defs' Mem. at 21-22.

28

The allegations concerning Mueller's statements and state of mind are clearly relevant to the §20(a) claim against Mueller. As discussed in the parties' briefing on this subject, a §20(a) defendant may assert an affirmative good faith defense later in the proceedings. *See* Indiv. Defs' Recon. Opp. at 2, 10. The allegations concerning Mueller's statements and state of mind are clearly relevant to this claim and any defense. Indeed, the fact that Mueller denied that any misconduct occurred, and such misconduct was subsequently revealed, strongly speaks to Mueller's lack of good faith. *Avaya*, 564 F.3d at 269-70 (When a chief officer is "specifically asked, directly and repeatedly . . . focused questions" about an issue impacting earnings, and denies a business condition that is later revealed, "there is a strong inference that [the officer's] behavior reached [the requisite] threshold of recklessness.").

Similarly, the allegations regarding defendants' stock sales and defendants' resignations are not only relevant to the extent they demonstrate scienter, as defendants claim, Indiv. Defs' Mem. at 21-22, they are also relevant to lead plaintiff's §20(a) claim, their knowledge of the misconduct, and their lack of good faith. Such allegations should not be stricken.

## V.    CONCLUSION

Lead plaintiff has addressed the limited issue identified by the Court in its Order, which otherwise held that lead plaintiff had met the substantial burden of alleging actionable securities claims with respect to four of the individual defendants and Apollo. Defendants' motions to dismiss should be denied and discovery should proceed without delay. Should the Court grant any portion of defendants' motions to dismiss, lead plaintiff respectfully requests leave to amend.

DATED: August 3, 2009                    Respectfully submitted,

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
JEFFREY W. LAWRENCE
CHRISTOPHER M. WOOD


                              s/ Jeffrey W. Lawrence
                           JEFFREY W. LAWRENCE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)
jeffreyl@csgrr.com

Lead Counsel for Lead Plaintiff

BUCKLEY KING
MICHAEL SALCIDO
2020 North Central Avenue, Suite 1120
Phoenix, AZ  85004
Telephone:  602/424-2550
602/424-2566 (fax)
salcido@buckleyking.com

Liaison Counsel

S:\CasesSD\Apollo Group 06\OMD00060528.doc

1

<u>CERTIFICATE OF SERVICE</u>

2        I hereby certify that on August 3, 2009, I electronically filed the foregoing with the

3   Clerk of the Court using the CM/ECF system which will send notification of such filing to

4   the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify

5   that I have mailed the foregoing document or paper via the United States Postal Service to

6   the non-CM/ECF participants indicated on the attached Manual Notice List.

7        I certify under penalty of perjury under the laws of the United States of America that

8   the foregoing is true and correct.  Executed on August 3, 2009

9

10                          s/ Jeffrey W. Lawrence

                          JEFFREY W. LAWRENCE

11                          COUGHLIN STOIA GELLER

12                             RUDMAN & ROBBINS LLP

                        100 Pine Street, 26th Floor

13                          San Francisco, CA  94111

14                          Telephone:  415/288-4545

                        415/288-4534 (fax)

15                          E-mail: jeffreyl@csgrr.com

16

17

18

19

20

21

22

23

24

25

26

27

28

# Mailing Information for a Case 2:06-cv-02674-RCB

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Lauren S Antonino**
  lantonino@motleyrice.com

- **James W Barnhouse**
  barnhouse@buckleyking.com,kennelly@buckleyking.com,jsdbarnhouse@cox.net

- **Patrick V Dahlstrom**
  pdahlstrom@pomlaw.com

- **Robert O Dyer**
  rdyer@stklaw.com,kprentice@stklaw.com

- **Michael J Farrell**
  mfarrell@jsslaw.com,kroberts@jsslaw.com,MinuteEntries@jsslaw.com

- **Joseph E Floren**
  jfloren@morganlewis.com,rluke@morganlewis.com

- **Joshua Ray Forest**
  jforest@snowjensen.com,mbone@snowjensen.com

- **Marc I Gross**
  migross@pomlaw.com

- **Brian A Herman**
  bherman@morganlewis.com

- **Jeffrey W Lawrence**
  jeffreyl@lerachlaw.com,FileRoomSF@lerachlaw.com,jdecena@lerachlaw.com

- **Steven Charles Lawrence**
  steve.lawrence@hro.com,roonie.mcfarland@hro.com

- **Louisiana District Attorneys Retirement System**
  smartin@martinbonnett.com

- **Susan Joan Martin**
  smartin@martinbonnett.com,tmahabir@martinbonnett.com,mblawfirm@aol.com

- **Virginia F Milstead**
  virginia.milstead@skadden.com

- **Robert D Mitchell**
  robertmitchell@mitchell-attorneys.com,mitchell_atty@msn.com

- **Peter B Morrison**
  pmorriso@skadden.com,jsickler@skadden.com

- **Fei-Lu Qian**
  flqian@pomlaw.com

- **David A Rosenfeld**
  courtnotices@unioncounsel.net,nphillips@unioncounsel.net,bhinkle@unioncounsel.net

- **Samuel H Rudman**
  srudman@lerachlaw.com,E_file_ny@lerachlaw.com

- **Michael Salcido**
  salcido@buckleyking.com,kennelly@buckleyking.com

- **Jay P Saltzman**
  JAY@SPORNLAW.COM

- **Eric S Waxman**
  ewaxman@skadden.com,mcouchoi@skadden.com

- **Christopher M Wood**
  cwood@csgrr.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)