Michael J. Farrell – 015056
**JENNINGS, STROUSS & SALMON, P.L.C.**
A Professional Limited Liability Company
The Collier Center, 11th Floor
201 East Washington Street
Phoenix, Arizona 85004-2385
Telephone: (602) 262-5911
mfarrell@jsslaw.com

Joseph E. Floren, admitted pro hac vice
Brian A. Herman, admitted pro hac vice
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, New York 10178-0060
Telephone: (212) 309-6000
jfloren@morganlewis.com
bherman@morganlewis.com

*Attorneys for Defendant Apollo Group, Inc.*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| TEAMSTERS LOCAL 617 PENSION AND WELFARE FUNDS, on behalf of itself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>APOLLO GROUP INC., *et al.*,<br><br>Defendants. | No. 06-CV-2674-PHX-RCB<br><br>REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY DEFENDANT APOLLO GROUP, INC.<br><br>**ORAL ARGUMENT REQUESTED** |

3243160v1(58899.1)

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ..................................................................1

II. ARGUMENT..................................................................................................2

   A. The Issues Raised in Apollo's Motion to Dismiss Are Properly Before the Court.................................................................................2

   B. Plaintiff's Opposition Ignores the Numerous Deficiencies Identified in the SAC's Claims of Alleged Backdating ........................3

   C. The Opposition Glosses Over Plaintiff's Misreading of Apollo's Restatement..............................................................................8

   D. Plaintiff Cannot Escape the Prior Securities Fraud Lawsuits that Destroy Its Loss Causation Theory.........................................................9

   E. Plaintiff Has Not Pled a Strong Inference of Scienter..........................10

      1. Plaintiff Cannot Reconcile the *Understatement* of Earnings With Its Alleged Fraudulent Scheme ........................10

      2. Alleged Intent to Backdate Does Not Support a Strong Inference of Intent to Commit Accounting Fraud ....................11

III. CONCLUSION............................................................................................13

3243160v1(58899.1)

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007) ..................................................................................................9

*City of Westland Police & Fire Retirement System v. Sonic Solutions*, No. C 07-05111, 2009 WL 942182 (N.D. Cal. Apr. 6, 2009) ................................................................................2, 4, 5, 12, 13

*Collins v. Winex Investments, LLC*, No. 08-cv-51-L, 2009 WL 861738 (S.D. Cal. Mar. 27, 2009)..................................................12

*Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 595 F. Supp. 2d 1253 (M.D. Fla. 2009) ......................................................5, 12

*In re Finisar Corp. Derivative Litig.* 542 F. Supp. 2d 980 (N.D. Cal. 2008) ...........................................................................................5, 6, 7

*In re Hansen Natural Corp. Securities Litigation*, 527 F. Supp. 2d 1142 (C.D. Cal. 2007)..................................................................8

*Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242 (3d Cir. 2009) ............................................................................................11

*Maniscalco v. Brother Int'l Corp. (USA)*, No. 06-CV-04907, 2009 WL 1748527 (D.N.J. June 19, 2009) ............................................8

*McCasland v. FormFactor Inc.*, No. C 07-5545 SI, 2009 WL 2086168 (N.D. Cal. July 14, 2009) ..............................................10

*Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993)................................8, 9

*In re Openwave Systems Inc. S'holder Derivative Litig.*, 503 F. Supp. 2d 1341 (N.D. Cal. 2007) ...............................................5, 6

*Pirraglia v. Novell, Inc.*, 339 F.3d 1182 (10th Cir. 2003).........................9

*In re PMC-Sierra, Inc. Derivative Litigation*, No. C 06-05330 RS, 2007 WL 2427980 (N.D. Cal. Aug. 22, 2007) ....................................7

*Read-Rite Corp. Sec. Litig.*, 335 F.3d 843 (9th Cir. 2003) ......................12

*Rosenberg v. Gould*, 554 F.3d 962 (11th Cir. 2009).........................2, 11

*Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156 (9th Cir. 2009)................11

*In re Sportsline.com Securities Litig.*, 366 F. Supp. 2d 1159 (S.D. Fla. 2004) ..........................................................................................12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S. Ct. 2499 (2007)..............................................................................2

*In re Verifone Holdings, Inc. Securities Litig.*, No. C 07-06140, 2009 WL 1458211 (N.D. Cal. May 26, 2009) ..............................3, 12

