ERIC S. WAXMAN (*Pro Hac Vice*)
PETER B. MORRISON (*Pro Hac Vice*)
VIRGINIA F. MILSTEAD (*Pro Hac Vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, California 90071-3144
Telephone: (213) 687-5000
Facsimile: (213) 687-5600
eric.waxman@skadden.com

Attorneys for Defendants
John G. Sperling, Todd S. Nelson, Kenda B. Gonzales, Daniel E. Bachus, John Blair, John R. Norton III, Hedy Govenar, Brian E. Mueller, Dino J. DeConcini, Peter Sperling, and Laura Palmer Noone

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| TEAMSTERS LOCAL 617 PENSION AND WELFARE FUNDS, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>APOLLO GROUP, INC., et al.,<br><br>Defendants. | CASE NO.: 2:06-CV-02674-RCB<br><br>REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE, PORTIONS OF LEAD PLAINTIFF'S SECOND AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>**ORAL ARGUMENT REQUESTED** |

Individual Defendants John G. Sperling, Todd S. Nelson, Kenda B. Gonzales, Daniel E. Bachus, John Blair, John R. Norton III, Hedy Govenar, Brian E. Mueller, Dino J. DeConcini, Peter Sperling, and Laura Palmer Noone (collectively, "Defendants") respectfully submit this reply memorandum in further support of their Motion to Dismiss, or in the Alternative, to Strike Portions of Lead Plaintiff's ("Plaintiff") Second Amended Complaint for Violations of the Federal Securities Laws ("SAC").

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......... ii

I. PRELIMINARY STATEMENT .......... 1

II. PLAINTIFF FAILS TO STATE A CLAIM FOR INSIDER TRADING AGAINST MR. BLAIR .......... 3

III. PLAINTIFF HAS FAILED TO STATE A CLAIM FOR CONTROL PERSON LIABILITY .......... 4

IV. PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER SECTION 10(B) FOR THE NEWLY-ADDED OCTOBER 20, 2003 GRANT .......... 6

V. PLAINTIFF HAS FAILED TO PLEAD SUFFICIENT FACTS ABOUT APOLLO'S STOCK OPTION GRANTS TO RAISE AN INFERENCE OF BACKDATING .......... 9

VI. PLAINTIFF FAILS TO PLEAD FALSE OR MISLEADING STATEMENTS WITH PARTICULARITY .......... 10

VII. THIS COURT SHOULD GRANT DEFENDANTS' MOTION TO STRIKE .......... 12

VIII. CONCLUSION .......... 13

# TABLE OF AUTHORITIES

## CASES

In re Amgen, Inc. Securities Litigation, 544 F. Supp. 2d 1009 (C.D. Cal. 2008)....................5

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009)....................6

Atchley v. Pepperidge Farm, Inc., No. CV-04-0452-FVS, 2008 WL 2074035 (E.D. Wash. May 14, 2008)....................5

In re CNET Networks, Inc. Shareholder Derivative Litigation, 483 F. Supp. 2d 947 (N.D. Cal. 2007)....................7

Chan v. Orthologic Corp., No. 96-1514 PHX RCV, 1998 WL 1018624 (D. Ariz. Feb. 5, 1998)....................1, 3, 4

In re Countrywide Finance Corp. Securities Litigation, 588 F. Supp. 2d 1132 (C.D. Cal. 2008)....................12, 13

Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc., 595 F. Supp. 2d 1253 (M.D. Fla. 2009)....................3, 7, 10

In re Finisar Corp. Derivative Litigation, 542 F. Supp. 2d 980 (N.D. Cal. 2008)....................7

In re Hansen Natural Corp. Securities Litigation, 527 F. Supp. 2d 1142 (C.D. Cal. 2007)....................5, 6, 7, 8

In re Impac Mortgage Holdings Inc. Securities Litigation, 554 F. Supp. 2d 1083 (C.D. Cal. 2008)....................5

Lormand v. US Unwired, Inc., 565 F.3d 228 (5th Cir. 2009)....................12, 13

Nach v. Baldwin, No. C 07-0740 SI, 2008 WL 410261 (N.D. Cal. Feb. 12, 2008)....................10

New York State Teachers' Retirement System v. Fremont General Corp., No. 07-cv-05756-FMC-FFMx, 2008 WL 4812021 (C.D. Cal. Oct. 28, 2008)....................11

In re Openwave Systems Inc. Shareholder Derivative Litigation, No. C 06-03468, 2008 WL 410259 (N.D. Cal. Feb. 12, 2008)....................7, 8

In re Openwave Systems Shareholder Derivative Litigation, 503 F. Supp. 2d 1351 (N.D. Cal. 2007)....................7

Paracor Finance, Inc. v. General Electric Capital Corp., 96 F.3d 1151 (9th Cir. 1996)....................4

Pearson v. Dennison, 353 F.2d 24 (9th Cir. 1965)....................9

Ruble v. Rural/Metropolitan Corp., No. CV99-0822-PHX, 2001 WL 1772319 (D. Ariz. Jan. 26, 2001) ........ 5

Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc., __ F. Supp. 2d __, 2009 WL 890479 (D. Ariz. Mar. 31, 2009) ........ passim

In re Vantive Corp. Securities Litigation, 283 F.3d 1079 (9th Cir. 2002) ........ 11

In re Zoran Corporation Derivative Litigation, 511 F. Supp. 2d 986 (N.D. Cal. 2007) ........ 8

**STATUTES**

Fed R. Civ. P. 9(b) ........ 10

15 U.S.C. § 78u-4(b)(2) ........ 10

## I. PRELIMINARY STATEMENT

Rather than respond substantively to Defendants' Motion to Dismiss (the "Motion"), Lead Plaintiff's Omnibus Opposition ("Opposition") ironically resorts to accusing Defendants of seeking "reconsideration" of the Court's prior Order in this action in the hope that the Court will treat Defendants' arguments as previously rejected. However, as explained below, Plaintiff's attempt to avoid rigorous scrutiny of its Second Amended Complaint ("SAC") cannot serve to conceal the numerous fatal flaws that infect each of Plaintiff's claims.[1]

For example, in seeking to defend its defective insider trading allegations against John Blair, Plaintiff strenuously argues that, to state a claim for insider trading, it is not required to describe Mr. Blair's prior trading history to show that the supposed insider trading was inconsistent with such trading history. But the Court in its prior Order in this action – the very Order Plaintiff claims Defendants have ignored – has already expressly found that Plaintiff failed to plead (as they must) that very prior trading history. See Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc., __ F. Supp. 2d __, No. 2:06-CV-2674-PHX-RCB, 2009 WL 890479, at *62 (D. Ariz. Mar. 31, 2009) (Broomfield, J.). In its prior Order, the Court expressly stated:

> [T]he Court agrees with defendant Blair that this insider trading claim is lacking as against him because plaintiff did not "plead facts to show that [Blair's] trading was out of proportion with [his] usual trading."

Id. (citing Chan v. Orthologic Corp., No. 96-1514 PHX RCV, 1998 WL 1018624 (D. Ariz. Feb. 5, 1998)) (emphasis added). Unhappy with that result, Plaintiff simply ignores the Court's prior Order, as well as the Court's prior decision in Chan, and refuses to plead Mr. Blair's prior trading history to support an insider trading claim. Absent such allegations, the Court should dismiss with prejudice this claim as against Mr. Blair.

Likewise, Plaintiff simply does not respond to Defendants' arguments concerning Plaintiff's control person liability claim under § 20(a) against Messrs. DeConcini, Mueller, and Bachus and Mses. Noone and Govenar. Rather than assert any substantive response, Plaintiff merely declares that its prior briefing on its Motion to Reconsider

[1] Defendants join in the Reply Memorandum in Support of Motion to Dismiss by Apollo Group, Inc., filed contemporaneously herewith.

Dismissal of Plaintiff's § 20(a) Claim as to Certain Defendants ("Motion to Reconsider") addresses Defendants' Motion. However bold, Plaintiff's proclamation is simply untrue. Neither Plaintiff's Opposition nor Motion to Reconsider addresses sufficiently Defendants' three arguments as to why Plaintiff has failed to state a claim for control person liability. Rather, as Defendants demonstrated: (1) Plaintiff's new allegations concerning signatures on filings with the Securities & Exchange Commission ("SEC") are insufficient to plead control as a matter of Ninth Circuit law; (2) Plaintiff's allegations as to each Defendant's position are insufficient to establish that person's control of Apollo Group, Inc. ("Apollo" or "the Company"); and (3) Plaintiff's remaining allegations are too boilerplate to plead control under Federal Rule of Civil Procedure 8(a), much less the appropriate Rule 9(b) pleading standard.

Plaintiff similarly mischaracterizes the Court's past Order concerning Plaintiffs' § 10(b) claim. Contrary to Plaintiff's position, this Court never concluded that, merely by reorganizing its SAC, Plaintiff could foreclose further challenge to the inadequacies of its allegations. Indeed, the Court expressly "agree[d] with defendants that the FAC [did] not satisfy the heightened pleading standards for fraud under either Rule 9(b) or the [Private Securities Litigation Reform Act]" ("PSLRA"). Apollo, 2009 WL 890479, at *18. The Court further concluded that "[t]he FAC in its current form [made] it difficult, if not impossible, to evaluate and determine whether the PSLRA's particularity requirements are met." Id. at *19. According to the Order, therefore, neither Defendants nor the Court could assess whether the particularity requirements of the PSLRA or Rule 9(b) were met until Plaintiff pleaded its claims in a form first permitting such an evaluation. Defendants' Motion now asks for the review that Plaintiff's prior puzzle pleading did not permit.

