1   WO

2

3

4

5

6

7                   IN THE UNITED STATES DISTRICT COURT

8                     FOR THE DISTRICT OF ARIZONA

9

10

11

12   Teamsters Local 617 Pension      )
     and Welfare Funds, on behalf     )
13   of itself and all others         )      No. CIV 06-2674-PHX-RCB
     similarly situated,              )
14                                    )
                      Plaintiff,      )          O R D E R
15                                    )
              vs.                     )
16                                    )
     Apollo Group, Inc., *et al.*,    )
17                                    )
     _____Defendants._____ )
18

19       In Teamsters Local 617 Pension & Welfare Funds v. Apollo

20   Group, Inc., 623 F.Supp.2d 763 (D.Ariz. 2009) ("Apollo I"), the

21   court issued a host of rulings pertaining to defendants' motions to

22   dismiss the First Amended Complaint ("FAC") in this securities

23   fraud action.  In the pending reconsideration motion (doc. 107),

24   lead plaintiff, Pension Trust Fund for Operating Engineers

25   ("plaintiff"), challenges several aspects of Apollo I.  First, it

26   asserts that dismissal was improper as to the control person

27   liability claims under section 20(a) of the Securities and Exchange

28   Act of 1934 ("the Exchange Act") as against the following

1  defendants: Daniel E. Bachus; Dino J. DeConcini, Hedy Govenar;

2  Brian E. Mueller; Laura Palmer Noone ("Noone") (collectively "the

3  group one defendants"); John G. Sperling; and Peter Sperling

4  (collectively "the Sperlings").  Relatedly, plaintiff contends that

5  because the FAC sufficiently alleges that each of the group one

6  defendants and the Sperlings had the requisite control over a

7  primary violator, the section 20(a) claims should stand as against

8  each of them.  Necessarily then, plaintiff further asserts that the

9  court must vacate the judgments entered in favor of each of the

10  group one defendants.  Lastly, if the court finds that the FAC

11  inadequately alleges a section 20(a) control person claim as to any

12  of the group one defendants, still, according to plaintiff,

13  reconsideration is "appropriate[.]" Reply (doc. 111) at 11:3

14  (emphasis omitted).  Plaintiff reasons that because the court

15  dismissed with prejudice the section 20(a) claim against the group

16  one defendants, it must reconsider and grant plaintiff leave to

17  amend in that regard.

18       Basically, defendants counter that the court should deny

19  plaintiff's motion "in its entirety" because the FAC does not

20  adequately allege "that any of these defendants controlled any

21  purported primary violator of the federal securities laws in

22  connection with Apollo['s] . . . . alleged stock option backdating

23  practices."  Resp. (doc. 110) at 1.  Moreover, defendants assert

24  that plaintiff's "promise to cure" the deficient section 20(a)

25  claim is not a proper basis for reconsideration.  Id. at 10:16.

26                          ***Discussion***

27  ***I.  Reconsideration Standards***

28       Evidently because the court entered judgment against some but

not all of the moving defendants, plaintiff is relying upon two different rules as the procedural bases for its motion.  Pursuant to LRCiv 7.2(g),[1] plaintiff is moving for reconsideration as to all of the moving defendants.  As to the group one defendants, in accordance with Fed. R. Civ. P. 59(e), plaintiff also is seeking to have "the Court vacate the judgment[s]" entered against them.  Mot. (doc. 107) at 2:1-2.  LRCiv 7.2(g) is entitled "Motions for Reconsideration[,]" whereas Fed. R. Civ. P. 59(e) is entitled "Motion[s] to Alter or Amend a Judgment."  So on the face of it, plaintiff's distinction between the group one defendants and the Sperlings, based upon entry of judgment, is understandable. Regardless of the procedural vehicle, the legal standards governing plaintiff's motion are the same however.

There is no express provision in the Federal Rules of Civil Procedure for a motion for reconsideration. See <u>United States v. Comprehensive Drug Testing, Inc.</u>, 473 F.3d 915, 955 (9th Cir. 2006) (Thomas, J., dissenting).  "Rather, such motions are creatures of local rule or practice."  <u>Id.</u>  In this action, as just noted, plaintiff is relying upon LRCiv 7.2(g) as the procedural vehicle for this reconsideration motion.  "Absent good cause shown," that Rule requires the filing of such motions "no later than ten (10) days after the filing of the order that is the subject of the motion."  LRCiv 7.2(g)(2).  Where, as here, a timely reconsideration motion is brought pursuant to the Local Rules, it

---

[1]        Defendants construe plaintiff's motion to reconsider pursuant to LRCiv 7.2(g) as directed solely against the Sperling defendants.  <u>See</u> Resp. (doc. 110) at 3 n. 3.  In seeking relief under that Rule, however, plaintiff lists each of the seven dismissed defendants.  <u>See</u> Mot. (doc. 107) at 2:25-27.  Thus, the court does not read plaintiff's motion as narrowly as do the defendants.

1  "is construed as a motion to alter or amend a judgment under Rule
2  59(e)." See Shapiro v. Paradise Valley Unified, 374 F.3d 857, 863
3  (9th Cir. 2004) (citations omitted); see also Carroll v. Nakatani,
4  342 F.3d 934, 945 (9th Cir. 2003) (Although Rule 59(e) is entitled
5  "Motion to Alter or Amend Judgment," the Ninth Circuit "permits a
6  district court to reconsider and amend a previous order" pursuant
7  to that Rule.)

8      "The history of Rule 59(e) shows that 'alter or amend' means a
9  substantive change of mind by the court." Miller v. Transamerican
10 Press, Inc., 709 F.2d 524, 527 (9th Cir. 1983).  "Under Rule 59(e),
11 it is appropriate to alter or amend a judgment if (1) the district
12 court is presented with newly discovered evidence, (2) the district
13 court committed clear error or made an initial decision that was
14 manifestly unjust, or (3) there is an intervening change in
15 controlling law." United Nat. Ins. Co. v. Spectrum Worldwide,
16 Inc., 555 F.3d 772, 780 (9th Cir. 2009) (citation and internal
17 quotation marks omitted).  Local Rule 7.2(g) in part mirrors that
18 standard.  That Rule provides that "[t]he Court will ordinarily
19 deny a motion for reconsideration . . . absent a showing of
20 manifest error or a showing of new facts or legal authority that
21 could not have been brought to its attention earlier with
22 reasonable diligence." LRCiv 7.2(g)(1).  Irrespective of the
23 grounds, in the end, "[w]hether or not to grant reconsideration is
24 committed to the sound discretion of the court." In re Fowler, 394
25 F.3d 1208, 1214 (9th Cir. 2005) (citation and internal quotation
26 marks omitted).

27     There is a basis for reconsidering Apollo I to the extent the
28 court required, as a predicate to stating a section 20(a) claim,

1   that plaintiff plead a primary securities law violation as to each
2   of the defendants.  As explained below, however, Rule 12(b)(6)
3   provides the legal framework for the remainder of plaintiff's
4   arguments – not the reconsideration standards which defendants
5   repeatedly invoke.

6   ## II.   *Section 20(a) - Control Person Claim*

7        This court in Apollo I reiterated that "to 'prove a prima
8   facie case under Section 20(a), a plaintiff must prove: (1) a
9   primary violation of federal securities law and (2) that the
10  defendant exercised actual power or control over the primary
11  violator.'" Apollo I, 633 F.Supp.2d at 827 (quoting, *inter alia*,
12  No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W.
13  Holding Corp., 320 F.3d 920, 945 (9th Cir. 2003) ("America West")).
14  In Apollo I, this court, *inter alia*, granted the motion to dismiss
15  the section 20(a) claims as against the group one defendants and
16  the Sperlings.  The sole basis for that dismissal was failure to
17  "adequately" plead the first element of a section 20(a) claim – "a
18  primary violation of section 10(b)[.]" See id. at 828.  Given that
19  holding, the court did not address the second prong of control
20  person liability as to those particular defendants.

21       ### A.  *Primary Violation*

22       Plaintiff asserts that "the court's dismissal of plaintiff's
23  § 20(a) claim was clear error justifying Rule 59(e) relief."
24  Mot. (doc. 107) at 2:10-11 (emphasis omitted).  First, plaintiff
25  challenges the court's finding that as a prerequisite to
26  stating a section 20(a) claim, it had to plead a primary securities
27  law violation as to each of the group one defendants and as to each
28  of the Sperlings.  Second, plaintiff contends that the FAC

1  adequately alleges that each of those seven defendants had the

2  "requisite control" so as to state a section 20(a) claim against

3  them.  Id. at 3:14.  Defendants vigorously dispute whether the FAC

4  contains sufficient allegations of control.  Tellingly, however,

5  their response is silent as to the first prong for section 20(a)

6  liability.  By their silence, the court assumes that defendants

7  concede the validity of plaintiff's position.

8       Even absent such a concession, the court recognizes that in

9  Apollo I it erroneously required, as a precursor to control person

10 liability, allegations that each of the defendants individually

11 violated section 10(b).  After reciting section 20(a) of the

12 Exchange Act,[2] the Ninth Circuit reiterated that "a defendant

13 employee of a corporation who has violated the securities law will

14 be jointly and severally liable to the plaintiff, as long as the

15 plaintiff demonstrates 'a primary violation of federal securities

16 law' and that 'the defendant exercised actual power or control over

17 the primary violator."  Zucco Partners, LLC v. Digimarc Corp., 552

18 F.3d 981, 990 (9th Cir. 2009) (citing America West, 320 F.3d at 945

19 (quoting Howard v. Everex Sys., Inc., 228 F.3d 1057, 1065 (9th Cir.

20 2000) (quotation marks omitted)) (other citations omitted)

21 _____

22    [2]     That section provides:

23         Every person who, directly or indirectly, controls *any person
            liable* under any provision of this chapter or of any rule or
            regulation thereunder shall also be liable jointly and severally
24         with and to the same extent as such controlled person to any
            person to whom such controlled person is liable, unless the
25         controlling person acted in good faith and did not directly
            or indirectly induce the act or acts constituting the violation
26         or cause of action.

27 15 U.S.C. § 78t(a) (emphasis added).