*Weiss v. Amkor Technology, Inc.*, 527 F. Supp. 2d 938 (D. Ariz. 2007) ........................................................................................................ 9

*In re Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d 986 (N.D. Cal. 2007) ........................................................................................................ 7

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009) .......................................................................................... 2-3, 11, 12

3243160v1(58899.1)

Defendant Apollo Group, Inc. respectfully submits this reply brief in further support of its motion to dismiss Plaintiff's Second Amended Complaint. Apollo adopts and incorporates the Individual Defendants' reply memorandum.[1]

## I. PRELIMINARY STATEMENT

After the Court rejected the FAC as a "troubling" "cut and paste" job with "vague allegations of deception" that "often rambles," making it "difficult, if not impossible, to evaluate and determine whether the PSLRA's particularity requirements are met,"[2] Plaintiff filed the SAC. This latest sprawling pleading presents an inconsistent and error-filled pseudo-analysis of six stock option grants—five of which occurred *before* the class period and one of which was not even mentioned in the FAC—out of the 100 grants during the period covered by Apollo's restatement; misinterprets Apollo's restatement and fails to attribute any portion of it to the six allegedly backdated grants; alleges misstatements after the class period; re-pleads previously rejected loss causation theories; and presents a loss causation theory that is irreconcilable with documents filed in this court by Plaintiff's counsel.

Apollo's motion details these flaws, as well as recent decisions concerning scienter and backdating. Rather than responding directly, Plaintiff devotes much of its Opposition to a dismissive and misplaced argument that the SAC is now so "streamlined" that any challenge is either improper or unwarranted. Contrary to Plaintiff's hyperbole, the stringent pleading standards that govern Plaintiff's claims require it to plead the purported wrongdoing with particularity, to present a cogent and compelling case, and to present a coherent theory of fraud that is not riddled with mistakes, illogical analysis, and demonstrable flaws. The PSLRA requires no less before Plaintiff may attempt to proceed on its overblown and implausible theories of

---

[1] Terms defined in the memorandum of law filed in support of the Motion to Dismiss by Apollo Group, Inc. dated June 15, 2009 (the "Opening Brief") have the same definition in this reply brief.

[2] Order at 37-38.

-1-

a wide-ranging fraudulent scheme lasting the better part of a decade and supposedly causing hundreds of millions of dollars in investor losses. If this is "impossible," as Plaintiff suggests,[3] that is because Plaintiff's claims cannot withstand the scrutiny that the law demands, and the SAC therefore should be dismissed.

## II.  ARGUMENT

### A.  The Issues Raised in Apollo's Motion to Dismiss Are Properly Before the Court

Plaintiff pretends that the Court's 138-page March 31, 2009 Order was a simple directive to "streamline" the allegations in the FAC and that the pending motion to dismiss presents nothing new. *See*, *e.g.,* Opp. at 1. But the Order went much further than that. Among other things, the Court "agree[d] with defendants that the FAC does not satisfy the heightened pleading standards for fraud"; dismissed from the case several individual defendants; concluded that each of the individualized allegations of scienter was insufficient; and rejected much of Plaintiff's loss causation theory. Order at 38, 54-77, 106-113, 137-38.

Far from being streamlined, Plaintiff's new complaint nearly doubles the number of alleged misstatements;[4] improperly repeats the rejected loss causation theory; renames as defendants individuals previously dismissed; adds a new allegedly backdated stock option grant as to which there are no indicia of backdating; and reflects Plaintiff's misunderstanding of Apollo's restatement. Apollo appropriately filed this motion to address these defects, particularly in light of: (i) recent decisions such as *Rosenberg v. Gould*, 554 F.3d 962 (11th Cir. 2009) and *City of Westland Police & Fire Retirement System v. Sonic Solutions*, No. C 07-05111, 2009 WL 942182 (N.D. Cal. Apr. 6, 2009), dismissing backdating class actions in similar circumstances; and (ii) *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S. Ct. 2499 (2007), and *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981

---

[3] Opp. at 2, 24.

[4] The FAC alleged 26 false statements. Order at 33. The SAC alleges 54. SAC ¶¶ 49-90.