Plaintiff's position that Defendants may not challenge the SAC simply because Plaintiff purportedly reorganized its complaint is particularly ironic considering Plaintiff added an entirely new challenged grant to the SAC that did not appear in any prior pleading. But Plaintiff's newly added October 20, 2003 grant also cannot raise an inference of backdating because Defendants timely filed Form 4s disclosing this grant a mere two days after it was issued. Moreover, the grant was made less than two months

into Apollo's fiscal year. Consequently, Defendants could not possibly have known a mere two days after the grant was issued how the stock price would react over the balance of that fiscal year. For this reason, courts routinely conclude that the timely filing of a Form 4 with the SEC negates any inference of backdating. See, e.g., Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc., 595 F. Supp. 2d 1253, 1275 (M.D. Fla. 2009) (concluding that allegation that Form 4s were filed within two days of the option grant "**completely undermines any suspicion otherwise attending any grant**") (emphasis added). Plaintiff ignores virtually all of this case law in its Opposition.

In the end, for all of these reasons and those below, the reorganized SAC still does not state a claim on which relief may be granted nor satisfy the heightened pleading standards of the PSLRA or Rule 9(b). As a result, the Court should dismiss the SAC.

## II. PLAINTIFF FAILS TO STATE A CLAIM FOR INSIDER TRADING AGAINST MR. BLAIR

In its Opposition, Plaintiff persists in arguing, as it did unsuccessfully in opposition to Mr. Blair's first motion to dismiss, that it is not required to plead Mr. Blair's prior trading history under § 20A. (Opp. 17:26-19:7; compare with Lead Plaintiff's Omnibus Opposition to Defendants' Motions to Dismiss (docket 94) 53:6-14.) In so doing, Plaintiff fails to acknowledge that this Court, relying on its previous decision in Chan, unambiguously concluded that Plaintiff's "insider trading claim is lacking as against [Mr. Blair] because plaintiff did not 'plead facts to show that [Blair's] trading was out of proportion with [his] usual trading.'" Apollo, 2009 WL 890479, at *62. Plaintiff's contention that "no court has ever held that a plaintiff must plead that a defendant's trades were out of line with prior trading in order to state a claim for insider trading under §20A" (Opp. 18:26-28) ignores that this Court has held exactly that on two separate occasions.

Although Plaintiff states that this Court's decision in Chan "discussed insider trading as a component of scienter with respect to a §10(b) claim" and that Chan "is not relevant to an insider trading [sic] under §20A" (Opp. 18:17-19), this is not true. In Chan, this Court considered whether the plaintiffs could "assert individual insider trading claims against the individual Defendants" and concluded that "[p]laintiffs cannot withstand the motion to dismiss on **any** individual insider trading theory." Chan, 1998

WL 1018624, at *12 n.10 (emphasis added). Among other things, the Court in Chan concluded that the plaintiffs had failed to plead they traded contemporaneously with the defendants or that the defendants' "trading was out of proportion with the insider's usual trading." Id. Because Plaintiff here ignores Chan and this Court's Order and therefore does not plead Mr. Blair's prior trading history, as the Court required, the Court should dismiss this claim against Mr. Blair with prejudice.

## III. PLAINTIFF HAS FAILED TO STATE A CLAIM FOR CONTROL PERSON LIABILITY

Plaintiff fails to respond to the arguments in Defendants' Motion that the SAC fails to state a claim against Messrs. DeConcini, Mueller, and Bachus and Mses. Noone and Govenar under § 20(a), 15 U.S.C. § 78t. (Mot. 14-20.) Instead, Plaintiff ignores them, conveniently proclaiming that it has already "comprehensively addressed" "such contentions" in its Motion to Reconsider and Reply in Support of Lead Plaintiff's Motion to Reconsider ("Reconsideration Reply" or "Recon. Rep."). (Opp. 17.) But Plaintiff could not previously have addressed Defendants' arguments because, as Plaintiff itself asserts, the SAC contains different control person allegations than the FAC. Thus, Plaintiff's prior briefing asking for reconsideration concerning the FAC could not have addressed Defendants' arguments in response to the new SAC.

Specifically, Plaintiff's contention that a mere **signature** on an SEC filing, without more, is sufficient to establish control is incorrect. (Opp. 17:3-7.) As Defendants' Motion explains, the Ninth Circuit has held that plaintiffs must establish both specific and general control in order to establish control person liability under § 20(a). (Mot. 19 (citing Paracor Finance, Inc. v. General Electric Capital Corp., 96 F.3d 1151, 1162-63 (9th Cir. 1996).). By asserting that a signature on an SEC filing alone is sufficient, Plaintiff (and the cases it relies upon) simply conflate control over the specific "transaction" (in this instance the content of the SEC filing) with general control over the "primary violator." (Mot. 19:8-20:10.) Not surprisingly, Plaintiff's Motion to Reconsider and its Reconsideration Reply do not address this argument. Nor does Plaintiff make any attempt in its Opposition to address it, much less identify any

allegations pleading both general and specific control.[2] An argument to which Plaintiff does not respond is a conceded argument. See Atchley v. Pepperidge Farm, Inc., No. CV-04-0452-FVS, 2008 WL 2074035, at *8 (E.D. Wash. May 14, 2008) ("The Plaintiffs having failed to respond to [the defendant's] argument in their briefing, the Court has no choice but to consider the issue conceded."). The application of that rule is particularly appropriate to Plaintiff here because outside directors and officers of subsidiaries cannot possibly have control over the daily affairs of a corporation. (Mot. 15:17-18:8.)