28

- 6 -

1   (emphasis added).  Consistent with the plain language of section

2   20(a) and the Ninth Circuit case law construing it, it stands to

3   reason that although control person liability under that statute

4   cannot exist without a primary violation, section 20(a) does not

5   require that the alleged controlling person be primarily liable

6   under section 10(b).  <u>See Paracor Finance, Inc. v. General Electric</u>

7   <u>Capital Corp.</u>, 96 F.3d 1151, 1161 (9th Cir. 1996) ("The plaintiff

8   need not show the controlling person's scienter or that they

9   culpably participated in the alleged wrongdoing.")(internal

10  quotation marks omitted); <u>Howard</u>, 228 F.3d at 1065 (To prove a

11  *prima facie* violation under section 20(a), a "[p]laintiff need not

12  show that the defendant was a culpable participant in the

13  violation, but defendant may assert a 'good faith' defense.")

14  (citations omitted).  That is so because section 20(a) "premises

15  liability *solely* on the control relationship, subject to the good

16  faith defense."  <u>Hollinger v. Titan Capital Corp.</u>, 914 F.2d 1564,

17  1575 (9th Cir. 1990) (emphasis added).  Recognizing that a

18  plaintiff need only plead and prove the commission of "a primary

19  violation of federal securities law" generally, and not a "primary

20  violation" by a given defendant, (citations and internal quotation

21  marks omitted), plaintiff is entitled to reconsideration of that

22  issue.[3]

23      Before proceeding, the court notes that in <u>In re Amgen Sec.</u>

24  <u>Litig.</u>, 544 F.Supp.2d 1009 (C.D.Cal. 2008), the court did dismiss

25  the section 20(a) control person claims as to certain outside

26

27      [3]      At this juncture, the court is reminded of Justice Frankfurter's astute
        observation that "[w]isdom too often never comes, and so one ought not to reject
        it merely because it comes late." <u>Henslee v. Union Planters  Nat. Bank & Trust Co.</u>,
28  335 U.S. 595, 600, 69 S.Ct. 290, 93 L.Ed. 259 (1949) (Frankfurter, J., dissenting).

director and non-speaking defendants, "since [it] ha[d] dismissed the § 10(b) claims against them." Id. at 1037-1038. The Amgen court did not cite any support for its holding, however; and, as the preceding discussion makes clear, Amgen is an aberration.

Notwithstanding the foregoing, defendants contend that reconsideration is not warranted because it will not change the outcome. The outcome will not change, defendants argue, because the FAC does not sufficiently allege that any of them exercised actual power or control over a primary violator - the second element of a section 20(a) claim. Hence, they reason that the Apollo I order granting dismissal of the section 20(a) claims and entry of judgment as to the group one defendants should still stand, albeit for a different reason than articulated in Apollo I.

Plaintiff strenuously disagrees. Plaintiff's position is that the FAC sufficiently alleges the exercise of actual power or control by each of the group one defendants, and by the Sperlings. Therefore, the court must reinstate the section 20(a) claims.

The Sperlings are in a different procedural posture than the group one defendants. Thus, as to the Sperlings, presently there is no need to address the issue of whether the FAC adequately alleges control for section 20(a) purposes - a fact which plaintiff and the Sperlings did not take into account. In Apollo I, inter alia, this court granted with prejudice the group one defendants' motion for dismissal of the section 20(a) claims. Apollo I, 633 F.Supp.2d at 834. Pursuant to Fed. R. Civ. P. 54(b), the court also ordered that judgment be entered in favor of that group of defendants. Id. at 832-834. In contrast, this court granted the Sperlings' motion to dismiss the section 20(a)

1   claims *without prejudice.*  Id. at 834, ¶ (10).  Moreover, the

2   court also expressly granted plaintiff leave to file a second

3   amended complaint ("SAC") as to the Sperlings, among other

4   defendants.  Id. at 834, ¶ (14).

5        Plaintiff timely filed a SAC wherein, *inter alia*, it added

6   allegations as to the Sperling defendants purported control.  See,

7   e.g., SAC (doc. 112) at 70-71, ¶ 161.  In light of the foregoing,

8   the court denies as moot the plaintiff's motion for

9   reconsideration as to the Sperlings.  See Struggs v. Evans, 2008

10  WL 5068522, at *1 (N.D.Cal. 2008) (denying as moot motion for

11  reconsideration, even as to claims dismissed with prejudice, where

12  plaintiff, in his original motion, also was granted leave to

13  amend); see also Valentine v. First Advantage Saferent, Inc., 2008

14  WL 4367353, at *1 (C.D.Cal. 2008) (reconsideration motion filed

15  simultaneously with motion to amend motion rendered moot by

16  granting leave to amend).  Indeed, because the SAC superseded the

17  FAC, at this point it would be improper for the court to consider

18  the sufficiency of the FAC's allegations of control person

19  liability against the Sperlings.  See Loux v. Rhay, 375 F.2d 55,

20  57 (9th Cir. 1967) ("The amended complaint supersedes the original,

21  the latter being treated thereafter as non-existent."); Bullen v.

22  De Bretteville, 239 F.2d 824 (9th Cir. 1956) ("It is hornbook law

23  that an amended pleading supersedes the original, the latter being

24  treated thereafter as non-existent.")

25       In contrast to the Sperling defendants, the claims against

26  the group one defendants were dismissed with prejudice, including

27  the section 20(a) claim, and judgment entered in their favor.

28  Pursuant to Fed. R. Civ. P. 59(e) and LRCiv 7.2, plaintiff had ten

1    days in which to move for reconsideration.   In <u>Apollo I</u>, however,

2    the court granted plaintiff 30 days in which to file a second

3    amended complaint ("SAC").   Anticipating that it would prevail on

4    this reconsideration motion in its entirety, plaintiff's SAC

5    includes allegations even as to the group one defendants against

6    whom judgment was previously entered.   <u>See</u> SAC (doc. 112) at 70,

7    n. 9.   Plaintiff's anticipatory amendment does not preclude their

8    reconsideration motion.   Accordingly, as to the group one

9    defendants the court must determine whether the FAC alleges

10   control so as to state a section 20(a) claim against each of them.

11        ***B.  Exercise of Actual Power or Control***

12        Before examining the sufficiency of the FAC's section 20(a)

13   claims against each of the group one defendants and the Sperlings,

14   the court must address three preliminary but significant issues.

15   First, it must determine the applicable pleading standards for a

16   section 20(a) control person claim.   Second, the court must decide

17   whether, as defendants repeatedly assert, a control person claim

18   must include allegations of "actual participation."   Third, the

19   court must consider the impact, if any, of the signing of

20   allegedly false financial statements upon the control person

21   liability analysis. The court will address these issues seriatim.

22             ***1.  Pleading Standards***

23        In <u>Apollo I</u> this court was confronted with the issue of

24   whether Rule 8 or Rule 9 supplies the governing pleading standards

25   for loss causation.   <u>See</u> <u>Apollo I</u>, 633 F.Supp.2d at 813-814.   Once

26   again, the issue of the applicable pleading standards has arisen,

27   but in a different context than <u>Apollo I</u>.   The parties have a

28   fundamental disagreement as to the applicable pleading standards

1  for a section 20(a) claim.  Plaintiff contends that Rule 8(a)'s

2  notice pleading standards govern.  Subsection (2) of that Rule

3  merely requires "a short and plain statement of the claim showing

4  that the pleader is entitled to relief[.]" Fed. R. Civ. P.

5  8(a)(2).  On the other hand, defendants contend that the

6  "'heightened pleading standard'" of the Private Securities

7  Litigation Reform Act of 1995 ("PSLRA") governs.  Resp. (doc. 110)

8  at 5:2-3.  Among other things, the PSLRA "requir[es] that a

9  complaint plead with *particularity* both falsity and scienter." In

10  re Vantive Corp. Sec. Litig., 283 F.3d 1079, 1084 (9th Cir. 2002)

11  (citation omitted) (emphasis added).

12      Defendants frame their pleading standards' argument strictly

13  in terms of the PSLRA.  Close scrutiny of the cases to which

14  defendants cite reveals, however, that in some the courts applied

15  the pleading dictates of Rule 9(b) rather than those of the PSLRA.

16  For example, in Howard v. Hui, 2001 WL 1195780 (N.D.Cal. Sept. 24,

17  2001), characterizing a section 20(a) claim as "an allegation of

18  fraud[,]" the court held that "a plaintiff must plead the

19  *circumstances of the control relationship* with sufficient

20  particularity to satisfy rule 9(b)." Id. at *4 (citations

21  omitted) (emphasis added).  Rule 9(b), in turn, requires that when

22  "alleging fraud . . . , a party must state with *particularity* the

23  circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b)

24  (emphasis added).  In other cases to which the defendants cite,

25  the court jointly invoked Rule 9(b) and the PSLRA.  See, e.g., In

26  re Splash Tech. Holdings, Inc. Sec. Litig., 2000 WL 1727377, at

27  *25 (N.D.Cal. Sept. 29, 2000) (citation omitted) ("[T]he complaint

28  must plead the circumstances of the control relationship with

1  particularity[]" as "required by 9(b) and [the] PSLRA."). Based

2  upon the cases to which defendants cite, the court interprets

3  their response as asserting that plaintiff's section 20(a) claims

4  must satisfy the more stringent pleading standard of Rule 9(b) and

5  the PSLRA.

6      Regardless of whether based upon the PSLRA or Rule 9(b), as

7  discussed below, none of the cases upon which defendants rely

8  convince the court to apply a "heightened pleading standard" to

9  the section 20(a) claims at issue herein.  See Resp. (doc. 110) at

10 5:2 (internal quotation marks omitted).   The court finds

11 defendants' authority unavailing because those cases overlook a

12 fundamental distinction between section 20(a) control person

13 claims and section 10(b) and Rule 10b-5 securities fraud claims.[4]

14 Fraud and scienter -- essential elements of a section 10(b) claim

15 -- are not elements of a section 20(a) control person claim.  That

16 distinction easily justifies applying a heightened pleading

17 standard to a section 10(b) claim, but not to a section 20(a)

18 claim.

19     The Ninth Circuit has yet to address the issue of whether a

20 section 20(a) claim should be plead in conformity with Rule 9(b),

21 as reinforced by the PSLRA, or in conformity with the notice

22 pleading requirements of Rule 8(a)(2).  Additionally, there is a

23 split of authority within the district courts of this Circuit on

24 that issue.  The requirement that a plaintiff allege "the

25 circumstances of control with particularity[]" for purposes of

26 stating a section 20(a) claim, "is set forth in several district

27 ─────────────

28      [4]  Hereinafter these claims will be referred to collectively as "section
     10(b)" claims.