-2-

(9th Cir. 2009),[5] which require an assessment of "*all* the allegations holistically"—necessarily including the new allegations that were not before the Court in the FAC.[6]

### B. Plaintiff's Opposition Ignores the Numerous Deficiencies Identified in the SAC's Claims of Alleged Backdating

As Apollo demonstrated in its Opening Brief, Plaintiff's backdating allegations—which are limited to only six of the 100 grants discussed in Apollo's May 2007 restatement—are rife with errors designed to paint an unsupported and false appearance of intentional retroactive selection of stock option grant dates, where there was none. These errors include:

- Using inconsistent yardsticks to compute the supposed positive "return" of the six challenged grants—two, five or ten day returns—because use of consistent measuring standards would undercut Plaintiff's case by showing that not all of the grants had positive returns (Opening Brief at 9-10);

- Ignoring other publicly reported grants, including the October 22, 2002 and September 10, 2005 grants, as to which there was *no* positive return under *any* of the measuring standards favored by Plaintiff (Opening Brief at 11-12);

- Claiming that a grant was at the lowest price of a year when it was not (Opening Brief at 7-8);

- Hyperbolically characterizing a grant as "nearly the low" for the month (Opening Brief at 12); and

- Failing to note that while a particular grant may have been at the low for a month, the stock price closed at that same low price three times over a nine day period (Opening Brief at 12).

Plaintiff offers no explanation whatsoever in its Opposition as to why it used different measuring standards for different grants, effectively conceding that the shifting analysis is indefensible. This is critical. Plaintiff's entire case depends on its ability to show intentional retroactive selection of historic grant dates, followed years later by intentional misstatements about the accounting for and timing of the historic

---

[5] The parties did not brief the recent decision in *Zucco* in connection with the first motion to dismiss. As other courts have recognized, *Zucco* represented a substantial clarification of the application of PSLRA to securities fraud claims. *See, e.g., In re Verifone Holdings, Inc. Securities Litig.*, No. C 07-06140, 2009 WL 1458211, at *11 (N.D. Cal. May 26, 2009) (granting leave to amend based in part on new pleading standards enunciated in *Zucco*).

[6] Plaintiff also incorrectly suggests that Apollo's motion impermissibly relies on unreported case law. Opp. at 13. It does not.

-3-

grants. Whether viewed as a question of adequately pleading falsity or as a question of scienter, Plaintiff's failure to use consistent measuring standards destroys its ability sufficiently allege to backdating. Its whole case crumbles.

Plaintiff attempts to defend the SAC's narrow focus on six allegedly backdated grants by contending that it does not know the facts about the other grants. But Plaintiff offers no explanation of why it chose to ignore additional grants that were publicly disclosed in a Form 10-K or Form 4s—including the two grants identified in Apollo's Opening Brief that were publicly disclosed. Indeed, Plaintiff effectively concedes that it was aware of at least one such grant, but ignored it, Opp. at 25, presumably because Plaintiff could not conjure any way to make it appear that the ignored grant was backdated.

Shortly after the Court issued the Order, the District Court for the Northern District of California dismissed a backdating class action predicated on similarly flawed analysis. In *City of Westland Police & Fire Retirement System v. Sonic Solutions*, No. C 07-05111, 2009 WL 942182, at *1 (N.D. Cal. 2009 Apr. 6, 2009), plaintiffs alleged that the defendants made false statements about earnings and allegedly concealed backdating. After taking judicial notice of the historic stock prices, the court rejected plaintiffs' claim that scienter could be established because the timing of certain historic grants was "so fortuitous that intentional retroactive selection of such grants is the only reasonable inference that can be drawn."[7] *Id.* at *7. Plaintiffs had alleged that there were 14 discretionary grants during the relevant time period and that eight of the grants were at low points for the month. The court concluded: "In the absence of further information as to why these fourteen grants are distinguishable from thousands of other grants made by Sonic, these fourteen grants must be viewed as a small unrepresentative sample of all stock option grants."

---

[7] This allegation is notably similar to Plaintiff's allegation in the SAC that "several grants reported in Apollo's Forms 10-K had purported grant dates so improbable that backdating it the only plausible explanation." SAC ¶ 38.