Plaintiff similarly fails to rebut the settled proposition that allegations of Defendants' **positions** in the Company are insufficient to plead control. (Mot. 15:18-18:8.) In its Reconsideration Reply, Plaintiff did not address these arguments point-by-point, and instead mischaracterized them as going to Defendants' "individual defenses" that they did not participate in wrongdoing. (Recon. Rep. 10:8-11:2.) In fact, as is made plain in both Defendants' Motion and their Opposition to the Motion to Reconsider, Defendants' contentions in this context go to whether Plaintiff has pleaded the requisite general control consisting of participation in Apollo's day-to-day business. See, e.g., Ruble v. Rural/Metro. Corp., No. CV 99-0822-PHX, 2001 WL 1772319, at *6 (D. Ariz. Jan. 26, 2001) (explaining that for a director to be liable, he or she must be involved in the corporation's day-to-day business and transaction or statements at issue); In re Impac Mortgage Holdings Inc. Sec. Litig., 554 F. Supp. 2d 1083, 1101 n.12 (C.D. Cal. 2008) (concluding that plaintiff must allege "'a significant degree of day-to-day operational control, amounting to the power to dictate another party's conduct or operations'"). As set forth in detail in Defendants' Motion, Plaintiff pleads **nothing** to show such day-to-day involvement, and Plaintiff has not argued to the contrary.

Finally, Plaintiff's remaining allegations of control – all of which are boilerplate – are insufficient to state a § 20(a) claim. See, e.g., In re Hansen Natural Corp. Sec. Litig., 527 F. Supp. 2d 1142, 1163 (C.D. Cal. 2007) (rejecting conclusory, boilerplate

---

[2] As acknowledged in Defendants' Motion, this Court cited In re Amgen, Inc. Securities Litigation, 544 F. Supp. 2d 1009, 1037 (C.D. Cal. 2008) in its Order for the proposition that a signature is enough, but this was not the Court's holding. Rather, as to any defendant for which the Court concluded control was properly pleaded, the Court considered several other factors. See Apollo, 2009 WL 890479, at *64.

allegations of control). In its Opposition, Plaintiff makes no attempt to address this argument or Defendants' supporting authorities. Instead, Plaintiff merely argues in its Opposition and its Reconsideration Reply that it is not required to plead a § 20(a) claim with particularity under Rule 9(b). (Opp. 17:15-17; Recon. Rep. 2:8-5:15; 10:22-11:2.) However, this Court need not reach that issue because, even under a Rule 8(a) standard, particularly as reinvigorated by recent United States Supreme Court authority, Plaintiff's conclusory allegations do not state a claim. (Mot. 18:9-18); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (explaining that a "pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'" fails to state a claim under Rule 8(a)).[3] The Court should, therefore, dismiss Plaintiffs' § 20(a) claim.

## IV. PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER SECTION 10(B) FOR THE NEWLY-ADDED OCTOBER 20, 2003 GRANT

Plaintiff fails to raise an inference that the October 20, 2003 grant was backdated. As an initial matter, insisting that it does not seek to state a claim based on backdating itself, Plaintiff takes issue with Defendants' challenging the allegations concerning this grant at all, even though they are entirely new. (Opp. 19:9-20:2, 20:7-15.) However, this Court previously analyzed Plaintiff's backdating allegations as separate claims. See Apollo, 2009 WL 890479, at *13-14. Given that the Court dismissed all of Plaintiff's backdating claims as time-barred, id., Defendants could conceive of no reason for Plaintiff's addition of allegations as to a more recent grant, except that Plaintiff hoped to reassert a backdating claim. (SAC ¶¶ 2-6.) Plaintiff now makes representations to the contrary, but that hardly renders Defendants' arguments "pretext[ual]." (Opp. 21:1-2.)

Regardless of Plaintiff's reasons for including these new allegations, they are insufficient to raise an inference that the October 20, 2003 grant was backdated. As set forth in Defendants' Motion, the fact that Form 4s reporting the grant were filed two days after it was made negates an inference of backdating. See, e.g., Hansen, 527 F. Supp. 2d at 1156. Plaintiff attempts to spin the law in its favor with respect to Defendants' timely filing of Form 4s, boldly proclaiming that Defendants have "without question" misstated

---

[3] Moreover, Plaintiff has acknowledged that the arguments it made in the Motion to Reconsider merely affect whether the Court will re-examine its § 20(a) claim in light of

*(cont'd)*

the law. (Opp. 21:19.) However, Plaintiff conveniently overlooks that it has flatly ignored all but one of the cases Defendants cited in their Motion that squarely support their position.[4] In CNET, for example, the court concluded that the plaintiffs had failed to plead facts that a grant was likely backdated because the grant "was on record with the SEC two days after the grant." CNET, 483 F. Supp. 2d at 961. The court explained: "Defendants would not have had time to see what the stock did in the next few days in order to find the most advantageous grant date." Id. Similarly, in Jabil, the court concluded that the plaintiff had inadequately alleged backdating because, among other things, the filing of the Form 4s "completely undermines any suspicion otherwise attending any grant." Jabil, 595 F. Supp. 2d at 1275. Plaintiff makes no attempt to distinguish these cases (nor could it).