1    court decisions." <u>Hayley v. Parker</u>, 2002 WL 925322, at *9

2    (C.D.Cal. March 15, 2002) (citing, *inter alia*, <u>Howard v. Hui</u>, 2001

3    WL 1159780, at *4 (N.D.Cal. Sep. 24, 2001); <u>In re Splash Tech.</u>

4    <u>Holdings, Inc. Sec. Litig.</u>, 2000 WL 1727405, at *16 (N.D.Cal.

5    Sept. 29, 2000); <u>In re Oak Tech. Sec. Litig.</u>, 1997 WL 448168, at

6    *14-15 (N.D.Cal. Aug. 1, 1997)); <u>see</u> <u>also</u> <u>In re Atmel Corp. Deriv.</u>

7    <u>Litig.</u>, 2008 WL 2561957, at *11 (N.D.Cal. June 25, 2008) (same).[5]

8         In more recent years, however, the weight of district court

9    authority within this Circuit is to the contrary.  <u>Siemers v.</u>

10   <u>Wells Fargo & Co.</u>, 2006 WL 2355411 (N.D.Cal. Aug. 14, 2006), upon

11   which the plaintiff herein relies, is representative.  There, the

12   defendants argued that because "the complaint sound[ed] in

13   fraud[,]" Rule 9(b) require[d] the allegations of control to be

14   stated with particularity."  <u>Id.</u> at *14 (citation omitted).

15   Stressing that Rule 9(b) "requires only that 'the circumstances

16   constituting fraud . . . shall be stated with particularity[,]'"

17   the <u>Siemers</u> court rejected that defense argument.  <u>Id.</u>  The court

18   soundly reasoned:

19              The control exerted by [defendant] is not
             a circumstance that constitutes fraud.
20           Plaintiff is only required to assert fraud
             with particularity as to primary violations.
21           At the control-person level, liability exists
             irrespective of the control person's scienter.

22

23

24       [5]    In <u>Chan v. Orthologic Corp.</u>, 1998 WL 1018624, at *8 (D.Ariz. Feb. 5,
     1998), this court, too, indicated that in pleading a section 20(a) claim a
25   plaintiff must satisfy Rule 9(b).  This court further noted that PSLRA "has
     strengthened the requirement of Rule 9(b)." <u>Id.</u> (citing <u>Oak Tech.</u>, 1997 WL 448168,
26   at *3).  Those statements were dicta, however, in that the court went on to discuss
     the merits of plaintiffs' section 10(b) claims, but not their section 20(a) claims.
27   Moreover, as fully explicated above, in the more than a decade since <u>Chan</u> the case
     law pertaining to pleading a section 20(a) claim has evolved and changed to the
28   point where now the court is firmly convinced that Rule 8 provides the applicable
     pleading standard.

1   <u>Id.</u> (citing <u>Hollinger v. Titan Capital Corp.</u>, 914 F.2d 1564, 1575

2   (9th Cir. 1990) ("[W]e hold that a plaintiff is not required to

3   show 'culpable participation' to establish that a broker-dealer

4   was a controlling person . . . .  The statute does not place such

5   a burden on the plaintiff ."))  Thus, the <u>Siemers</u> court expressly

6   declined to adopt the contrary view of cases such as <u>Hui</u>, to which

7   the defendants herein cite.  <u>Id.</u> ("To the extent [<u>Hui</u>] held that

8   . . . , control must be alleged with particularity, this order

9   respectfully disagrees.")

10      <u>Siemers</u> is the basis for several other decisions within this

11  Circuit, concluding that "[b]ecause claims based on control person

12  liability do not directly touch on circumstances that constitute

13  fraud, Rule 9(b) does not apply to Plaintiff's claims of control

14  person liability[.]" <u>In re Wash. Mutual, Inc.</u>, 259 F.R.D. 490, 504

15  (W.D.Wash. 2009) (citing <u>Siemers</u>, 2006 WL 235411, at *14); <u>Fouad</u>

16  <u>v. Isilon Systems, Inc.</u>, 2008 WL 5412397, at *12 (W.D.Wash. Dec.

17  29, 2008) (expressly applying "Rule 8['s] notice pleading

18  standard" to plaintiffs' control person liability claims based

19  upon the reasoning in <u>Siemers</u>); <u>In re LDK Solar Sec. Litig.</u>, 2008

20  WL 4369987, at *12 (N.D.Cal. Sept. 24, 2008) (same); <u>see also</u> <u>In</u>

21  <u>re Countrywide Fin. Corp. Sec. Litig.</u>, 588 F.Supp.2d 1132, 1201

22  (C.D.Cal. 2008) (quoting <u>LDK Solar</u>, 2008 436997, at *12)

23  ("'Although the circumstances of the primary violators' fraud must

24  be pled with particularity under Rule 9(b) [and the PSLRA], the

25  control element is not a circumstance that constitutes fraud and

26  therefore need not be pled with particularity.'")

27      Although it did not mention <u>Siemers</u>, in <u>Batwin v. OCCAM</u>

28  <u>Networks, Inc.</u>, 2008 WL 2676364 (C.D.Cal. July 1, 2008), the court

- 14 -

1   similarly reasoned "that a § 20(a) claim need not be pled in
2   accordance with Rule 9(b) or the PSLRA because scienter and fraud
3   are not elements of such a claim." Id. at *24 n. 17 (citing,
4   inter alia, In re Initial Pub. Offering, 241 F.Supp.2d 281, 396
5   (S.D.N.Y. 2003)).  Instead, the Batwin court expressly held that
6   control person liability claims "must be pleaded in accordance
7   with Fed. R. Civ. P. 8(a)(2), requiring that the plaintiff provide
8   "a 'short and plain statement of the claim showing that the
9   pleader is entitled to relief.'" Id. at *24 (citing, inter alia,
10  Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am.
11  Sec., LLC, 446 F.Supp.2d 163, 190 (S.D.N.Y. 2006)).

12      Of the two lines of cases just discussed, in this court's
13  view, the Siemers line is the more soundly reasoned because they
14  recognize that scienter and fraud are not elements of a section
15  20(a) claim.  The cases upon which the defendants rely fail to
16  make that crucial distinction, as will soon be readily apparent.
17  Further, as will also be seen, applying a heightened pleading
18  standard to a section 10(b) claim but not to a section 20(a) claim
19  fully comports with the PSLRA's plain language and its underlying
20  purpose.

21      Quoting at length from In re Tyco Int'l, Ltd., 2007 WL
22  1687775 (D.N.H. 2007), defendants assert that a plaintiff "must
23  plead specific facts demonstrating that Defendants exercised
24  actual power or control over the primary violation in relevant
25  respects."  Resp. (doc. 110) at 5:23-25 (emphasis in original).
26  Significantly, however, the Tyco court did not directly confront
27  the issue of which pleading standards apply to section 20(a)
28  control person claims.  In fact, in discussing whether plaintiffs

1   sufficiently alleged that a defendant director and major

2   shareholder was a control person, Tyco does not mention the

3   pleadings standards of Rules 8 or 9(b), or the PSLRA.  Rather,

4   without citing to any legal authority, the Tyco court held that

5   plaintiffs' "bare assertions and generalized allegations [we]re

6   simply insufficient to establish that [a former director

7   defendant] exercised control over the company [so as] to sustain

8   plaintiff's control person claims against him."  Tyco, 2007 WL

9   1687775, at *8.

10       In addition to the shortcomings just identified, two other

11   factors undermine the precedential value of Tyco.  The first is

12   that Tyco, a district court within the First Circuit, is not

13   binding on this district court which sits within the Ninth

14   Circuit.  See Dabbas v. Moffitt & Associates, 2008 WL 686687, at

15   *2 n. 2 (S.D.Cal. 2008) (federal cases from outside the Ninth

16   Circuit are "not binding authority" on district courts within the

17   Ninth Circuit).  Second, Tyco expressly states that it is "NOT

18   FOR PUBLICATION[.]"  Tyco, 2007 WL 1687775 (emphasis in original).

19   That unequivocal declaration, although not determinative of Tyco's

20   precedential value,[6] strongly suggests that such value is rather

21   limited.  For all of these reasons, although the defendants in the

22   present action place great credence on Tyco, this court does not.

23       Defendants' reliance upon Hui also is misplaced, but for

24   different reasons.  Initially, as already explained, the court

25

26       [6]    The court is well aware that Federal Rule of Appellate Procedure
27   32.1(a), effective January 1, 2007, states in relevant part, "[A] court may not
    prohibit or restrict the citation of federal judicial opinions, . . . that have
    been: . . . designated as . . . , 'not for publication,' . . . , or the like[.]"
28

1   disagrees with the basic premise of <u>Hui</u>, which is that a "section

2   20(a) claim is an allegation of fraud[,]" and thus is governed by

3   Rule 9(b)'s particularity requirement.  <u>See</u> <u>Hui</u>, 2001 WL 1159780,

4   at *4 (citation omitted).  Furthermore, the two cases to which the

5   <u>Hui</u> court cites – <u>Oak Tech.</u>, 1997 WL 446168, and <u>In re Glenfed,</u>

6   <u>Inc. Sec. Litig.</u>, 60 F.3d 591 (9th Cir. 1995) – do not persuade

7   this court that Rule 9(b)'s particularity requirement applies to

8   the section 20(a) claims at issue herein.  Despite mandating that

9   the "'control relationship' be pled with particularity, in

10  accordance with Rule 9(b)[,]" critically, as the <u>Batwin</u> court

11  astutely noted, the court in <u>Oak Tech.</u> "did not explain the basis

12  for th[a]t requirement."  <u>Batwin</u>, 2008 WL 2676364, at *24 n. 17.

13      The <u>Hui</u> court's reliance upon <u>GlenFed</u> is equally tenuous.

14  Despite what <u>Hui</u> implies, the Ninth Circuit in <u>GlenFed</u> "did not

15  require that all allegations of control be set forth with

16  particularity."  <u>See</u> <u>Siemers</u>, 2006 WL 2355411, at *14.  "Instead,"

17  the <u>GlenFed</u> Court "held that plaintiffs could not rely on a theory

18  of group-published information to hold outside directors liable for

19  misleading statements issued by the corporation unless the

20  plaintiffs pleaded the outside directors' involvement in the

21  day-to-day operations of the corporation with particularity."  <u>Id.</u>

22  In <u>GlenFed</u>, "whether or not the directors were involved in

23  day-to-day operations was a circumstance determinative of whether

24  or not they committed fraud in the issuance of the statements."