1 *Id.* Further, as with the December 18, 1998 and April 19, 1999 grants in this case,
2 "the claim that many of the grants were made at the lowest points of the month may
3 be misleading because, in some instances, the stock traded at the same price or lower
4 several times in a month." *Id.* In this important respect, *Sonic Solutions* is consistent
5 with *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 595 F. Supp. 2d
6 1253 (M.D. Fla. 2009), *In re Finisar Corp. Derivative Litig.*, 542 F. Supp. 2d 980
7 (N.D. Cal. 2008), and *In re Openwave Systems Inc. S'holder Derivative Litig.*, 503 F.
8 Supp. 2d 1341 (N.D. Cal. 2007).

9 With respect to the multiple errors in the SAC concerning the October 22,
10 2003 grant (*e.g.*, Plaintiff's incorrect assertion that the grant was at "the low for the
11 entire year"), Plaintiff weakly claims in a footnote that Apollo (or the Court) should
12 have discerned that Plaintiff was referring to a fiscal year, not calendar year, in its
13 allegations about that grant. Opp. at 21, n6. This only further proves that Plaintiff is
14 playing fast and loose.[8] Not only does Plaintiff want the Court to believe that it is
15 acceptable to pick only a few grants while ignoring other publicly disclosed
16 information, and to apply different "return" measuring standards to those few grants,
17 Plaintiff now wants the Court to countenance "analysis" of some grants based on
18 historic stock prices over a calendar year while at the same time using fiscal year data
19 for other grants. *Compare* SAC ¶ 41 (measuring by *calendar* year) and ¶ 42
20 (measuring by fourth quarter of *calendar* year) with ¶ 44 (purportedly measuring by
21 *fiscal* year). This is yet another example of Plaintiff's lack of bona fide analysis and
22 consistently opportunistic selection of measurement criteria. Plaintiff has not cited
23 any decision upholding a complaint in which the backdating allegations were so
24 misleading.

25 Moreover, Plaintiff makes no effort to explain how other prices during the
26 fiscal year could have any relevance to the October 20, 2003 grant, which was

---

27 [8] *See Finisar*, 542 F. Supp. 2d at 990 n.6 (rejecting analysis that did not specifically
28 plead whether it relied on fiscal or calendar year measure).

publicly reported less than 48 hours after it was made.  Plaintiff's Opposition relies on *In re Openwave Systems Inc. S'holder Derivative Litig.*, 503 F. Supp. 2d 1341 (N.D. Cal. 2007), for the proposition that backdating of the October 20, 2003 grant was still theoretically possible, notwithstanding the time-stamped filings of Form 4s with the SEC on the morning of October 22, 2003.  It is difficult to understand why Plaintiff is so fond of *Openwave*.  There, the court made clear in dismissing the ***theoretically possible*** backdating claims that the timely filing of Form 4s "diminish[es]" any inference of backdating, *id.* at 1349, and that a cogent statistical analysis is required to sustain a finding of fraud, *id.* at 1350 ("In light of these simple probabilities, plaintiffs' Complaint does not, in its current form, allege facts sufficient to support an inference of backdating.").  The *Openwave* court dismissed the complaint because plaintiff failed to perform a sufficient analysis:  "Plaintiffs' allegations and statistical analyses are simply insufficient, at this point, to allow a reasonable inference of backdating."  *Id.* at 1351.  Indeed, the insufficient analysis in *Openwave* was better than the analysis here, because Plaintiff here has used different measuring standards (2, 5 and 10 day returns) and different stock charts (both fiscal and calendar year) in describing its carefully selected subset of historical grants.

*In re Finisar Corp. Derivative Litig.* 542 F. Supp. 2d 980 (N.D. Cal. 2008), is similarly unhelpful to Plaintiff.  In *Finisar*, the court focused on the importance of adequate statistical analysis, holding that "[a]bsent any statistical analysis of the returns on the option grants compared to market returns"—which Plaintiff here has not provided—"the court cannot conclude from plaintiffs' allegations that the timing of the option grants were deliberate rather than due to market coincidence." *Id.* at 993.  The court further faulted plaintiffs for failing—as Plaintiff here has similarly failed to do—to "indicate what percentage the 12 selected grants represent of the total grants to directors and officers over the period to permit the court to consider the probability of the particular grant dates being selected randomly rather than deliberately."  *Id*.  Moreover, *Finisar* discussed allegations of backdating in the

-6-

context of late-filed Form 4s.  Here, Plaintiff has made no such allegations.[9]

Rather than provide a defense of the SAC's pseudo-analysis, Plaintiff asserts, without citation, that "Apollo's stock option granting history speaks for itself, and is 'suspicious' enough on its own," and includes a multi-year stock price chart with its six cherry-picked grants superimposed.  Opp'n Br. at 23-24.  The chart conspicuously does not even include the publicly reported grants during the class period that Apollo has demonstrated were ***not*** at "suspicious" low points.  Opening Brief at 11-12.