Indeed, the only case Defendants cited that Plaintiff even mentions in its Opposition is In re Finisar Corp. Derivative Litigation, 542 F. Supp. 2d 980 (N.D. Cal. 2008). However, Plaintiff cites Finisar for the proposition that a delay in filing a Form 4 may support an inference of backdating. (Opp. 22:11-14.) Plaintiff overlooks that the court in Finisar concluded timely-filed Form 4s (as here) "'somewhat diminish the ability to infer backdating,'" and concluded that backdating had not been sufficiently pleaded as to those grants. Finisar, 542 F. Supp. 2d at 989, 994.[5] Similarly misplaced is Plaintiff's

---

*(cont'd from previous page)*
the new allegations in the SAC, not whether those new allegations state a claim. (See Mot. to Reconsider 3:6-18.)

[4] Defendants cite and Plaintiff make no attempt to distinguish: Jabil, 595 F. Supp. 2d at 1275; Hansen, 527 F. Supp. 2d at 1156 ("The filing of the Form 4s corroborates the grant dates, and makes backdating of these options highly unlikely, regardless of the change in the stock price"); In re Openwave Systems Inc. Shareholder Derivative Litigation, No. C 06-03468, 2008 WL 410259, at *3 (N.D. Cal. Feb. 12, 2008); and In re CNET Networks, Inc. Shareholder Derivative Litigation, 483 F. Supp. 2d 947, 958 (N.D. Cal. 2007) ("It is highly unlikely that defendants could have gone back in time to change the date for this grant if it was on the record with the SEC two days after the fact. Defendants would not have had time to see what the stock did in the next few days in order to find the most advantageous grant date. This does cast doubt on plaintiffs' allegations.").

[5] Plaintiff also argues that In re Openwave Systems Shareholder Derivative Litigation, 503 F. Supp. 2d 1351 (N.D. Cal. 2007), cited in Apollo's motion, "actually says the exact opposite" of what Apollo claims. (Opp. 21:22-23.) Plaintiff points to the court's observation that "'[b]ackdating stock options by two days is still backdating.'" (Opp. 22:1-2 (citing Openwave, 503 F. Supp. 2d at 1351) (emphasis omitted). Plaintiff fails to mention, however, that the court granted the defendants' motion to dismiss. Openwave, 503 F. Supp. 2d at 1351. In a subsequent opinion considering the amended complaint,

*(cont'd)*

reliance on In re Zoran Corporation Derivative Litigation, 511 F. Supp. 2d 986 (N.D. Cal. 2007). In that case, the court acknowledged the theoretical possibility that a grant could be backdated by two days, but concluded in fact that the plaintiff had failed to plead adequately that any grants with timely-filed Form 4s had been backdated. Id. at 1006-08. Zoran thus does not conflict with the majority of courts that conclude that a timely-filed Form 4 negates any inference of backdating.

In short, the point Plaintiff attempts to obfuscate is the reason the timely filing of a Form 4 negates an inference of backdating. Contrary to Plaintiff's recasting of Defendants' argument, timely filing of Form 4s does not mean that it is physically impossible to backdate a grant by two days. Rather, one cannot glean anything meaningful from supposedly extraordinary returns on the grant because a "one- or two-day window could [not] give defendants enough perspective on the market to intentionally choose the lowest closing price" of a certain time. Openwave, 2008 WL 410259, at *3. This rationale is fully applicable here, where the SAC alleges that the October 20, 2003 grant was suspicious because it enjoyed high two-day returns and was made at the lowest price of the fiscal year that continued for ten months after the grant. (SAC ¶ 44.) As argued in Defendants' motion (and not responded to by Plaintiff), a two-day window could not possibly give Defendants perspective on what would happen over the next ten months. (Mot. 5:12-21.) Moreover, the allegedly high two-day return is not suspicious. Apollo' stock was rising generally over the entire period Plaintiff claims backdating occurred. (Opp. 24:1-15.) High returns are meaningless when the stock price frequently increases over such a period or continues to increase after the grant. See Hansen, 527 F. Supp. 2d at 1156 ("Because Hansen's stock price was generally rising, it is not surprising that Hansen's stock price would have risen following the twelve stock option grant dates identified in the Complaint.").