25  <u>Id.</u> (citation omitted).  Thus, as the court persuasively reasoned

26  in <u>Siemers</u>, the "holding of <u>GlenFed</u> does not apply to the situation

27  . . . , where," as here, "liability is not dependent upon showing

28  that the control person engaged in fraud."  <u>See</u> <u>id.</u>  In sum, unlike

1   the Hui court, this court does not find either Oak Tech. or GlenFed

2   persuasive on the issue of the pleading standards for a section

3   20(a) claim.

4        Likewise, Splash Technology Holdings, 2000 WL 1727405, another

5   case to which defendants cite, does not advance their argument that

6   a section 20(a) claim must be pled with particularity.   In

7   requiring "the circumstances of the control relationship [to be

8   pled] with particularity[,]" the Splash Technology Holding court

9   simply cited to Oak Tech. Id. at *25 (citation omitted).  The Oak

10  Tech. court offered no rationale whatsoever for its holding though,

11  as mentioned earlier.  What is more, the court's pronouncement in

12  Splash Technology Holding was merely dicta in that it was

13  unnecessary to that court's holding.  Because the plaintiffs in

14  Splash Technology Holding did not plead a primary violation of the

15  federal securities law, the court found "any discussion of control

16  person liability . . . moot."  Id. at *26.  Therefore, Splash

17  Technology Holding, like the other cases to which defendants cite,

18  is not persuasive in terms of the governing pleading standards for

19  a section 20(a) claim.

20       The final case to which defendants cite is In re Digital

21  Island Sec. Litig., 223 F.Supp.2d 546 (D.Del. 2002), aff'd on other

22  grounds, 357 F.3d 322 (3rd Cir. 2004).  As with Tyco, Digital Island

23  is a district court decision outside the Ninth Circuit; hence it is

24  not binding upon this district court.  See Dabbas, 2008 WL 686687,

25  at *2 n.2.  Moreover, Splash Technology Holding was the primary

26  basis for the court's holding in Digital Island, but, as just

27  explained, the Splash Technology Holding court's rationale was

28  weak, to say the least.

- 18 -

1    To summarize, each of the cases to which defendants cite

2 requires a section 20(a) claim to be pled with particularity.  Yet,

3 none of those cases are convincing on the issue of pleading such a

4 claim because they are: (1) not soundly reasoned; (2) outside this

5 Circuit; or (3) both.  Consequently, despite defendants' repeated

6 urging, the court will not require a section 20(a) claim to be pled

7 in accordance with either the PSLRA or Rule 9(b).

8    Indeed, adopting a heightened pleading standard for section

9 20(a) claims would run afoul of the PSLRA.  In enacting the PSLRA,

10 Congress sought to provide "protections to discourage frivolous

11 [securities] litigation."  H.R. Conf. Rep. No. 104-369, 104th Cong.,

12 1st Sess. at 32 (Nov. 28, 1995).  One of those "protections" was to

13 "strengthen[] the already-heightened pleading requirements of Rule

14 9(b)."  <u>Glenbrook Capital Ltd. Partnership v. Kuo</u>, 2009 WL 839289,

15 at *5 (March 30 2009).  Significantly, the PSLRA did not uniformly

16 heighten the pleading standards for all Exchange Act causes of

17 action.  The PSLRA explicitly adopted stringent pleading standards

18 for allegations of material misstatements or omissions brought

19 pursuant to 15 U.S.C. § 78u-4(b)(1).[7]  The PSLRA also

20 "[s]pecifically . . . imposed strict requirements for pleading

21 scienter[,]"[8] <u>id.</u>, which "is an essential element of a § 10(b) or

22 Rule 10b-5 claim."  <u>Lipton v. Pathogenesis Corp.</u>, 284 F.3d 1027,

23

24    [7]    The PSLRA requires that for "securities fraud actions" alleging "[m]isleading statements and omissions[,]" a complaint must "specify each statement
25 alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegations regarding the statement or omission is made on
26 information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1) (West 2009)

27    [8]    "Under the PSLRA, a complaint must "'state with particularity facts giving rise to a strong inference that the defendant acted with the required state
28 of mind.'" <u>Glenbrook Capital</u>, 2009 WL 839289, at *5 (quoting 15 U.S.C. § 78u-4(b)(2)).

1  1035 n. 15 (9th Cir. 2002) (citation omitted).

2      In sharp contrast, the PSLRA is silent as to the pleading
3  standards for section 20(a) control person claims.  Unlike section
4  10(b) claims, however, "'to establish the liability of a controlling
5  person, the plaintiff does not have the burden of establishing that
6  person's scienter distinct from the controlled corporation's
7  scienter.'" Batwin, 2008 WL 2676364, at *24 (quoting Arthur
8  Children's Trust v. Keim, 994 F.2d 1390, 1398 (9th Cir. 1993)).
9  Therefore, it is logical and wholly consistent with the PSLRA to
10  find, as did the Batwin court, that for a section 20(a) cause of
11  action, where scienter is not an element, the PSLRA's heightened
12  pleading standards do not apply.  See id., 2008 WL 2676364, at *24
13  n. 17 (citations omitted).

14      Lastly, "the legislative history of the PSLRA, . . . specifies
15  that its heightened pleading standards *only apply* to 'securities
16  *fraud*' claims." Initial Pub. Offering, 241 F.Supp.2d at 397 n. 185
17  (quoting S.Rep. No. 104-98, at 7) (emphasis added).  Having found,
18  as this court has, that section 20(a) claims do not sound in fraud,
19  requiring such claims to be alleged in accordance with the PSLRA's
20  heightened pleading standards would conflict with the legislative
21  history of that Act.

22      For all of these reasons, agreeing with plaintiff, the court
23  holds that section 20(a) control person claims are subject to the
24  more general notice pleading requirements of Fed. R. Civ. P.
25  8(a)(2).  Not only is there case law outlined herein to support this
26  holding, but, from the court's perspective, that line of cases is
27  more soundly reasoned, and hence more persuasive, than defendants'
28  contrary authority.  Accordingly, the court will examine the FAC's

1  allegations of section 20(a) control person liability to determine
2  whether they satisfy the less stringent notice pleading standards of
3  Rule 8(a).

4       The court's holding that Rule 8 provides the governing pleading
5  standards here seriously erodes defendants' Response, which is cast
6  in terms of the more exacting standards of Rule 9(b) and the PSLRA.
7  Further undermining defendants' response is that it borrows heavily
8  from Apollo I.  That reliance is misplaced, though, because the
9  pleading deficiencies which defendants stress from Apollo I were in
10 the context of scienter.  And, as should be abundantly clear by now,
11 from this court's standpoint, scienter is not an element of a
12 section 20(a) claim.  Hence, the section 20(a) claims which the FAC
13 alleges are not subject to the more exacting pleading standards of
14 Rule 9(b) and the PSLRA.

15            *2.  Actual Participation*

16      Defendants fare no better with their argument that plaintiff
17 must plead "actual participation" to satisfy the second element of a
18 section 20(a) control person claim.  Quoting from Burgess v. Premier
19 Corp., 727 F.3d 826 (9th Cir. 1984), defendants repeatedly state
20 that "[t]here must be some showing of *actual participation* in the
21 corporation's operation or some influence before the consequences of
22 control may be imposed[]" under section 20(a). Resp. (doc. 110) at
23 2:5-7; 4:20-22; 12:23-25; 13:21-23; 14:5-7; and at 15:22 - 16:1-3
24 (emphasis added).  Primarily due to an intervening change in the law
25 since Burgess, that statement evinces a basic misconception as to
26 control person liability - at least at the pleading stage. See
27 Howard, 228 F.3d at 1065 (showing of an "effective lack of
28 participation" and lack of scienter entitles defendant to good faith

1 defense to control person liability claim).

2     Burgess was decided prior to Hollinger. Id. at 1066. "Prior

3 to *Hollinger*, it was clear that a plaintiff needed to show actual

4 participation to make out a prima facie § 20(a) case in this

5 circuit." Id. (citation omitted). Hollinger "shifted the burden to

6 the defendant[,]" however, "to show that she acted in good faith and

7 did not directly or indirectly induce the violations." Id.

8 (citation and internal quotation marks omitted). Consequently,

9 despite defendants' contrary assertions, "it is *not necessary to*

10 *show actual participation* or the exercise of power[]" to make out a

11 *prima facie* § 20(a) claim in the Ninth Circuit. Id. (emphasis

12 added). So, rather than focusing on defendants' alleged actual

13 participation, this court must look to allegations of their

14 "participation in the day-to-day affairs of the corporation and the

15 defendant's power to control corporate actions." See Apollo I, 633

16 F.Supp.2d at 827 (quoting America West, 320 F.3d at 945).

17               ***3.  Signing Allegedly False Financial Statements***

18     Plaintiff's sole basis for moving for reconsideration as

19 to defendants other than the Sperlings[9] is that they "were all

20 officers and directors who '*signed*' false financial statements[.]'"

21 Mot. (doc. 107) at 3:18-19. According to plaintiff, the foregoing

22 "qualif[ies] [defendants] as control persons under" Apollo I. Id.

23 at 3:19-20 (citations omitted). There are factual and legal flaws

24 with this proposition.

25 _____

26     [9]    As to the Sperling defendants, plaintiff also argues that because the
FAC alleges that they "control over 99% of Apollo's voting stock[,]" they are

27 control persons. Mot. (doc. 107) at 3:14-15 (citation omitted). Defendants retort
that "stock ownership does not establish control[.]" Resp. (doc. 110) at 10:27
(emphasis omitted).  The court will leave this argument for another day given its

28 finding that this reconsideration motion is moot as to the Sperlings.

1    First, plaintiff reads Apollo I too broadly.  In Apollo I, this

2   court did not, as plaintiff strongly implies, hold that signing

3   false financial statements, absent *any* other allegations, suffices

4   to allege control under section 20(a).  This court simply reiterated

5   that "there is 'persuasive authority indicat[ing] that an officer or

6   director who has signed false financial statements containing

7   materially false and misleading statements qualifies as a control

8   person.'" Apollo I, 633 F.Supp.2d at 828 (quoting Amgen, 544

9   F.Supp.2d at 1037 (in turn, collecting cases)).  The court in Apollo

10  I did not further discuss that proposition because it was

11  unnecessary to the holdings therein.