In any event, the only thing obvious from Plaintiff's chart is the long-running and pronounced upward trend in Apollo's stock price.  Given that Apollo's stock price increased over 400% during the period depicted—presumably due to the successful management of the company by the same individuals who Plaintiff vilifies—one would expect the value of option grants to increase over time along with the value of *all* long-term holdings in Apollo's stock.  *See In re PMC-Sierra, Inc. Deriv. Litig.*, No. C 06-05330 RS, 2007 WL 2427980, at *4 (N.D. Cal. Aug. 22, 2007) ("What is most apparent is that PMC's stock was highly volatile, and . . . saw a breathtaking rise in value followed by a collapse.  While it therefore is perhaps not surprising that plaintiffs were able to identify numerous grants where the stock price was dramatically higher 20 days later, there is nothing magical about the number 20 that gives rise to a strong inference of likely backdating.").[10]

### C. The Opposition Glosses Over Plaintiff's Misreading of Apollo's Restatement

As Apollo demonstrated in its Opening Brief, Plaintiff improperly included

---

[9] In *In re Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d 986 (N.D. Cal. 2007), also relied on by Plaintiff, the court made clear that the timely filing of a Form 4 makes irrelevant Plaintiff's allegations here that the October 2003 grant was at the low price for the month or year.  *See id.* at 1006.  The court in *Zoran* dismissed ***all*** claims of backdating in which Form 4s were timely filed.  *Id.* at 1006-08.  *See also Finisar*, 542 F. Supp. 2d at 991-94 (rejecting all backdating claims).

[10] *See also Finisar*, 542 F. Supp. 2d at 992-93 (plaintiff must demonstrate how returns on option grants were not explained by stock price performance over the same period).

-7-

1  several irrelevant figures when it purported to quantify the effects of stock option
2  accounting errors on Apollo's earnings.  As with Plaintiff's faulty analysis of
3  Apollo's option grant history, these errors all had the effect of exaggerating
4  Plaintiff's claims.  *See* Opening Brief at 16-18.

5        Plaintiff attempts to defend its mistakes by relying on a District of New Jersey
6  case for the proposition that the Court should simply ignore the SAC's use of these
7  erroneous figures.  Opp. at 16 n.5 (citing *Maniscalco v. Brother Int'l Corp. (USA)*,
8  No. 06-CV-04907, 2009 WL 1748527, at n.1 (D.N.J. June 19, 2009)). *Maniscalco* is
9  inapposite.  It involved a purported "typographical error" that the plaintiff in that case
10 had sought to correct and which the New Jersey district court characterized as a
11 "mere technicalit[y]."  *Maniscalco*, 2009 WL 1748527, at n.1.

12       Here, by contrast, Plaintiff's errors concern no mere technicality, but go to the
13 scope of the purportedly fraudulent accounting scheme on which the SAC relies.
14 Furthermore, Plaintiff has not provided any figures that it contends are free of these
15 errors, nor has it sought to amend the SAC to correct these allegations.  Instead,
16 Plaintiff ***again*** relies on its erroneous figures later in its Opposition.  Opp. at 28.

17       Plaintiff concedes that it failed to attribute any portion of the restatement to
18 the six allegedly "backdated" grants.  Opp. at 14.  Instead, it argues that it "never
19 claimed that the entirety of Apollo's restatement was caused by options granted on
20 those six dates." *Id.*  In other words, Plaintiff wants the Court to assume that
21 backdated option grants made up some part of the restatement.  (More significantly,
22 as discussed in Part E below, Plaintiff wants the Court to substitute its allegations of
23 scienter as to option backdating for allegations of scienter as to the restatement.)