Plaintiff's assertion that Apollo admitted in its SEC filings that "there was in fact a

---

*(cont'd from previous page)*
the court acknowledged its conclusion that "[b]ackdating stock options by two days is still backdating," but concluded, "the Court is not convinced that a one- or two-day window could give defendants enough perspective on the market to intentionally choose the lowest closing prices of the quarter." Openwave, 2008 WL 410259, at *3. Consequently, the court concluded that backdating had not been pleaded. Id. at *4.

possibility that [a] grant was backdated by a single day" cannot rescue any claim based on the October 20, 2003 grant. (Opp. 22:20-23.) Plaintiff does not even base its allegations concerning the October 20, 2003 grant on this purported admission in Apollo's SEC filings. (SAC ¶ 44.) More importantly, the very same SEC filing on which Plaintiff relies affirmatively states that grants for which Form 4s were timely filed, like the October 20, 2003 grant at issue, "the original stated grant date is the most likely measurement date." (SAC ¶ 96 (47:12-13).) Therefore, the SEC filing referring to a grant possibly backdated by a day cannot be referring to the October 20, 2003 grant. Plaintiff simply ignores these facts.[6]

## V. PLAINTIFF HAS FAILED TO PLEAD SUFFICIENT FACTS ABOUT APOLLO'S STOCK OPTION GRANTS TO RAISE AN INFERENCE OF BACKDATING

Plaintiff's allegations concerning the remaining five grants are equally infirm. Contrary to Plaintiff's assertion, this Court did not consider previously the arguments raised in Defendants' Motion. Rather, the Court considered Defendants' argument that Plaintiff was required to provide a statistical analysis in order to plead backdating. See Apollo, 2009 WL 890479, at *25-26. The Court expressly declined to consider whether Plaintiff's complaint was "deficient because it 'does not plead any of the mandatory specifics' as to the roughly 100 unidentified grants therein." Id. at *14 n.4. With the inclusion of Plaintiff's new allegations concerning the October 20, 2003 grant, however, Defendants have again raised this argument. There is nothing precluding the Court from considering it. See Pearson v. Dennison, 353 F.2d 24, 29 (9th Cir. 1965) (law of the case doctrine does not apply to issues not reached by the court).

Plaintiff does not attempt to distinguish the line of cases cited in Defendants' Motion for the proposition that, in order for a purported pattern of low strike prices to be indicative of backdating, Plaintiff must plead facts concerning other grants. (See Mot.

[6] Even Plaintiff apparently does not wholeheartedly believe its own argument, suggesting that the possibility that a grant was retroactively selected by a day renders its allegations "plausible" because Mr. Nelson could have "retroactively selected the October 20 grant date" on October 21, 2003. (Opp. 23:5-8.) Plaintiff's imagined scenario aside (which is not alleged in the SAC), Plaintiff's burden is not merely to raise "plausible" allegations, but to plead sufficient facts "from which it may be reasonably inferred that backdating" occurred. Apollo, 2009 WL 890479, at *23. For all the reasons above, such an inference is not reasonable here.

6:2-21.) Instead, Plaintiff asserts that it cannot meet this standard because an unspecified number of grants were not publicly reported. (Opp. 24:16-24.) However, Plaintiff does not explain how it is excused from pleading facts concerning grants that were reported or explaining how many grants were unreported. Plaintiff does not even attempt to do that much, notwithstanding a clear obligation to do so. See, e.g., Jabil, 595 F. Supp. 2d at 1275 ("A showing of unusualness or suspiciousness requires an allegation of the amount and timing of the stock options granted during the class period and the options granted before or after the class period"); Nach v. Baldwin, No. C 07-0740 SI, 2008 WL 410261, at *5 (N.D. Cal. Feb. 12, 2008) (rejecting allegations of grants made at low prices absent information concerning other grants).[7]

## VI. PLAINTIFF FAILS TO PLEAD FALSE OR MISLEADING STATEMENTS WITH PARTICULARITY

Plaintiff has also failed to plead false and misleading statements in compliance with the PSLRA and Rule 9(b). 15 U.S.C. § 78u-4(b)(1); Fed R. Civ. P. 9(b). As an initial matter, Plaintiff fails to respond to Defendants' arguments with respect to certain categories of statements alleged to be false in the SAC. For example, Plaintiff makes no real effort to defend its allegations concerning **earnings announcements**, which Defendants argued must be dismissed under Rule 9(b) because Plaintiff failed to attribute them to any Defendant. (Mot. 8:14-9:3); see also Apollo, 2009 WL 890479, at *42 n.13 (noting that Defendants cannot be liable for press releases not attributed to them). Plaintiff's ipse dixit assertion that it identified "who made such statements" is demonstrably untrue. (See SAC ¶¶ 50(a), 51(a), 52(a), 53(a), 54(a), 55(a), 56(a), 57(a), 58(a), 59(a), 60(a), 61(a), 62(a), 63(a), 64(a), 65(a), 66(a).)