12    Second, there is no factual basis for plaintiff's argument.

13  Plaintiff cites to paragraphs 156-182 of the FAC as the factual

14  underpinning for this argument.  See Mot. (doc. 107) at 3:18.  On

15  the face of it, none of those paragraphs pertain to the section

16  20(a) control person claims; rather, they allege section 10(B) and

17  Rule 10b-5 violations.  Moreover, close examination of paragraphs

18  156-182 reveals that they do not include allegations that any of the

19  defendants signed any documents – financial statements or otherwise.

20  Nor does the FAC contain allegations elsewhere that any of the

21  defendants signed any documents.  So, even assuming *arguendo* that

22  the signing of a false financial statement by an officer or director

23  suffices to plead a section 20(a) claim, the FAC does not include

24  such allegations as to any of the defendants.  Plainly then,

25  defendants' purported signing of false financial statements is not a

26  basis for reinstating the section 20(a) claims as against them.

27    Although it disagrees with plaintiff's proffered basis for

28  finding that the FAC sufficiently alleges control within the meaning

1 of section 20(a), the court will *sua sponte* examine the sufficiency
2 of the FAC's allegations in that regard as to each of the
3 defendants.   The court is proceeding in this way because in <u>Apollo I</u>
4 it did not reach the issue of whether the FAC sufficiently alleges
5 the exercise of actual power or control over a primary violator by
6 each of these defendants.

7     Proceeding in this way does not prejudice defendants.   Upon the
8 filing of plaintiff's reconsideration motion, pursuant to LRCiv
9 7.2(g)(2), the court ordered that in responding, defendants were to
10 "address the issue of whether the [FAC] sufficiently alleges that
11 each of them exercised actual power or control over the primary
12 violation for purposes of asserting control person liability under
13 [s]ection 20(a) of the . . . Exchange Act[.]"[10] Doc. 108 at 2:4-8.
14 Defendants thus were notified of the possibility that upon
15 reconsideration the court would examine the control element of a
16 section 20(a) claim, and they tailored their response accordingly.

17     To summarize, in scrutinizing the FAC's allegations of control
18 as to each of the defendants, Rule 8's notice pleading requirements
19 will apply.   The court will not require allegations of actual
20 participation, however.   Lastly, the signing of allegedly false
21 financial statements will not factor into the court's analysis of
22 the FAC's control allegations.   Against that backdrop, the court
23 will examine the FAC to ascertain whether it sufficiently alleges
24 control so as to state a section 20(a) claim against each of the
25 defendants.

26

27     [10]     The parties' original control person liability arguments were cursory,
to say the least.  Three of the seven dismissed defendants did not even mention the
sufficiency of the control person allegations against them, making this additional
28 briefing all the more necessary.

1                    ***4.   Rule 12(b)(6) Standards***

2          As acknowledged earlier, in Apollo I the court improperly

3    dismissed the section 20(a) claims against defendants because the

4    FAC did not allege a primary securities law violation against them

5    individually.  Plainly then, in Apollo I this court never reached

6    the issue of whether the FAC sufficiently alleges that each of the

7    defendants had the requisite control so as to state a section 20(a)

8    claim against them.  Now, for the first time, the court is

9    considering that issue.  Therefore, as to this particular control

10   issue, Rule 12(b)(6)'s dismissal motion standards apply, not the

11   more demanding reconsideration standards which defendants invoke.

12         Apollo I includes a recitation of the basic standards governing

13   a Rule 12(b)(6) motion in the post-Twombly[11] era.  See Apollo I, 633

14   F.Supp.2d at 779.  Since Apollo I, the Supreme Court decided

15   Ashcroft v. Iqbal, 556 U.S. ___, 129 S.Ct. 1937, 173 L.Ed.2d 868

16   (2009), which discussed Rule 8(a)(2)'s standards in conjunction with

17   Rule 12(b)(6)'s dismissal standards.  Significantly, in Iqbal the

18   Supreme Court removed any doubt as to Twombly's applicability

19   outside the anti-trust realm.  The Iqbal Court held that the Twombly

20   standards apply to "all civil actions" pled under Fed. R. Civ. P. 8,

21   not just to antitrust cases.  Iqbal, 556 U.S. at ___, 129 S.Ct. at

22   1953 (citations and internal quotation marks omitted).  Because

23   Iqbal reaffirms the Supreme Court's decision in Twombly, Iqbal does

24   _____

25         [11]     "In Twombly, . . . , the Supreme Court 'retired' the familiar language
     derived from Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80
26   (1957), which provided 'the accepted rule that a complaint should not be dismissed
     for failure to state a claim unless it appears beyond doubt that the plaintiff can
27   prove no set of facts in support of his claim which would entitle him to relief.'"
     Rick-Mik Enterprises v. Equilon Enterprises, 532 F.3d 963, 970-971 (9th Cir. 2008)
28   (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, ___, 127 S.Ct. 1955, 1968, 167
     L.Ed.2d 929 (2007) (quoting Conley)).

1   not alter the standards which this court employed in <u>Apollo I</u>.

2   Certain aspects of <u>Twombly</u> bear emphasizing though.

3    As before, "to survive a motion to dismiss, a complaint must

4   contain sufficient factual matter, accepted as true, to 'state a

5   claim to relief that is plausible on its face.'" <u>Iqbal</u>, 129 S.Ct. at

6   1949 (quoting <u>Twombly</u>, 550 U.S. at 570, 127 S.Ct. 1955).  "A claim

7   has facial plausibility when the plaintiff pleads factual content

8   that allows the court to draw the reasonable inference that the

9   defendant is liable for the misconduct alleged." <u>Id.</u> (citing

10   <u>Twombly</u>, at 556, 127 S.Ct. 1955).  Although "the pleading standard

11   Rule 8 announces does not require 'detailed factual allegations,'

12   . . . it demands more than an unadorned, the-defendant-unlawfully-

13   harmed-me accusation." <u>Id.</u> (citing, *inter alia*, <u>Twombly</u>, 550 U.S.

14   at 555, 127 S.Ct. 1955).

15    The Supreme Court in <u>Iqbal</u> stressed that <u>Twombly</u>'s plausibility

16   standard "is not akin to a 'probability requirement,' but it asks

17   for more than a sheer possibility that a defendant has acted

18   unlawfully." <u>Iqbal</u>, 556 U.S. at ___, 129 S.Ct. at 1949 (quoting

19   <u>Twombly</u>, 550 U.S. at 556, 127 S.Ct. 1955).  After <u>Twombly</u>,

20   "[f]actual allegations must be enough to raise a right to relief

21   above the speculative level, . . . , on the assumption that all the

22   allegations in the complaint are true (even if doubtful in

23   fact)[.]" <u>Twombly</u>, 550 U.S. at ___, 127 S.Ct. at 1965 (citations and

24   footnote omitted).  Thus, "[p]ost-*Twombly*, plaintiffs face a higher

25   burden of pleading facts, and courts face greater uncertainty in

26   evaluating complaints." <u>al-Kidd v. Ashcroft</u>, 580 F.3d 949, 977 (9th

27   Cir. 2009).  Engaging in the "context-specific task" of determining

28   whether the FAC states a plausible section 20(a) claim as to any of

1  the remaining defendants, the court is particularly mindful that it

2  must "draw on its judicial experience and common sense."  See Iqbal,

3  556 U.S. at ___, 129 S.Ct. at 1950 (citation omitted).

4       With that clarification, the court will consider the FAC's

5  broad allegations of control, as well as the control allegations

6  specific to each of the defendants.  In so doing, the general

7  principles of control person liability outlined in Apollo I will

8  continue to inform the court.  See Apollo I, 633 F.Supp.2d at 827-

9  828.

10                    ***a.  Control Allegations Generally***

11      Section IV of the FAC, entitled "Defendants' Duties," alleges

12  in relevant part as follows:

13           Because of their positions of control and authority
             as directors or officers of Apollo, each of the
14           defendants was able to and did, directly and
             indirectly, control the wrongful acts complained
15           of herein.  These acts include: (i) agreement to
             and/or acquiescence in the improper stock practices;
16           and (ii) causing Apollo to file false SEC filings in
             violation of the U.S. securities laws.  Because of
17           their positions with Apollo, each of the defendants
             had access to adverse non-public information and was
18           required to disclose these facts promptly and
             accurately to Apollo shareholders and the financial
19           markets but failed to do so.

20  FAC (doc. 71) at 10, ¶ 32:16-23.  Additionally, the FAC alleges that

21  "[e]ach of the defendants participated in the issuance and/or review

22  of the false and/or misleading statements, including the false SEC

23  filings and reports issued to Apollo shareholders."  Id. at 12,

24  ¶ 34:4-6.

25      In another section of the FAC pertaining to "defendants'

26  duties" as "to granting and approving stock option grants," it

27  alleges:

28           The individual defendants, because of their positions

                                  - 27 -

1        with [Apollo], possessed the power and authority to
2        control the contents of Apollo's quarterly reports,
         press releases, SEC filings, and presentations to
3        securities analysts, money and portfolio managers and
         institutional investors, *i.e.*, the market.  They
4        were provided with copies of [Apollo's] reports, SEC
         filings, registration statements and press releases
5        alleged herein to be misleading prior to or shortly after
         their issuance and had the ability and opportunity to
6        prevent their issuance or cause them to be corrected.

7 Id. at 14:10-18 (emphasis omitted).

8       ***b.  Daniel Bachus***

9    As to Daniel Bachus, the FAC alleges that he was Apollo's Chief

10 Accounting Officer ("CAO") and Controller throughout the Class

11 Period.  FAC (doc. 71) at ¶ 21.  The FAC also alleges that Bachus

12 had "knowledge of material non-public information regarding" Apollo.

13 Id.  That knowledge allegedly formed the basis for Bachus' sale of

14 Apollo stock for $1.7 million in proceeds during the Class Period.

15 Id.  Additionally, the FAC states that Bachus "sign[ed] the

16 allegedly false and misleading Forms 10-K and 10-Q[,]" which were

17 filed with the SEC thereby "conceal[ing] Apollo's true financial

18 conditions[.]" Id. at 95, ¶ 199.

19    Instead of analyzing those allegations in terms of a section

20 20(a) claim, Bachus relies solely upon the court's analysis in

21 Apollo I.  From Bachus' perspective, that prior analysis "doom[s]

22 the Section 20(a) claim as against him."  Resp. (doc. 110) at 16:21.