24       A fraud complaint "must specify such facts as the times, dates, places, benefits
25 received, and other details of the alleged fraudulent activity." *Neubronner v. Milken,*
26 6 F.3d 666, 672 (9th Cir. 1993) (citations omitted).[11]  Plaintiff's contention that

---

[11] *See also In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1151 (C.D. Cal. 2007) (applying *Neubronner* in backdating context).

-8-

details of the restatement are unknown to it but known to Apollo is no substitute for specific allegations of fraud as to the restated financials and does not excuse its failure to "state the factual basis for the belief" that the restatement is the product of fraud. *Id.*[12] Here, Plaintiff has not come close to satisfying this standard.

### D. Plaintiff Cannot Escape the Prior Securities Fraud Lawsuits that Destroy Its Loss Causation Theory

The Opposition grossly mischaracterizes Apollo's loss causation argument. Plaintiff contends that the "truth" emerged on October 18, 2006 when Apollo disclosed disappointing earnings and potential options accounting issues, causing Apollo's stock price to drop. However, a derivative complaint had been filed by Lead Counsel *six weeks earlier* based on the same facts and theories, and the same allegedly backdated stock grants described in the FAC. Opening Brief at 19-20.

This shows that the "truth" about those matters must have been known long before October 18, 2006. Assuming the market is efficient, as Plaintiff alleges, SAC ¶ 133, then the filing of lawsuits alleging backdating and accounting fraud well prior to October 18 shows compellingly that the truth must have been known to the market prior to October 18.[13] In light of "the disappointing earnings announcement" on October 18, SAC ¶ 85, Plaintiff's claim that the resulting stock drop was nevertheless caused by already-known stock option accounting issues is not "plausible on its face" and does not "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S.Ct. 1955 (2007) (affirming dismissal where "plaintiffs have not nudged their claims across the line from conceivable to

---

[12] Plaintiff relies on a footnote in a Tenth Circuit case, *Pirraglia v. Novell, Inc.*, 339 F.3d 1182, 1193 n.14 (10th Cir. 2003) for the proposition that it is excused from providing "details regarding defendants' fraud which is [sic] only known to defendants." Opp. at 24. The court in *Pirraglia* held only that the plaintiff was not required "to describe in detail documents and paperwork" to which it did not have access, and may not have even existed. 339 F.3d at 1193 n.14. Here, on the other hand, Plaintiff has failed to plead the most basic underlying facts of the fraudulent scheme alleged, as required by the Ninth Circuit in *Neubronner*.

[13] A statement cannot be a corrective disclosure if "the information ha[s] already been revealed to the public in a prior announcement." Order at 114; *see generally Weiss v. Amkor Technology, Inc.*, 527 F. Supp. 2d 938, 947 (D. Ariz. 2007).

-9-

plausible").

### E. Plaintiff Has Not Pled a Strong Inference of Scienter

#### 1. Plaintiff Cannot Reconcile the *Understatement* of Earnings With Its Alleged Fraudulent Scheme.

Plaintiff concedes that, for 2004, Apollo actually ***understated***—not overstated—its net income. This allegation is entirely inconsistent with the grand scheme to inflate earnings and share price alleged in the SAC. The SAC provides ***no*** explanation—persuasive or otherwise—for how the understatement of net income could be consistent with intent to artificially inflate share price.

Plaintiff unsuccessfully attempts to brush off this defect with a one-sentence, speculative, unpled, and nonsensical idea as to why the 2004 net income numbers might have been understated. Opp. at 16. As the court in *McCasland v. FormFactor Inc*., No. C 07-5545 SI, 2009 WL 2086168 (N.D. Cal. July 14, 2009), recently explained, when a plaintiff's fraud theory depends on a defendant's deliberate overstatement of income, as here, the complaint must provide a "persuasive theory of how understating . . . earnings could have been part of defendants' fraudulent scheme." *Id.* at *8. The SAC is devoid of any explanation for this glaring dissonance. Plaintiff's speculation in its brief about what ***could*** have caused the understatement, absent any factual support or even a cursory analysis, is not sufficient. Opp. at 16.[14]

---

[14] Indeed, Plaintiff's speculation that the positive net income restatement for 2004 might have been caused by cancellation of previously backdated grants finds no support in the accounting rules described in the SAC.