Nor does Plaintiff make any meaningful effort to respond to Defendants' arguments as to why Plaintiff's allegations concerning **denials of wrongdoing** are inadequate. Plaintiff simply argues that such statements were properly pleaded because unspecified "defendants" allegedly knew of the conduct they were denying. (Opp. 13:16-

[7] Plaintiff does state in its Opposition that there were seven option grants reported in Forms 10-K for the years 1998-2003. (Opp. 25:11-20.) Although Plaintiff states that this allegation is in the Complaint, it is not. (SAC ¶ 38 (alleging only that "several grants reported in Apollo's Forms 10-K" had low prices).) In any event, the SAC alleges that

*(cont'd)*

18.) Plaintiff's assertion does little if anything to support its claim because, with respect to the statements: (i) the speaker is not identified at all; (ii) is not a defendant accused under § 10(b); or (iii) because falsity or other key details are not adequately pleaded. (Mot. 13:3-14:7.) Plaintiff's failure to come to terms with these flaws is sufficient reason for the Court to dismiss any § 10(b) claim purportedly arising from these statements.

Plaintiff's defense of its allegations concerning Apollo's **financial statements** on Forms 10-K and 10-Q, statements concerning **APB No. 25, IRC § 162(m)**, and **Sarbanes Oxley certifications** is equally unpersuasive. Plaintiff's main response is that Apollo's Restatement purportedly admits the falsity of these statements. (Opp. 10:25-15:13.) The difficulty with this position, as explained in Defendants' Motion, is that it fails to establish any nexus – as it must – between the statements Plaintiff challenges and the facts that this Court concluded supported an inference of scienter. See New York State Teachers' Ret. Sys. v. Fremont Gen. Corp., No. 07-cv-05756-FMC-FFMx, 2008 WL 4812021, at *5 (C.D. Cal. Oct. 28, 2008) (noting that scienter had to be pleaded "in connection with" each allegedly false statement). "Scienter" cannot just exist in the abstract, unmoored to any particular statement.

Thus, while the Court may have concluded that scienter was adequately pleaded as to certain Defendants, that does not ipso facto mean that scienter was adequately pleaded in connection with any and every "false" statement Plaintiff included in the SAC after the fact. The Court was forced to make its decision as to scienter in the context of a complaint that was so poorly organized that the Court concluded "[t]he FAC in its current form makes it difficult, if not impossible, to evaluate and determine whether the PSLRA's particularity requirements are met." Apollo, 2009 WL 890479, at *19.[8]

Specifically, while the Court may have concluded that scienter was adequately pleaded in connection with some statements, it explicitly concluded it was not pleaded in

*(cont'd from previous page)*
the purported backdating took place from 1994 until 2006, but Plaintiff does not explain how many grants were publicly reported during that time.

[8] While Plaintiff claims that Defendants "conflate" scienter and falsity, it has long been the rule in the Ninth Circuit that "because 'falsity and scienter in private securities fraud cases are generally strongly inferred from the same set of facts,' . . . the two requirements may be combined into a unitary inquiry under the PSLRA." In re Vantive Corp. Sec. Litig., 283 F.3d 1079, 1091 (9th Cir. 2002).

connection with SOX certifications. Apollo, 2009 WL 890479, at *29-30. This means that the SOX certifications are not actionable misstatements. Plaintiff's hypertechnical argument that this "conflates" scienter and falsity does not change this result.

Plaintiff's ambition with respect to its § 10(b) claim based on all of Apollo's SEC filings from 2001 to 2006 also vastly overshoots the narrow findings in the Court's prior order. Pleading a claim with sufficient particularity with respect to all these SEC filings would require Plaintiff to demonstrate that defendants acted with the requisite scienter regarding all 57 grants that gave rise to the Restatement. The Court, however, found that plaintiff adequately plead scienter with respect to five grants, not 57.[9]

The SAC contains no allegations concerning grants other than the (now) six identified in the SAC, and in fact, alleges that the incorrect measurement dates for the grants that gave rise to the Restatement were a product of innocent paperwork errors. (See SAC ¶ 96.) Thus, absent facts connecting every allegedly false or misleading statement corrected by the Restatement with Plaintiff's alleged "scheme" of backdating, Plaintiff should be required to either plead scienter as to all 57 grants or limit its SAC to statements made false by virtue of the six grants.

## VII. THIS COURT SHOULD GRANT DEFENDANTS' MOTION TO STRIKE

Plaintiff's attempt to avoid Defendants' motion to strike also fails. As a result, the Court should strike Plaintiff's "inclusion of the pre-October loss allegations." (Opp. 31:23-24.) Pretending that this Court did not already conclude that these allegations "cannot form the basis for pleading loss causation here," Apollo, 2009 WL 890479, at *58, Plaintiff argues that the allegations are appropriate because they pertain to a "series of partial disclosures." (Opp. 31:3-19 (citing In re Countrywide Fin. Corp. Sec. Litig., 588 F. Supp. 2d 1132, 1200 (C.D. Cal. 2008) and Lormand v. US Unwired, Inc., 565 F.3d 228, 255 (5th Cir. 2009).) But cases Plaintiff cites in support of this position are distinguishable. In both Countrywide and Lormand, the court concluded that the

---

[9] Plaintiff argues that it "has never claimed that the entirety of Apollo's restatement was caused by options granted on those six dates, although defendants do not contest that such grants did in fact contribute to the restatement." (Opp. 14:14-18.) But Plaintiff misses the point. Defendants' objection is that Plaintiff has not pleaded that all grants were backdated and yet seeks to use them as a basis for alleging falsity of the statements in the SAC.

disclosures at issue were in fact "corrective disclosures," but instead of revealing the alleged fraud at once, they did so piecemeal. See Countrywide, 588 F. Supp. 2d at 1201; Lormand, 565 F.3d at 255.