23 Then, characterizing the preceding allegations as "conclusory[,]"

24 Bachus maintains that the FAC "do[es] not establish [him] as a

25 control person."  Id. at 16-17 (citation and internal quotation

26 marks omitted).  The FAC is deficient in that regard, Bachus

27 contends, because it "does not allege that his employment position

28 permitted him to maintain any control over Apollo, much less its

1  stock option granting process or its public disclosures."  Id.
2  Bachus thus argues that the court should adhere to its ruling in
3  Apollo I, and continue to hold that the FAC does not adequately
4  allege a section 20(a) claim against him.

5      Addressing these contentions in order, there is no merit to
6  defendants' recurring argument that because the court in Apollo I
7  found many of these same allegations inadequate, it should make the
8  same finding now.  In taking this stance, defendants, including
9  Bachus, are conveniently overlooking the context of Apollo I.  The
10 focus there was scienter – a critical element of a section 10(b)
11 violation – which must be pled in conformity with the heightened
12 pleading standards of Rule 9(b) and the PSLRA.  As discussed
13 earlier, those more stringent standards do not apply to section
14 20(a) claims.  Consequently, the court disagrees with defendants
15 that the Apollo I rationale applies with equal force to the section
16 20(a) claims now under scrutiny.

17     As to Bachus' assertion that the FAC's allegations of control
18 are inadequate because they are "conclusory," he relies solely upon
19 Tyco, supra.  Id. at 16.  The court has already found that Tyco is
20 not controlling on several grounds, however.  Therefore, obviously
21 Tyco cannot provide a basis for finding the FAC's allegations as to
22 Bachus "conclusory."

23     More significantly, the FAC's factual allegations and the
24 reasonable inferences therefrom "plausibly suggest" that defendant
25 Bachus had the requisite control so as to state a section 20(a)
26 claim against him.  See al-Kidd, 580 F.3d at 975 (citation and
27 internal quotation marks omitted).  The allegation that Bachus
28 signed false and misleading financial statements arguably takes on

1   even more significance given that he was Apollo's CAO and

2   controller.  The allegations that he was among the defendants who

3   "had the ability and opportunity to prevent the[] issuance" of such

4   statements, among other items, and that he along with others "had

5   the ability and opportunity to . . . cause" the allegedly misleading

6   statements "to be corrected[,]" also take on greater significance

7   given Bachus' role as Apollo's CAO and controller.  <u>See</u> FAC (doc.

8   71) at 14, ¶ 37.  <u>Id.</u>  Those allegations, in conjunction with the

9   FAC's broader control allegations, such as that each of the

10  defendants' asserted "participat[ion] in the issuance and/or review

11  of the false and/or misleading statements, including the false SEC

12  filings and reports issued to Apollo shareholders[,]" <u>id.</u> at 12,

13  ¶ 34:4-6, along with Bachus' position as Apollo's CAO and

14  controller, are sufficient to withstand dismissal at this pleading

15  stage.  <u>See</u> <u>Hayley</u>, 2002 WL 925322, at *10 (plaintiffs stated a

16  valid section 20(a) claim against outside director defendants

17  despite lack of "allegations of day-to-day oversight," where those

18  defendants, <i>inter alia</i>, allegedly "signed the 10-K form that

19  allegedly reflects fraudulent accounting practices[;]" and they had

20  "access to non-public information . . . essential to th[e] case[]").

21      In fact, the allegations as to defendant Bachus are strikingly

22  similar to those in <u>Amgen</u> which that court found were "sufficient to

23  satisfy the second element of a § 20(a) claim" against four

24  corporate executives.  <u>See</u> <u>Amgen</u>, 544 F.Supp.2d at 1038.  The <u>Amgen</u>

25  complaint, like the FAC, alleged that certain executives "signed SEC

26  financial statements during the Class Period."  <u>Id.</u> (citation

27  omitted).  Also much like the FAC, the <u>Amgen</u> complaint alleged as

28  follows:

> Defendants held positions of control, and they participated in drafting, preparing, and/or approving public reports and other statements and communications complained of . . . , were . . . able to and did control the content of various SEC filings, press releases, and other public statements pertaining to the Company during the Class Period[.]

Id. (citations and internal quotation marks omitted).

Amgen thus provides additional support for the view that, when read together, the FAC's allegations as to defendant Bachus are sufficient to "nudge" plaintiff's section 20(a) claim "across the line from conceivable to plausible." See Twombly 550 U.S. at 570, 127 S.Ct. 1955. Twombly requires nothing more. "The intensely factual questions surrounding [Bachus'] actual participation in the day-to-day affairs of [Apollo] relate to any good faith defense that [he] may choose to assert in response to Plaintiff['s] allegations." See In re UTStarcom, In. Sec. Litig., 617 F.Supp.2d 964, 979-980 (N.D.Cal. 2009) (citing Howard, 228 F.3d. at 1065). Development of those issues must await another day. Hence, the court finds that at this juncture the section 20(a) claim against defendant Bachus should be allowed to stand.

### c. Dino DeConcini

Defendant DeConcini has been an Apollo director since 1981. See FAC (doc. 71) at 9, ¶ 26:11-12. DeConcini maintains that because he "was an outside director uninvolved with the day-to-day affairs of [Apollo], and because the Court has already found that [he] was not involved in the stock option backdating process or accounting for stock options, the [FAC] does not sufficiently allege that he is a 'control person.'" Resp. (doc. 110) at 14, ¶ 10-14 (citation and footnote omitted). DeConcini adds that "[g]iven the

1  court's finding" as to the purported stock option backdating, the

2  FAC's allegations of his Audit Committee membership cannot "rescue"

3  plaintiff's control person claim against him.  Id. at 14 n.9:23-24

4  (citation omitted).  Defendant DeConcini also stresses the absence

5  of "any" allegations showing his "'actual participation in the

6  corporation's operation or some influence'" by him so that the

7  "'consequences of control may be imposed.'" Id. at 145-6 (quoting

8  Burgess, 727 F.2d at 832) (other citation omitted).

9      None of these arguments are compelling.  Defendant DeConcini

10 characterizes the FAC as alleging his "mere[]" status as "an outside

11 director during the relevant time period."  Resp. (doc. 110) at

12 14:3-4 (citing FAC at ¶ 26).  To be sure, "being an officer or

13 director does not create any *presumption* of control[.]" Paracor, 96

14 F.3d at 1163 (citations and internal quotation marks omitted)

15 (emphasis in original).  On the other hand, "director status 'is a

16 sort of red light' indicating the potential for day-to-day

17 involvement in a company." Fouad, 2008 WL 5412397, at *12 (quoting

18 Arthur Children's Trust v. Keim, 994 F.2d 1390, 1397 (9th Cir.

19 1993)).  Moreover, the FAC alleges more than simply DeConcini's

20 position as an outside director.   The FAC also alleges that

21 DeConcini was "a member of the Audit Committee[.]"  FAC (doc. 71) at

22 9, ¶ 26:12.  As a member of that Committee, allegedly, DeConcini had

23 the following "responsib[ilities][:]"

24              (i) reviewing and discussing the audited financial
             statements of [Apollo] with management; (ii)
25              discussing with [Apollo's] independent accountants
             the matters required to be discussed by the Statement
26              of Accounting Standards . . . ; (iii) receiving and
             reviewing the written disclosures and letters from
27              its independent accountants . . . ; (iv) discussing
             with its independent accountants, the independent
28              accountants' independence; and (v) recommending to

1          the Board . . . that the audited financial statements
be incorporated by reference into [Apollo's] Annual
2          Reports.

3 Id. at ¶ 40.  As an Audit Committee member, the FAC also alleges

4 that "DeConcini caused or allowed the dissemination of the improper

5 public statements described [t]herein."  Id. at 9, ¶ 26:12-13.

6 Lastly, the FAC alleges that "[b]ased on his knowledge of material

7 non-public information regarding [Apollo]," during the Class Period

8 DeConcini sold over 100,000 shares of Apollo stock for proceeds of

9 $5.7 million.  Id. at 9, ¶ 26:13-16.

10     Defendant DeConcini's attempt to downplay the significance of

11 these allegations is not convincing.  The FAC alleges "traditional

12 indicia" of control by him, such as stock ownership and having a

13 seat on Apollo's Board of Directors.  See America West, 320 F.3d at

14 945 (citation and internal quotation marks omitted).  The FAC also

15 alleges DeConcini's responsibilities, as detailed above, as a member

16 of Apollo's Audit Committee.  The issuance of false and misleading

17 financial statements, and improprieties surrounding Apollo's

18 accounting procedures, is part of the alleged primary violation of

19 stock option backdating.  See Apollo I, 633 F.Supp.2d at 769-770.

20 Financial statements and Apollo's accounting clearly fall within the

21 purview of the Audit Committee, as the FAC alleges.

22     What is more, the FAC explicitly alleges that as an Audit

23 Committee member DeConcini "review[ed] and discuss[ed] the audited

24 financial statements of [Apollo] with management[.]" FAC (doc. 71)

25 at 15, ¶ 40:15-16 (emphasis added).  The allegations of DeConcini's

26 Audit Committee responsibilities, in conjunction with the broader

27 control allegations, sufficiently allege control person status at

28 this motion to dismiss stage.  See, e.g., In re Wash. Mutual, Inc.,

1  259 F.R.D. at 509 (denying motion to dismiss control person claims

2  against outside director defendants who served on Audit Committee,

3  Finance Committee, or both, where their committee-related

4  responsibilities were related to the alleged primary violations)

5  (citing Fouad, 2008 WL 5412397, at *10 (same)).

6       The court is well aware that in Apollo I it found that

7  "defendant DeConcini's alleged Audit Committee responsibilities

8  d[id] not create a strong inference of scienter[.]" Apollo I, 633

9  F.Supp.2d at 813. Of course, scienter is an element of a section

10 10(b) primary violation - not of a section 20(a) control person

11 claim. So although the FAC did not sufficiently allege scienter as

12 to DeConcini, that does not preclude a finding that those same

13 allegations are sufficient for purposes of alleging control under

14 section 20(a).

15      Likewise, the court's observation in Apollo I that "[t]here is

16 nothing linking [Mr. DeConcini] to any aspect of stock option

17 granting or the associated accounting[]" does not justify dismissal

18 of the section 20(a) claim against him. See id. In responding to

19 plaintiff's motion, Mr. DeConcini places far too much credence in

20 that statement. First, it was made while discussing the sufficiency

21 of the section 10(b) scienter allegations against him. As should be

22 abundantly clear by now, the pleading standards for scienter are far

23 more strict that they are for pleading a section 20(a) claim.