-10-

### 2. Alleged Intent to Backdate Does Not Support a Strong Inference of Intent to Commit Accounting Fraud.

In its attempt to allege scienter, Plaintiff relies on allegations that purport to demonstrate that Defendants *intended to backdate options* or knew of the relevant accounting rules.[15] Putting aside the insurmountable problems with the backdating claims, the SAC fundamentally fails to connect these allegations with *intent to commit accounting fraud* years after the grants were allegedly backdated.

In *Rosenberg v. Gould*, 554 F.3d 962 (11th Cir. 2009), the Eleventh Circuit squarely held that intent to backdate options ***does not*** equate to intent to commit fraud in accounting for and reporting allegedly affected financial results, and that a plaintiff must adequately plead intent as to the later alleged accounting fraud. *Rosenberg* remains the only Federal Circuit Court decision to analyze allegations of pre-class period backdating causing class period financial misstatements.

Plaintiff asserts that the circumstances in *Rosenberg* are somehow anomalous such that the decision "is limited to its unique facts." Opp. at 26.[16] Nothing in *Rosenberg* suggests that its holding is so limited. Moreover, the allegations of scienter in *Rosenberg* are based on the same type of conduct alleged here, e.g., subsequent discovery of inaccurate measurement dates; receipt of allegedly backdated grants by personnel involved in the granting process; and a resignation. 554 F.3d at 964, 965-66.

---

[15] Seeking to bolster its scienter allegations, Plaintiff repeatedly mischaracterizes and overstates the purported "admissions" in Apollo's restatement, which found merely a "possibility" that a few grant dates were retroactively selected given the paucity of contemporaneous evidence, but that there was "insufficient evidence to reach such a conclusion." RJN, Ex. 19, at 50.

[16] Plaintiff also relies heavily on the Third Circuit's recent opinion in *Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242 (3d Cir. 2009). That case explicitly ***rejected*** the Ninth Circuit's two-part scienter analysis set forth in *Zucco*, 552 F.3d at 992 and *Rubke v. Capitol Bancorp Ltd.,* 551 F.3d 1156 (9th Cir. 2009), and therefore runs counter to this Circuit's controlling law. *Avaya*, 564 F.3d at 273 n.46. Moreover, *Avaya* involved a straightforward fraud claim concerning misstatements by two company executives to analysts about price competition and product discounting. *Id.* at 247-49. *Avaya*'s finding of scienter relied most heavily on the "the content and context" of the false statements themselves, *id.* at 269; no similar reliance can be placed on the complex, multi-year financial statements at issue here.

-11-

1   Plaintiff also attempts to distinguish *Rosenberg* by comparing the "size" of the
2   fraud alleged there to that claimed in the instant case, but to do so, Plaintiff cites the
3   SAC for percentages that do not appear there, or that it has already admitted were
4   improperly calculated. Opp. at 16 n.5, 28. Further, as noted, *supra*, the effect of the
5   option grant errors in the instant case actually resulted in an **understatement** of
6   earnings in 2004, facts that make Plaintiff's allegations of scienter even *less*
7   compelling than those in *Rosenberg*.

8   Once the irrelevant **backdating** scienter allegations are set aside, it is clear that
9   the SAC contains virtually no factual support for Plaintiff's contention that Apollo
10  intentionally committed **accounting fraud**. While Plaintiff attempts to demonstrate
11  awareness of accounting rules, such awareness is not evidence of intent to apply
12  those rules incorrectly. *See Verifone,* 2009 WL 1458211, at *7 (accounting errors
13  alone not evidence of scienter unless it would be absurd for managers not to be aware
14  of their effect).[17] For example, even if individuals in Apollo's finance department
15  knew the relevant accounting rules, the SAC alleges no facts showing those
16  individuals also knew that option grants had supposedly been backdated. Likewise,
17  "[i]t is well established that the necessity of a restatement is not enough, standing
18  alone, to create a strong inference of scienter." *Verifone*, 2009 WL 1458211, at *7
19  (citing *Zucco*, 552 F.3d at 1000; *Read-Rite Corp. Sec. Litig.*, 335 F.3d 843, 848 (9th
20  Cir. 2003)).