Here, however, the Court did not conclude that the pre-October disclosures "partially" revealed a fraud. It concluded that they did not reveal a fraud at all. See Apollo, 2009 WL 890479, at *54-58. With respect to the "Lehman Report," the Court concluded, "[t]here is nothing in the Lehman Report even hinting that Apollo engaged in any of the three fraudulent activities which the FAC alleges," and, as such, "the Lehman Report is not a corrective disclosure." Id. at *55-56. Similarly, the Court concluded that the "Subpoena Disclosure" did not "disclose any wrongdoing by defendants" and "is not a corrective disclosure." Id. at *56, 58. Thus, such allegations, and those like them, should be stricken.

Plaintiff's unexcised scienter allegations should also be stricken. Plaintiff claims that these allegations are relevant to a "good faith" defense it anticipates Defendants raising. (Opp. 32:1-10.) This position directly contradicts the statement Plaintiff made in its Reconsideration Reply that Defendants' good faith is "irrelevant" to whether Plaintiff stated a claim. (Recon. Rep. 10:8-9, 10:11-12.) Moreover, Plaintiff's argument is simply incorrect.[10] If the allegations are, as the Court concluded, "glaringly deficient" to establish scienter, Plaintiff has failed to explain how those same allegations are relevant to "bad faith." Apollo, 2009 WL 890479, at *43, 68. The allegations have been rejected and serve no purpose but to malign Defendants.

**VIII. CONCLUSION**

The Court should dismiss Plaintiff's SAC, and in the alternative, grant the Motion to Strike.

DATED: August 24, 2009

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By: *s/ Eric S. Waxman*
Eric S. Waxman
Attorneys for Individual Defendants

[10] It is also disingenuous. The SAC nowhere hints that these allegations pertain to Plaintiff's § 20(a) claim. Rather, the allegations are labeled as going to "scienter." (See, e.g., SAC ¶¶ 117-120, 122-123, 126.)

CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants in *Teamsters Local 617 Pension & Welfare Funds v. Apollo Group, Inc., et. al,* Case No. CV06-02674-PHX-RCB:

***Electronic Mail Notice List***

The following are those who are currently on the list to receive e-mail notices for this case.

- **Lauren S Antonino**
  lantonino@motleyrice.com
- **James W Barnhouse**
  barnhouse@buckleyking.com,kennelly@buckleyking.com,jsdbarnhouse@cox.net
- **Patrick V Dahlstrom**
  pdahlstrom@pomlaw.com
- **Robert O Dyer**
  rdyer@stklaw.com,kprentice@stklaw.com
- **Michael J Farrell**
  mfarrell@jsslaw.com,kroberts@jsslaw.com,MinuteEntries@jsslaw.com
- **Joseph E Floren**
  jfloren@morganlewis.com,rluke@morganlewis.com
- **Joshua Ray Forest**
  jforest@snowjensen.com,mbone@snowjensen.com
- **Marc I Gross**
  migross@pomlaw.com
- **Brian A Herman**
  bherman@morganlewis.com
- **Jeffrey W Lawrence**
  jeffreyl@lerachlaw.com,FileRoomSF@lerachlaw.com,jdecena@lerachlaw.com
- **Steven Charles Lawrence**
  steve.lawrence@hro.com,roonie.mcfarland@hro.com

- **Louisiana District Attorneys Retirement System**
  smartin@martinbonnett.com
- **Susan Joan Martin**
  smartin@martinbonnett.com,tmahabir@martinbonnett.com,mblawfirm@aol.com
- **Virginia F Milstead**
  virginia.milstead@skadden.com
- **Robert D Mitchell**
  robertmitchell@mitchell-attorneys.com,mitchell_atty@msn.com
- **Peter B Morrison**
  pmorriso@skadden.com,jsickler@skadden.com
- **Fei-Lu Qian**
  flqian@pomlaw.com
- **David A Rosenfeld**
  courtnotices@unioncounsel.net,nphillips@unioncounsel.net,bhinkle@unioncounsel.net
- **Samuel H Rudman**
  srudman@lerachlaw.com,E_file_ny@lerachlaw.com
- **Michael Salcido**
  salcido@buckleyking.com,kennelly@buckleyking.com
- **Jay P Saltzman**
  JAY@SPORNLAW.COM
- **Eric S Waxman**
  ewaxman@skadden.com,mcouchoi@skadden.com
- **Christopher M Wood**
  cwood@csgrr.com

*Manual Notice List*

(No manual recipients)

By: *\/s/Eric S. Waxman*

Eric S. Waxman, *Pro Hac Vice*
300 South Grand Ave., Suite 3400
Los Angeles, California 90071