24 Further, because the inquiry at this juncture "revolve[s] around the

25 management and policies" of Apollo, "not around discrete

26 transactions[,]" the court's prior comment is not germane in this

27 context. See Paracor, 96 F.3d at 1162 (internal quotation marks

28 omitted).

1    Finally, as earlier discussed, the lack of allegations of

2  "actual participation" by DeConcini is not a basis for dismissing

3  the section 20(a) claim against him.  See Reese, 2009 WL 506820, at

4  *9 (plaintiffs were "not required to demonstrate actual

5  participation by Defendants or the exercise of power . . . to

6  establish derivative liability under § 20(a)) (citation omitted).

7  The FAC's allegations as to DeConcini, and the reasonable inferences

8  therefrom, signal a level of involvement and control beyond being

9  merely a titular member of the Audit Committee.  The allegations

10 concerning DeConcini's "title and responsibilities are sufficient at

11 the pleading stage[]" to allege the requisite control for section

12 20(a) purposes.  See id. (citations omitted).  Thus, as with Bachus,

13 the court finds that the FAC's allegations "nudge" plaintiff's

14 section 20(a) claim against DeConcini "across the line from

15 conceivable to plausible."  See Twombly, 550 U.S. at 570, 127 S.Ct.

16 1955.  By the same token though, also as with defendant Bachus, the

17 court "recogniz[es] that [DeConcini] will be permitted to develop

18 the nature of Plaintiff['s] proof through discovery and interpose

19 defenses of good faith or lack of participation at a later date."

20 See Reese, 2009 WL 506280, at *10.

21          ***d.  Hedy Govenar***

22    The FAC's allegations specifically pertaining to Ms. Govenar

23 are scant.  The FAC alleges that she was an Apollo director during

24 the Class Period.  FAC (doc. 71) at 8, ¶ 24.  It also alleges that

25 Ms. Govenar was a director of the University of Phoenix, an Apollo

26 subsidiary for five years well before the Class Period.  Id. at 8-9,

27 ¶ 24.  Allegedly, "[b]ased on her knowledge of non-public material

28 information regarding [Apollo]," during the Class Period Ms. Govenar

1  sold nearly 80,000 shares of Apollo stock "for proceeds of $3.4

2  million[.]"    Id. at 9, ¶ 24:2-4.

3      Additionally, the FAC alleges that Ms. Govenar was one of two

4  Apollo directors whom the Sperlings appointed to serve on a Special

5  Committee ("SC").  Id. at 58, ¶ 93:10-11.  That Committee was

6  charged with "oversee[ing] a review of [Apollo's] practices related

7  to stock option grants."  Id. at 58, ¶ 93:11-13.  The FAC vaguely

8  alleges, as discussed in Apollo I, that Ms. Govenar was "removed

9  from the SC due to [an] [unspecified] conflict[] of interest[.]" Id.

10  at 58, ¶ 13-14.  "[U]ltimately [Ms. Govenar] resigned from the

11  Apollo Board."  Id. at 58, ¶ 93:14.

12      Essentially, Ms. Govenar's argument is the same as Mr.

13  DeConcini's.  The FAC's allegations of control are inadequate

14  because it "merely alleges that [she] was a[n] . . . outside

15  director of Apollo."  Resp. (doc. 110) at 13 (citations omitted).

16  Likewise, Ms. Govenar points to the lack of allegations that she

17  "had any control, much less actual control over the day-to-day

18  management of Apollo or was otherwise involved in options granting

19  or reporting processes."  Id. (footnote omitted).  Relying upon

20  Burgess, supra, Ms. Govenar also emphasizes her lack of "actual

21  participation" in Apollo's operations.  Id. at 12.

22      Again, the court disagrees with the proposition that in this

23  Circuit "actual participation" is a necessary predicate to stating a

24  claim under section 20(a).  Nonetheless, the court agrees that the

25  FAC does not sufficiently allege a section 20(a) claim against Ms.

26  Govenar.  Admittedly, as outlined above, the FAC does include

27  specific allegations regarding Ms. Govenar beyond its broad

28  allegations of control pertaining to all of the defendants.  Those

1   specific allegations are not sufficient, even when read with the
2   broad control allegations, to allow plaintiff to proceed on a theory
3   of control person liability against Ms. Govenar.

4        The allegations as to Ms. Govenar are much like those in <u>Reese</u>,
5   <u>supra</u>, 2009 WL 506820, wherein the court granted a defendant's
6   motion to dismiss the section 20(a) control person claim because it
7   was not adequately pled.  The <u>Reese</u> court held that the complaint
8   did not sufficiently allege a section 20(a) claim because it
9   "stat[ed] only that he was a non-executive member of the [corporate
10  defendant] board of directors . . . and served on the Ethics and
11  Environment Assurance Committee."  <u>Id.</u> at *9 (citation and internal
12  quotation marks omitted).  The court reasoned that those
13  "allegations d[id] not speak to any degree of control over the
14  operations of the corporation and certainly no involvement in its
15  day-to-day activities."  <u>Id.</u>

16       Here, the FAC suffers from the same deficiencies with respect
17  to Ms. Govenar.  The FAC "do[es] not speak to any degree of control"
18  over Apollo's "operations" by Ms. Govenar, and "certainly no
19  involvement [by her] in [Apollo's] day-to-day activities."  <u>See id.</u>
20  Aside from her appointment on the SC, in sharp contrast to defendant
21  DeConcini, the FAC does not include any allegations as to Ms.
22  Govenar's responsibilities as an outside Apollo director.  The
23  absence of such allegations make it impossible to discern whether
24  Ms. Govenar was responsible for controlling any aspect of Apollo's
25  management or policies.

26       Further, primarily because of the time frame, Ms. Governar's
27  SC assignment does not save this otherwise deficient section 20(a)
28  claim.  As the FAC alleges, that Committee was charged with the

1  discrete task of "oversee[ing] a review of [Apollo's] practices

2  related to stock option grants."  FAC (doc. 71) at 58, ¶ 93:11-12.

3  That Committee was formed in late June 2006, in the aftermath of the

4  alleged backdating.  This is not a situation, for example, where Ms.

5  Govenar was appointed to a corporate committee charged with

6  promulgating Apollo's policy for granting stock options.  Nor are

7  there any allegations that this SC assignment put Ms. Govenar in a

8  position of controlling any aspect Apollo's management or policies.

9  Instead, the SC was charged with reviewing and "investigating"

10 alleged "options misconduct" which had already occurred.  See id. at

11 5, ¶ 11:21.  As the foregoing shows, the meager allegations in the

12 FAC specific to Ms. Govenar do not "plausibly suggest" that she had

13 the requisite control so as to state a section 20(a) claim against

14 her.  See al-Kidd, 580 F.3d at 975 (citation and internal quotation

15 marks omitted).  Consequently, the court stands by its prior holding

16 that the FAC does not state a section 20(a) claim against Ms.

17 Govenar, albeit for a different reason than in Apollo I.

18                    *e.  Brian Mueller*

19      The court has little difficulty finding that the FAC does not

20 adequately allege control person status as to defendant Mueller.

21 After joining Apollo in 1987, the FAC twice alleges that Mueller

22 "serv[ed] in a variety of positions, including a variety of

23 executive positions since 1993."  FAC (doc. 71) at 9, ¶ 25:7-8; and

24 at 77, ¶ 128:22-24.  "Most recently," prior to his January 2006

25 appointment as Apollo's President, "Mueller held the title of Chief

26 Operating Officer ("COO")[.]"  Id. at 9, ¶ 25:8-9.  As discussed in

27 Apollo I, the FAC includes two allegations of "knowingly false

28 statements" by Mr. Mueller as well.  Apollo I, 633 F.Supp.2d at 812.

1

2      Arguing that the court should "confirm" the dismissal of the

3   section 20(a) claim against him, Mueller notes the paucity of

4   allegations as to his "knowledge of stock options[.]" Resp. (doc.

5   110) at 15:1.  Mueller asserts that the foregoing, along with the

6   timing of his Apollo presidency, which began roughly nine months

7   before the end of the Class Period, "cannot be reconciled with

8   Plaintiff's proposition that [he] is a 'control person' for the

9   *entire* class period." Id. at 15:3-4 (emphasis added).

10      There are several glaring deficiencies in the FAC's pleading of

11  section 20(a) control person status as to Mr. Mueller.  First, the

12  court agrees with Mueller's assertion that "officers and directors"

13  cannot be found "liable as control persons under Section 20(a) for

14  alleged violations that took place before they assumed their

15  positions."  Resp. (doc. 110) at 14-15, n. 10 (citing, *inter alia*,

16  Roberts v. Heim, 670 F.Supp. 1466, 1487 (N.D.Cal. 1987), aff'd in

17  part on other grounds, rev'd in part on other grounds, 857 F.2d 646

18  (9th Cir. 1988)).  That reasoning is not entirely dispositive of the

19  section 20(a) claim against Mueller though because the FAC alleges

20  that he became Apollo's president during the Class Period, albeit

21  not until near the end of that Period.  Nevertheless, due to the

22  lack of factual allegations of control specific to Mr. Mueller,

23  plaintiff has not met its burden of pleading a plausible section

24  20(a) claim against him.

25      The lack of specific time frames regarding Mueller's other

26  positions with Apollo further weakens plaintiff's section 20(a)

27  claim as against this particular defendant.  Aside from his January

28  2006 appointment as Apollo's President, the FAC is silent as to

1   whether Mueller held any of those "executive positions" during the

2   Class Period.   Further, the FAC does not elaborate as to the nature

3   of those "executive positions," Mueller's responsibilities while he

4   served in those positions, or any specific time frames for that

5   service.   Similarly, there is no time frame as to when Mueller was

6   COO and what responsibilities he had as such.   The FAC also is

7   silent as to Mueller's responsibilities as Apollo's president.

8   Perhaps he was simply a titular President, or perhaps he was more.

9   There is no way to know from the FAC.   The lack of allegations as to

10  Mueller's responsibilities as Apollo's president becomes even more

11  problematic given his relatively short tenure during the Class

12  Period as Apollo's president.

13        Compounding the pleading deficiencies just identified are the

14  lack of allegations of "traditional indicia" of control by Mr.