21  The recent decision in *Sonic Solutions* is instructive. There, the court was
22  faced with allegations of scienter strikingly similar to those in the SAC—a handful of
23  carefully chosen, purportedly backdated grants; receipt of those grants by defendants;
24  erroneous accounting for options under ABP 25; allegedly false SEC filings; a

---

[17] *See also Jabil Circuit,* 595 F. Supp. 2d at 1277 (noting possibility of innocent misapplication of APB 25); *In re Sportsline.com Securities Litig.*, 366 F. Supp. 2d 1159, 1168-69 (S.D. Fla. 2004) ("[I]nterpretations of the measurement date criteria embodied in APB No. 25 are far from obvious . . . ."); *Collins v. Winex Investments, LLC*, No. 08-cv-51-L, 2009 WL 861738, at *4 (S.D. Cal. Mar. 27, 2009) (failure to comply with risk management policies not necessarily evidence of scienter).

-12-

restatement of multi-year earnings; and the resignation of the CFO. *Sonic Solutions*, 2009 WL 942182, at *5-9. The court concluded that many of these factors had to be discounted because of the deficiencies in the plaintiff's analysis. *See, e.g., id.* at *7 (plaintiff failed to distinguish chosen grants from those it ignored), *9 (resignation of CFO not accompanied by allegations showing it was because of alleged fraud). Then, applying a "holistic" review under *Zucco*, the court concluded that, "even when viewed cumulatively, these factors do not establish a strong inference that Defendants acted with deliberate recklessness." *Id.* at *9.

Under the holistic analysis required by the Ninth Circuit in *Zucco*, and as applied to allegations of backdating-derived accounting fraud analogous to those in *Rosenberg* and *Sonic Solutions*, Plaintiff has failed to raise a strong inference of scienter. Plaintiff's derivative allegations related to the tax code and internal controls suffer from the same defect. The SAC must therefore be dismissed.

### III. CONCLUSION

For the foregoing reasons, as well as those set forth in the Opening Brief and the Individual Defendants' memoranda, the Second Amended Complaint should be dismissed.

**Respectfully submitted this 24th day of August, 2009.**

                JENNINGS, STROUSS & SALMON, P.L.C.

                By   */s/ Michael J. Farrell*
                       Michael J. Farrell
                       The Collier Center, 11th Floor
                       201 East Washington Street
                       Phoenix, Arizona 85004-2385

                MORGAN, LEWIS & BOCKIUS LLP

                By   */s/ Brian A. Herman (w/ permission)*
                       Joseph E. Floren / Brian A. Herman
                       101 Park Avenue
                       New York, New York 10178-0060

Attorneys for Defendant Apollo Group, Inc.

3243160v1(58899.1)

**CERTIFICATE OF SERVICE**

I hereby certify that on August 24, 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

- Ramzi Abadou: ramzia@csgrr.com
- Lauren S. Antonino: lantonino@motleyrice.com
- James W. Barnhouse: barnhouse@buckleyking.com
- Patrick V. Dahlstrom: pdahlstrom@pomlaw.com
- Robert O. Dyer: rdyer@stklaw.com
- Joseph E. Floren: jfloren@morganlewis.com
- Joshua Ray Forest: jforest@snowjensen.com
- Marc I. Gross: migross@pomlaw.com
- Brian A. Herman: bherman@morganlewis.com
- Jeffrey W. Lawrence: jeffreyl@lerachlaw.com
- Louisiana District Attorneys Retirement System: smartin@martinbonnett.com
- Susan Joan Martin: smartin@martinbonnett.com
- Virginia F. Milstead: virginia.milstead@skadden.com
- Robert D. Mitchell: robertmitchell@mitchell-attorneys.com, mitchell_atty@msn.com
- Peter B. Morrison: pmorriso@skadden.com
- Fei-Lu Qian: flqian@pomlaw.com
- David A. Rosenfeld: courtnotices@unioncounsel.net
- Samuel H. Rudman: srudman@lerachlaw.com
- Michael Salcido: salcido@buckleyking.com
- Jay P. Saltzman: JAY@SPORNLAW.COM
- Eric S. Waxman: ewaxman@skadden.com
- Christopher M. Wood: cwood@csgrr.com

I further certify that on August 24, 2009, I put in the U.S. Mail a paper courtesy copy of the foregoing document and the Notice of Electronic Filing to the assigned Judge.

*/s/ Kathrine A. Sousa*
Kathrine A. Sousa

-14-

3243086v1(58899.1)