15  Mueller.   For example, the FAC does not specifically allege stock

16  ownership by Mr. Mueller; nor does it allege that he held a seat on

17  Apollo's Board of Directors.   To be sure, "*Twombly* and *Iqbal* do not

18  require that the complaint include *all facts* necessary to carry

19  plaintiff's burden."   See <u>al-Kidd</u>, 580 F.3d at 977 (emphasis added).

20  But here, insofar as Mr. Mueller is concerned, the FAC does not

21  allege "plausible grounds to infer the existence of a claim for

22  relief" pursuant to section 20(a).   See <u>id.</u> (citation and internal

23  quotation marks omitted).

24        In short, the court adheres to its prior ruling that dismissal

25  of the section 20(a) claim against Mueller is proper, albeit for a

26  different reason than articulated in <u>Apollo I</u>.   Now, the court finds

27  that the FAC does not adequately allege the control elements of a

28  section 20(a) claim against defendant Mueller.

1              *f.  Laura Palmer Noone*

2          As already explained, plaintiff's argument that defendants

3     "were all officers and directors who 'signed' false financial

4     statements," thus qualifying them as control persons is tenuous at

5     best.  See Mot. (doc. 107) at 3:18-19 (citation omitted).  That

6     argument is even more tenuous as to Ms. Noone, though, because the

7     FAC does not allege that she was an officer or director of Apollo.

8     Rather, the FAC alleges that since September 2000, Ms. Noone has

9     been president of the University of Phoenix -- an Apollo subsidiary.

10    FAC (doc. 71) at 9, ¶ 28.  Thus, assuming *arguendo* that an officer

11    or director who allegedly signs a false financial statement is a

12    control person for § 20(a) purposes, Ms. Noone does not qualify as

13    such because the FAC does not allege that she was an officer or

14    director of Apollo.

15         What is more, as Ms. Noone persuasively argues, because she was

16    neither an Apollo director nor officer, she "could not have

17    'controlled' Apollo, including its disclosures, in any way."  Resp.

18    (doc. 110) at 12:15-16.  The lack of any allegation as to her

19    director or officer status with Apollo, as distinguished from an

20    Apollo subsidiary, is "dispositive" of the § 20(a) claim against

21    her, Ms. Noone argues.  Id. (citations omitted).

22         Her position is well-taken.  To illustrate, in Copland v.

23    Grumet, 88 F.Supp.2d 326 (D.N.J. 1999), plaintiffs sought to amend

24    their complaint to add section 20(a) claims against two officers of

25    a subsidiary on the theory that they were control persons of the

26    subsidiary's parent.  Id. at 335-336.  The Copland court reasoned

27    that "at best" plaintiffs' allegations could only show that the

28    officers of the subsidiary controlled the subsidiary, not that they

                              - 41 -

1   controlled the parent defendant.  Id. at 335; see also Brown v.

2   Enstar Group, Inc., 84 F.3d 393, 397 (11th Cir. 1996) (affirming

3   summary judgment on section 20(a) claim in favor of chairman of

4   subsidiary due to lack of record evidence that he had the power to

5   control the parent when the allegedly fraudulent and misleading

6   prospectus was issued).  Unlike Copland, the FAC's allegations do

7   not even minimally show that Ms. Noone exercised any measure of

8   control over an Apollo subsidiary, much less over Apollo itself.

9       The few other allegations as to Ms. Noone described in Apollo

10  I, even when taken together with the FAC's general control

11  allegations, provide nothing "more than a sheer possibility" that

12  she is a control person for section 20(a) purposes.  See Iqbal,

13  U.S. ___, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127

14  S.Ct. 1955).  A "sheer possibility" does not satisfy Twombly's

15  plausibility standard.  See id.  Thus, as with defendants Govenar

16  and Mueller, the court finds that the FAC does not adequately plead

17  a section 20(a) claim for control person liability against Ms.

18  Noone.

19  **III.  _Leave to Amend_**

20      In its motion, plaintiff sought limited relief in the form of

21  having this court "reconsider [Apollo I] and deny defendants Bachus,

22  DeConcini, Govenar, Mueller, Noone and the Sperlings' motion to

23  dismiss the § 20(a) claims against them."  Mot. (doc. 107) at 4:27-

24  5:1.  The sole basis for that motion is the fact that the court

25  erroneously required plaintiff to allege a section 10(b) primary

26  violation as against each individual defendant as a predicate to a

27  section 20(a) control person claim.  In any event, plaintiff also

28  sought "withdraw[al] [of] the Judgment entered in favor of Bachus,

1  DeConcini, Govenar, Mueller and Noone [("the group one

2  defendants")][.]" <u>Id.</u> at 5:1-2 (citation omitted).

3      Plaintiff's reconsideration motion does not explicitly mention

4  amending the FAC as to the section 20(a) claims.  Plaintiff does

5  indicate that it is "[m]indful that [<u>Apollo I</u>] required [it] to

6  amend [its] Complaint to more particularly alleged the falsity of

7  the alleged misstatements[.]" Mot. (doc. 107) at 3 (citation

8  omitted).  Plaintiff then assures that its "forthcoming [SAC] will

9  particularly allege each false and misleading statement 'signed' by

10 defendants that are the subject of this motion." <u>Id.</u>  But of

11 course the amendments just referenced, and which the court addressed

12 in some length in <u>Apollo I</u>, do not pertain to the second control

13 element of a section 20(a) claim.  The amendments to which plaintiff

14 is referring are directed strictly at the primary section 10(b)

15 violations.  Thus, there is nothing on the face of plaintiff's

16 reconsideration motion suggesting to either the court or the group

17 one defendants that plaintiff intended to amend the FAC regarding

18 control person liability as to any of them.

19     Plaintiff first made the suggestion of such an amendment in its

20 reply to this reconsideration motion.  Plaintiff raised the

21 possibility of amendment by seeking to have the court "*reconsider*

22 the *dismissal* of . . . plaintiff's § 20(a) claims *with prejudice*" as

23 to the group one defendants.  Reply (doc. 111) at 11:6-8 (emphasis

24 added).  In urging amendment, plaintiff simply stated that "there

25 has been no showing that any such defects could not be cured by

26 amendment." <u>Id.</u> at 11:9.  Further, plaintiff notes that "defendants

27 have not contended that any amendment would be futile." <u>Id.</u> at

28 11:16-17.  Of course, there would have been no reason for defendants

1   to address those contentions in their response because, as detailed
2   above, plaintiff did not even hint at amendment until it filed its
3   reply.   Thus, defendants were not on notice that as part of this
4   motion plaintiff also was seeking leave to amend.

5       Further complicating plaintiff's belated request for leave to
6   amend is that during the pendency of this motion, plaintiff filed a
7   SAC which includes a section 20(a) claim against the group one
8   defendants.   As the SAC candidly notes, plaintiff included those
9   allegations despite being fully aware that in Apollo I this court,
10  inter alia, had previously dismissed those claims with prejudice and
11  directed entry of judgment thereon.   See SAC (112) at 70, n. 9.   The
12  group one defendants, as well as the other remaining individual
13  defendants and Apollo Group, Inc. then promptly moved for dismissal
14  of the SAC.   That motion has been fully briefed and submitted.

15      This procedural quagmire, which put the court in a somewhat
16  tenuous position, easily could have been avoided.   Despite the 30
17  day deadline for filing the SAC which the court imposed in Apollo I,
18  plaintiffs could have sought an extension of that deadline.   That
19  would have delayed the filing of the SAC until after resolution of
20  this reconsideration motion.   Even after the SAC was filed, the
21  group one defendants also could have sought an extension of time in
22  which to answer or otherwise respond to the SAC, but they did not.
23  Instead, all defendants forged ahead with motions to dismiss the
24  SAC.

25      Given the unique procedural posture of this case, the court
26  rules as follows.   Despite finding that the FAC does not
27  sufficiently allege section 20(a) control person liability against
28  defendants Hedy Govenar; Brian E. Mueller; and Laura Palmer Noone,

1    the court grants plaintiff's reconsideration motion.  The court now

2    deems the section 20(a) claims against the three defendants just

3    listed to be dismissed without prejudice and with leave to amend.

4    Necessarily, the Rule 54(b) judgment previously entered in favor of

5    these defendants shall be vacated.

6         By the same token though, because a SAC has already been filed,

7    that SAC is the operating complaint for purposes of the pending

8    defense motions to dismiss.  No other amendment shall be allowed,

9    nor shall any further briefing regarding the SAC be filed unless

10   sought by the court.  In other words, whether plaintiff has

11   adequately alleged a section 20(a) claim against defendants Govenar;

12   Mueller and/or Noone is now entirely dependent upon the sufficiency

13   of the allegations in the SAC.

14        Next, having considered for the first time the sufficiency of

15   the control element of a section 20(a) claim as against defendants

16   Daniel E. Bachus and Dino J. DeConcini, and having found that the

17   FAC does adequately allege such a claim against these two

18   defendants, the court must vacate the judgment previously entered in

19   favor of those defendants.  As with the three defendants discussed

20   in the preceding paragraph, because a SAC has already been filed,

21   that SAC is the operative complaint for purposes of the pending

22   motions to dismiss.  No other amendment shall be allowed, nor shall

23   further briefing regarding the SAC be filed unless sought by the

24   court.

25                            ***Conclusion***

26        For the reasons set forth herein, Lead Plaintiff's Motion to

27   Reconsider Dismissal of Plaintiff's § 20(a) Claim (doc. 107) is

28   DENIED in part and GRANTED in part, as enumerated below:

1       The court hereby ORDERS that:

2       (1) Lead Plaintiff's Motion For Reconsideration is DENIED as

3   moot as to defendants John Sperling and Peter Sperling;

4       (2) Lead Plaintiff's Motion For Reconsideration is GRANTED as

5   to defendants Daniel Bachus; Dino DeConcini; Hedy Govenar; Brian E.

6   Mueller; and Laura Palmer Noone;

7       (3) The Clerk of the Court is directed to vacate the judgment

8   (doc. 106) previously entered as to the five defendants enumerated

9   in paragraph (2) above; and

10      (4) Apollo I, doc. 105 at 127:10 is sua sponte amended to

11  insert defendant Norton for defendant Nelson.

12      DATED this 19th day of February, 2010.

13

14

15      _____

16      Robert C. Broomfield
        Senior United States District Judge

17

18

19

20  Copies to counsel of record

21

22

23

24

25

26

27

28

- 46 -