MOLEVER CONELLY PLLC
MICHAEL SALCIDO, No. 009828
Indian Bend Corporate Centre
8161 E. Indian Bend Road, Suite 103
Scottsdale, AZ 85250
Telephone: 480/268-2655
480/240-9370 (fax)
MS@arizonalegal.com

Liaison Counsel

ROBBINS GELLER RUDMAN
   & DOWD LLP
DENNIS J. HERMAN
CHRISTOPHER M. WOOD
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
dherman@rgrdlaw.com
cwood@rgrdlaw.com

Lead Counsel for Lead Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| TEAMSTERS LOCAL 617 PENSION AND WELFARE FUNDS, on behalf of itself and all other similarly situated,<br><br>                                        Plaintiff,<br><br>        vs.<br><br>APOLLO GROUP, INC., et al.,<br><br>                                        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 2:06-cv-02674-RCB<br><br>CLASS ACTION<br><br>LEAD PLAINTIFF'S FED. R. CIV. P. 59(e) MOTION TO ALTER OR AMEND JUDGMENT<br><br>ORAL ARGUMENT REQUESTED |

620745_1

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT .................................................................................................... 1

      A.    Recently Issued Ninth Circuit Opinions Are Inconsistent with
            Court's Analysis of the SAC's Allegations ................................. 2

            1.    *Lynch v. Rawls*, No. 09-17379, 2011 U.S. App. LEXIS 8503
                  (9th cir. Apr. 26, 2011)........................................................... 2

            2.    *N.M. State Inv. Council v. Ernst & Young LLP*, No. 09-55632,
                  2011 U.S. App. LEXIS 7680 (9th Cir. Apr. 14, 2011) ...................... 4

      B.    The Court's Dismissal of Plaintiffs' Claims Based on Defendants'
            False and Misleading Statements Regarding APB 25, IRS Code
            §162(m) and Sarbanes-Oxley Certifications Was Manifestly
            Erroneous ................................................................................. 7

      C.    The Court Should Have Permitted Plaintiffs an Opportunity to
            Amend the Complaint Prior to Dismissing the Action with Prejudice ........ 9

            1.    Amendment Would Not Be Futile Because Plaintiffs Can
                  Indeed Address the Deficiencies Identified in the Order ................. 10

            2.    Standing Alone, the Court's Warning that Claims Could Be
                  Dismissed Was Not a Sufficient Basis to Warrant Denial of
                  Leave to Amend ..................................................................... 12

III.  CONCLUSION ................................................................................................. 13

**Page**

CASES

*Baisa v. Indymac Fed. Reserve*,
No. 2:09-1464 WBS JFM, 2010 U.S. Dist. LEXIS 63025
(E.D. Cal. June 7, 2010)....................................................................................12

*Carvalho v. Equifax Info. Servs., LLC*,
629 F.3d 876 (9th Cir. 2010) ...........................................................................12

*Dussouy v. Gulf Coast Inv. Corp.*,
660 F.2d 594 (5th Cir. 1981) ..............................................................................9

*Eminence Capital, L.L.C. v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ...............................................................10, 11, 13

*Emp'rs Ins. of Wausau v. Cal. Water Serv. Co.*,
No. C-06-03002 RMW, 2008 U.S. Dist. LEXIS 65433
(N.D. Cal. Aug. 25, 2008)...................................................................................5

*Foman v. Davis*,
371 U.S. 178 (1962)..............................................................................9, 10, 13

*Glazer Capital Mgmt., LP v. Magistri*,
549 F.3d 736 (9th Cir. 2008) ...........................................................................8, 9

*In re Cabletron Sys.*,
311 F.3d 11 (1st Cir. 2002).................................................................................8

*In re CNET Networks, Inc.*,
483 F. Supp. 2d 947 (N.D. Cal. 2007) ................................................................3

*In re Finisar Deriv. Litig.*,
2009 WL 3072882 (N.D. Cal. Sept. 22, 2009) ..............................................2, 4

*Lindauer v. Rogers*,
91 F.3d 1355 (9th Cir. 1996) ..............................................................................9

*Lynch v. Rawls*,
No. 09-17379, 2011 U.S. App. LEXIS 8503
(9th cir. Apr. 26, 2011) ...............................................................................2, 3, 4

*Middlesex Ret. Sys. v. Quest Software, Inc.*,
No. CV 06-6863 DOC (RNBx), 2008 U.S. Dist. LEXIS 68419
(C.D. Cal. July 10, 2008) ....................................................................................8

| | Page |
|---|---|
| *N.M. State Inv. Council v. Ernst & Young LLP,*<br>No. 09-55632, 2011 U.S. App. LEXIS 7680<br>(9th Cir. Apr. 14, 2011) .................................................. | 4, 5, 6, 7 |
| *Rosenzweig v. Azurix Corp.,*<br>332 F.3d 854 (5th Cir. 2003) ...................................... | 10 |
| *United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.,*<br>555 F.3d 772 (9th Cir. 2009) ...................................... | 2 |
| *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.,*<br>971 F.2d 244 (9th Cir. 1992) ...................................... | 5 |

## STATUTES, RULES AND REGULATIONS

| | Page |
|---|---|
| 15 U.S.C.<br>§78u-4(b)(1)(B)......................................................... | 8 |
| Federal Rules of Civil Procedure<br>Rule 15(a)................................................................. | 9, 10, 13 |
| Rule 59(e)................................................................. | 1, 2, 9, 10 |

# I.    INTRODUCTION

Plaintiffs hereby request that the Court alter or amend its March 31, 2011 Judgment (Dkt. No. 145) pursuant to Fed. R. Civ. P. 59(e) ("Rule 59(e)") on the following grounds. ***First***, two Ninth Circuit opinions issued subsequent to the entry of judgment require the Court to revisit its analysis dismissing the action.  The Ninth Circuit's reversal in *Finisar* is critical because the Court and defendants relied on such decisions extensively.  Similarly, the reversal of dismissal in *Ernst* demonstrates that the SAC's allegations regarding Apollo Group, Inc.'s ("Apollo" or the "Company")  restatement of its financial results was sufficient to plead the falsity of such statements. ***Second***, by failing to credit allegations establishing that Apollo admitted it had not complied with Accounting Principles Bulletin No. 25 ("APB 25") and IRS Code §162(m), the Court clearly erred in dismissing — for failure to plead falsity — claims arising from defendants' unqualified statements that Apollo was complying with those requirements.    ***Third***, by dismissing this case with prejudice and denying plaintiffs the opportunity to seek leave to amend the Second Amended Complaint for Violations of the Federal Securities Laws (Dkt. No. 112) ("SAC"), the Court failed to follow binding Ninth Circuit precedent establishing extremely permissive standards for granting leave to amend claims of securities fraud subject to the Private Securities Litigation Reform Act of 1995 ("PSLRA").

In light of the foregoing, and for the reasons explained below, plaintiffs respectfully request that the Court revisit the analysis contained in the March 31, 2011 Order (Dkt. No. 144) (the "Order") and modify or amend its judgment, including to provide plaintiffs with an opportunity to amend the SAC to provide such additional detail, explanation or analysis as the Court may still require to support the claims for securities fraud which are the subject of this proceeding.

# II.    ARGUMENT

"Under Rule 59(e), it is appropriate to alter or amend a judgment if '(1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening

- 1 -

change in controlling law.'" *United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009).[1]

### A. Recently Issued Ninth Circuit Opinions Are Inconsistent with Court's Analysis of the SAC's Allegations

Two recent opinions by the Ninth Circuit Court of Appeals, reversing district courts which had dismissed cases involving allegations of stock option backdating, demonstrate that this Court's analysis on certain key points was incorrect. The Court should reconsider its judgment in light of this new authority. To the extent that the Court still finds the SAC deficient, this new authority demonstrates, at a minimum, that with further leave to amend, a complaint sufficient to state a claim against defendants can be alleged.

#### 1. *Lynch v. Rawls*, No. 09-17379, 2011 U.S. App. LEXIS 8503 (9th cir. Apr. 26, 2011)

In discussing the deficiencies of the SAC, the Order relied on two separate opinions from the District Court of the Northern District of California in *In re Finisar Corp.*, No. C 06-7660 RMW (N.D. Cal.). Order at 14, 15, 18, 28, 33, 34, 75 (citing *Finisar Corp. Derivative Litig.*, 542 F. Supp. 2d 980 (N.D. Cal. 2008) ("*Finisar I*") and *In re Finisar Deriv. Litig.*, 2009 WL 3072882 (N.D. Cal. Sept. 22, 2009) ("*Finisar II*")). However, in *Lynch v. Rawls*, No. 09-17379, 2011 U.S. App. LEXIS 8503 (9th Cir. Apr. 26, 2011) ("*Finisar III*"), (Wood Decl., Ex. A),[2] the Ninth Circuit **reversed** the district court's dismissal of the *Finisar* action, finding that the district court had committed numerous errors in its analysis. The Ninth Circuit's reversal demonstrates that the Court's reliance on *Finisar I* and *Finisar II* was misplaced.

The Order cited *Finisar I* in support of its finding that the SAC's allegations regarding the October 20, 2003 grant were not sufficient to allege that the grant had been backdated.

---

[1] All internal citations are omitted and emphasis is added throughout unless otherwise noted.

[2] "Wood Decl." refers to the Declaration of Christopher M. Wood in Support of Lead Plaintiff's Fed. R. Civ. P. 59(e) Motion to Alter or Amend Judgment.

620745_1

Order at 14, 15, 18.  The Court also reasoned that because Apollo's restatement claimed that options granted after 2002 generally did not require adjustment, this undermined an inference of backdating.  Order at 11.

*Finisar III* fundamentally alters this analysis.  Despite the fact that Finisar Corp. ("Finisar") "never admitted that the challenged options to directors were backdated," the Court credited plaintiffs' allegation that 12 out of 17 grants were dated "near or on the day that Finisar hit its low stock price for the month or in advance of a sharp increase in stock price."  *Finisar III*, 2011 U.S. App. LEXIS 8503, at *4-*5.  *Finisar III* also credited plaintiffs' use of a statistical analysis in alleging backdating.  *Id*. at *5.  In its March 31, 2009 Order (Dkt. No. 105) ("2009 Order"), this Court quoted *In re CNET Networks, Inc.*, 483 F. Supp. 2d 947 (N.D. Cal. 2007) for the proposition that "[s]ound analytical methods are one way that plaintiffs could have eliminated the possibility that the returns from the grants were the product of dumb luck."  2009 Order at 52-53.  Because, however, the Court expressly stated that such an analysis was ***not*** required (*Id*. at 53), plaintiffs did not include one in the SAC.  However, in light of the Court's more recent Order, plaintiffs are undertaking the same kind of statistical analysis as was expressly sanctioned by *Finisar III*.

*Finisar III* also held that the  plaintiff was permitted to "rely on the self-incriminatory portions of Finisar's 10-K without having to take the 10-K's self-serving, self-exonerating conclusion of no malfeasance on behalf of the majority of Finisar's board as true."  2011 U.S. App. LEXIS 8503, at *5 n.1 (citing *Williamson v. United States*, 512 U.S. 594, 600 (1994)).  The Ninth Circuit's ruling, in almost identical circumstances as are presented here, calls into question this Court's holding that falsity cannot be pled if plaintiffs' allegations contradict Apollo's restatement.  Order at 57 (holding that the SAC "could not withstand these dismissal motions because in relying upon the Restatement as a basis for falsity, the SAC does not always comport with the Restatement").  It also demonstrates that defendants' self-serving conclusions regarding whether options were backdated after 2002, or whether

there was evidence of backdating, is irrelevant and carries no probative value.  *See* Order at 16-17.[3]

Considering the fact that defendants cited at least one of the *Finisar* decisions in every single brief they submitted attacking the SAC, defendants cannot credibly claim that *Finisar III* does not represent a fundamental rejection of their contentions in support of dismissal of the SAC.  *See* Dkt. No. 120 at 5; Dkt. No. 122 at 12; Dkt. No. 132 at 5-7; Dkt. No. 133 at 7.

*Finisar III* demonstrates that two substantial decisions on which this Court relied were fundamentally flawed.  As the Ninth Circuit stated, "the district court here drew inferences in favor of Defendants rather than Plaintiffs, resolved factual inconsistencies without discovery, and analyzed Plaintiffs' allegations individually rather than collectively."  *Finisar III*, 2011 U.S. App. LEXIS 8503, at *7-*8.  Such a fundamental rejection of the district court's analysis demonstrates that the Court should withdraw the Judgment and revisit the Order to the extent it relied on *Finisar I* and *Finisar II*, or as discussed below, grant plaintiffs leave to file an amended complaint and a motion to amend and consider *Finisar III* in connection with that motion.

## 2.  *N.M. State Inv. Council v. Ernst & Young LLP*, No. 09-55632, 2011 U.S. App. LEXIS 7680 (9th Cir. Apr. 14, 2011)

On April 14, 2011, the Ninth Circuit issued an opinion in *N.M. State Inv. Council v. Ernst & Young LLP*, No. 09-55632, 2011 U.S. App. LEXIS 7680 (9th Cir. Apr. 14, 2011) ("*Ernst*").  Wood Decl., Ex. B.  *Ernst* is a securities class action involving a restatement

---

[3]     In this same analysis, the Court found that plaintiff "mischaracterizes Apollo's motion as containing an 'admission' of backdating when it does not."  Order at 17.  However, the Order did not discuss other allegations in the SAC where the Company stated that "***Apollo restated its SEC filings with regards, primarily, to backdating of stock option grants***," and where defendant Sperling stated that while he was not sure if backdating occurred, "I think that there were — that all of the Section 16 officers received back[dated] options on the same day."  ¶¶98-100; Lead Plaintiff's Omnibus Opposition to Defendants' Motion to Dismiss the Second Amended Complaint for Violations of the Federal Securities Laws (Dkt. No. 129) ("MTD Opp." or "MTD Opposition") at 4.  All paragraph references are to the SAC unless otherwise noted.

which "acknowledged that Broadcom had improperly accounted for $2.2 billion in income, largely due to improper option backdating." *Ernst*, 2011 U.S. App. LEXIS 7680, at *6.

The Ninth Circuit recognized that due to Broadcom Corp.'s ("Broadcom") restatement "every financial statement, and quarterly and annual report issued during the time period covered by the Restatement, was false and misleading." *Id*. Indeed, the allegations of falsity contained in the complaint that the district court upheld against a number of the defendants in Broadcom were substantially similar to the allegations contained in the SAC at issue here. Wood Decl., Ex. C at ¶331;[4] *compare e.g.*, ¶49(b).[5] The Court stated that by not properly expensing such options "the company's reported net income is overstated for each of the years the options vest, potentially deceiving the market and investors." *Ernst*, 2011 U.S. App. LEXIS 7680, at *6. Like Apollo, the grants at issue at the Company in *Ernst* vested over four years and were required to be expensed over the vesting period. ¶46; *Ernst*, 2011 U.S. App. LEXIS 7680, at *4, *6.

The description of Broadcom's restatement was strikingly similar to Apollo's restatement. Broadcom's restatement, like Apollo, never expressly used the word "backdating." Rather, it described the practice, including grants where: (i) the Company was unable to locate contemporaneous documentation establishing a measurement date; (ii) dates were selected with the benefit of hindsight; and (iii) broad-based grants were assigned strike prices prior to the allocation of such grants to company employees. Wood Decl., Ex. C at ¶¶231-233. Similarly, here Apollo admitted that defendants: (i) "prepared and maintained inaccurate documentation concerning the date that grant award lists were completed and

---

[4]    The court may take judicial notice of plaintiffs' complaint in *Ernst* "for the type of information contained in that document," and "'to establish the fact of such litigation and related filings.'" *Emp'rs Ins. of Wausau v. Cal. Water Serv. Co.*, No. C-06-03002 RMW, 2008 U.S. Dist. LEXIS 65433, at *4 n.1 (N.D. Cal. Aug. 25, 2008); *see also United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (court "'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'").

[5]    All paragraph references are to the SAC unless otherwise noted.

- 5 -

approved;" (ii) granted large management grants which could have been "retroactively selected"; and (iii) used a measurement date for options grants even though approved had not been received and "the final lists of grantees and award amounts were incomplete."  ¶¶96, 104.

For example, the Ninth Circuit discussed a May 2000 stock option grant which was "at minimum, suspicious" due to its timing — it was purportedly granted at an annual low in Broadcom's stock price. *Ernst*, 2011 U.S. App. LEXIS 7680, at *13, *21.  Plaintiffs alleged that because Ernst and Young LLP ("E&Y") knew that Broadcom had not allocated such grants by the time of the grant date, as required by Generally Accepted Auditing Standards ("GAAS") and APB 25, E&Y's unqualified audit opinion was a material misstatement made with scienter.  *Id*. at *13.  The Ninth Circuit agreed, setting forth the simple accounting principles relevant to such a transaction.  While there may be instances where a measurement date can be more complicated to determine, "such as an option grant conditioned on some other event occurring, such as a promotion or assuming a new position," the Ninth Circuit recognized that the options at issue in *Ernst*, like those at issue here, did not arise from such circumstances.  *See id*. at *15-*16.

*Ernst* confirms that plaintiffs here have stated a claim arising from Apollo's practices of issuing non-management grants without having actually set a grant date.  *See* ¶¶7 n.1, 88, 96, 104(a).  The practices described by the Ninth Circuit in *Ernst* are indistinguishable from the admissions in Apollo's restatement regarding the Company's failure to allocate stock option grants to non-management employees by the time of the purported grant date:

> In the accounting of certain stock option grants, the Company did not correctly apply the requirements of APB 25.  In certain instances, the Company used a measurement date for option awards that corresponded with the [stated] grant date even though the approvals for those grants as set forth in the operative plans were not obtained until after the reported grant date and the final lists of grantees and award amounts were incomplete at the time of the reported grant date.

¶96; *see also* ¶¶7 n.1, 88, 104(a).  As the SAC alleged, "while the restatement avoided using the word 'backdating,'" just as in *Ernst*, "it nevertheless described the practice and its consequences."  ¶97.

The Ninth Circuit in *Ernst* also discussed numerous grants which were made at Broadcom when its compensation committee "was not legally constituted due to the death of one of the committee members." *Ernst*, 2011 U.S. App. LEXIS 7680, at *25. Between June 2001 and December 2001, "Broadcom was . . . using unanimous written consent (UWC) resolutions to approve options on dates after the actual date the grant supposedly was approved." *Id*. at *26. As a result, E&Y was alleged to have accepted "unsigned draft minutes," and also "later documentation that could not possibility have been valid." *Id*. at *25-*27. The SAC here similarly alleges that defendants: (i) falsified documents regarding the approval of stock option grants (¶¶7, 94); (ii) attempted to cover-up their misconduct regarding the granting of stock options as it concerned "the Company's financial reporting" (¶¶94, 96); and (iii) granted options with such a lack of process that the Company could not determine whether certain stock option grants were ever properly approved (¶104(e)). As in *Ernst*, these specific allegations describe the conduct defendants engaged in which caused them to falsify Apollo's financial reporting and led to the falsity of other statements alleged to be false in the SAC.

In combination with *Finisar III*, the Ninth Circuit's analysis in *Ernst* demonstrates that the Court should revisit its analysis in the Order, or allow plaintiffs to file a motion to amend so that an amended complaint can be examined consistent with such new case law.

### B. The Court's Dismissal of Plaintiffs' Claims Based on Defendants' False and Misleading Statements Regarding APB 25, IRS Code §162(m) and Sarbanes-Oxley Certifications Was Manifestly Erroneous

Even without regard to *Ernst* and *Finisar III*, the Court's finding that the SAC did not allege falsity with particularity with respect to false statements regarding Apollo's compliance with APB 25 and IRS §162(m) as well as SOx certifications signed by defendants Todd S. Nelson ("Nelson") and Kenda B. Gonzales ("Gonzales") was manifestly erroneous. Order at 58; *see* ¶¶67(a)-(d); ¶¶68(a)-(e); and ¶¶69(a)-(d).

Defendants do not dispute that Apollo failed to comply with APB 25 during the Class Period. ¶68(f). They also do not dispute that Apollo failed to comply with IRS §162(m)

during the Class Period. ¶67(e). The SAC also explains why Nelson and Gonzales' SOx certifications certifying the adequacy of the Company's internal controls were knowingly false. ¶69(e). These allegations, coupled with the compelling allegations of defendants' scienter that the Court found sufficient in its 2009 Order, state a claim in compliance with the PSRLA's requirements. *Middlesex Ret. Sys. v. Quest Software, Inc.*, No. CV 06-6863 DOC (RNBx), 2008 U.S. Dist. LEXIS 68419, at *17 (C.D. Cal. July 10, 2008) (finding defendants' admission "in their Restatement that Quest granted stock options at an exercise price lower than fair market value on the date of the grant" was sufficient to plead the falsity of defendants' statements that they followed Generally Accepted Accounting Principles ("GAAP") and APB 25). Indeed, the 2009 Order explained in detail why plaintiffs had pled scienter with respect to such statements. 2009 Order at 84. The Court held that lead plaintiff's "allegations as to Nelson, Gonzales, Norton and Blair," "'create an inference greater than the sum of [their] parts,' that they acted with knowledge or at least were deliberately indifferent as to [the] falsity of their statements regarding ***accounting for stock-based compensation expenses and the existence of internal controls in that regard***." *Id.*

Plaintiffs need not plead evidence of how each specific stock option grant which was the subject of Apollo's restatement violated APB 25 and IRS §162(m). *See In re Cabletron Sys.*, 311 F.3d 11, 33 (1st Cir. 2002) ("the rigorous standards for pleading securities fraud do not require a plaintiff to plead evidence"). The PLSRA's heightened pleading standards only require that a securities fraud complaint "specify each statement alleged to have been misleading," and provide "the reason or reasons why the statement is misleading." 15 U.S.C. 78u-4(b)(1)(B).

The Ninth Circuit's falsity analysis in *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 742 (9th Cir. 2008) provides a clear example of how simple that task can be. In *Glazer*, plaintiffs had alleged that defendants issued a false merger agreement which stated that the company was in compliance "'in all material respects with all laws,'" was in compliance "with the books and records provision of Section 13(b) of the Exchange Act," and that "'[n]either the Company . . . nor, to the knowledge of the Company, any director, officer,

- 8 -

agent, employee or other Person acting on behalf of the Company' has violated the anti-bribery provisions of Section 30A of the Exchange Act." *Id*. at 741-42. Reversing the District Court's order, which had found such allegations insufficient, the Ninth Circuit falsity analysis was straightforward:

> *Glazer* has pled facts demonstrating that InVision was ***not*** in compliance with Section 13(b) of the Exchange Act at the time the warranties were made: the SEC cease and desist order of February 14, 2005 stated that "InVision violated Section 13(b)(2)(A) by improperly recording in its books and records payments it made [in violation of the FCPA]" and that InVision "violated Section 13(b)(2)(B) by failing to devise and maintain an effective system of internal controls to prevent and detect violations of the FCPA." Therefore, we conclude that Glazer has satisfied the pleading requirements of the PSLRA with respect to the issue of falsity.

*Id*. (emphasis in original). The Ninth Circuit's analysis of falsity in *Glazer* demonstrates that, particularly with respect to the falsity of defendants' SOx certifications and their statements regarding the Company's compliance with APB 25 and IRS §162(m), plaintiffs' explanations for the falsity of such statements complied with the PSLRA's pleading standards. Thus, *Glazer* illustrates that such statements were indeed pled with the requisite particularity.

## C. The Court Should Have Permitted Plaintiffs an Opportunity to Amend the Complaint Prior to Dismissing the Action with Prejudice

Plaintiffs also respectfully request that the Court modify the Order to provide plaintiffs with an opportunity to replead their claims to satisfy the Court's concerns. Plaintiffs requested and defendants did not oppose such request which was made in the MTD Opposition. Order at 74. Lead plaintiff will be prepared to file an amended complaint and motion to amend, within 21 days of the Court's resolution of this Motion, if not earlier. *See Lindauer v. Rogers*, 91 F.3d 1355, 1357 (9th Cir. 1996) (where judgment has been entered, a Rule 59(e) motion must be granted before a motion for leave to amend can be considered).

A motion to amend a judgment pursuant to Rule 59(e) to allow amendment of the pleadings should be governed by the same principles as a Fed. R. Civ. P. 15(a) ("Rule 15(a)") motion to amend. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (examining a Rule 59(e) motion under Rule 15(a) standards); *accord Dussouy v. Gulf Coast Inv. Corp.*, 660

- 9 -

F.2d 594, 597 (5th Cir. 1981) ("the disposition of the plaintiff's motion to vacate under rule 59(e) should be governed by the same considerations controlling the exercise of discretion under rule 15(a)") (citing *Foman*, 371 U.S. 178); *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (same).

As the Supreme Court has recognized:

> In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be "freely given."

*Foman*, 371 U.S. at 182.

Importantly, in securities cases "[d]ismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." *Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). In *Eminence*, the Ninth Circuit reversed a District Court order which dismissed plaintiffs' complaint with prejudice after finding that plaintiffs already had "three bites" at the apple and failed to allege falsity or scienter in connection with the defendant Company's restatement of financial results. *Id.* at 1051. While noting that leave to amend is generally to be granted with "'extreme liberality,'" the court also stressed that leave to amend must be very carefully examined in cases subject to the PSLRA, which "requires a plaintiff to plead a complaint of securities fraud with an unprecedented degree of specificity and detail 'giving rise to a strong inference of deliberate recklessness.'" *Id.* at 1052.

Here, without discussing *Eminence* or the *Foman* factors, the Court refused to grant leave to amend based on: (i) a finding that amendment would be futile; and (ii) the fact that the court had already warned plaintiffs that claims could be dismissed if not properly pled on amendment. Order at 74-77. The Order's analysis was inconsistent with Ninth Circuit law.

### 1. Amendment Would Not Be Futile Because Plaintiffs Can Indeed Address the Deficiencies Identified in the Order

While the Court noted that plaintiffs already had one opportunity to amend the complaint, which the Court found insufficient, this does not mean that further amendment

would be futile, as the Order concluded. Order at 75-76. As *Eminence* notes, successfully pleading a case in accordance with the PSLRA is not an easy task:

> But how much detail is ***enough*** detail? When is an inference of deliberate recklessness ***sufficiently*** strong? There is no bright-line rule. Sometimes it is easy to tell, but often it is not. The acid test is a motion to dismiss. We need to bear in mind that we are not operating in the world of notice pleadings. In this technical and demanding corner of the law, the drafting of a cognizable complaint ***can be a matter of trial and error***.

*Eminence*, 316 F.3d at 1052. As here, the district court in *Eminence* had granted defendants' motion to dismiss because plaintiffs had "'failed to plead sufficiently how and why the financial statements were false because plaintiffs fail to provide requisite detail in the accounting allegations.'" *Id.* at 1053.

In attempting to address the concerns identified by the Court in its 2009 Order, the SAC added claims regarding new options which were alleged to have been backdated (¶44) and included new allegations regarding the statements which plaintiffs alleged to be false (*compare* Lead Plaintiff's Complaint for Violations of the Federal Securities Laws (Dkt. No. 71), ¶¶53-87 *with* SAC ¶¶45-69). This Court recognized that plaintiffs had also further developed the theory of the case in some respects. Order at 25 n.10. Therefore, as in *Eminence*, "[t]his is not a case where plaintiffs took 'three bites at the apple' by alleging and re-alleging the same theories in an attempt to cure pre-existing deficiencies." *Eminence*, 316 F.3d at 1053. Rather, plaintiffs were given one opportunity for amendment that the Court found failed to satisfy the demanding requirements of the PSLRA. Under these circumstances, denial of leave to amend was inappropriate.

Plaintiffs readily acknowledge that the SAC contained certain mistakes in pleading which contributed to the Court's finding that the SAC failed to allege falsity with particularity and which led the Court to reexamine the SAC's backdating allegations. *E.g.*, Order at 22, 54; *see also* MTD Opposition at 16 n.5, 21 n.6 (acknowledging certain errors described by defendants). The errors were ascertainable from the exhibits that plaintiffs attached to the SAC or the documents submitted by defendants of which the court took judicial notice. The fact that such errors were identified and can be corrected by reference to

publicly available documents demonstrates that the errors can be corrected in an amended pleading. *See Baisa v. Indymac Fed. Reserve*, No. 2:09-1464 WBS JFM, 2010 U.S. Dist. LEXIS 63025 (E.D. Cal. June 7, 2010) (granting plaintiffs leave to amend to "remove causes of action, reduce issues, clarify parties, and correct typographical errors").

Most importantly, amendment is not futile. While the Order recognized that plaintiffs had "reorganize[d] and arguably streamline[d]" the allegations in the SAC, the Court found that the SAC still did not "'draw a specific nexus between the allegedly fraudulent statement and the facts upon which the allegation of fraud is dependent.'" Order at 38, 57. While, as set forth above, plaintiffs believe that many of the SAC's allegations of falsity were sufficient, plaintiffs can nonetheless respond to the Court's concerns in this regard by submitting an amended complaint which (i) corrects any "discrepancies and inconsistencies" between the complaint's allegations and the accounting errors admitted as part of Apollo's restatement on which plaintiffs rely; (ii) provides a more detailed explanation of how Apollo's restatement supports their allegation of falsity and fraud; (iii) further describes how defendants' false accounting for options backdating led to the errors in Apollo's financial statements; (iv) explains in more detail how such practices clearly violated the applicable accounting rules; (v) includes additional financial analysis of the stock option grants issued by Apollo consistent with those pled and approved by the Ninth Circuit in *Finisar III*; and (vi) pleads additional facts sufficient to respond to the Court's findings with respect to other false statements alleged in the complaint.

Therefore, because it is not "'clear . . . that the complaint would not be saved by any amendment,'" the Court should modify its judgment to provide plaintiffs with an opportunity to seek leave to amend. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 893 (9th Cir. 2010).

**2. Standing Alone, the Court's Warning that Claims Could Be Dismissed Was Not a Sufficient Basis to Warrant Denial of Leave to Amend**

In dismissing the complaint with prejudice, the Court emphasized that "the court expressly 'advised' plaintiff 'that failure to cure the pleading deficiencies identified therein,

and failure to comply with the relevant case law in that regard, may well lead to dismissal of these claims in the future.'" Order at 74.

Plaintiffs recognize that in attempting to streamline the SAC, the Court concluded that they nonetheless failed to address the Court's concerns regarding particularity and, in attempting to provide additional particularity, made inadvertent factual errors which in fact undermined such attempts. Nevertheless, denying amendment based on the Court's prior admonition was error because there is no set number of amendments allowed. "In this technical and demanding corner of the law, the drafting of a cognizable complaint can be a matter of trial and error." *Eminence*, 316 F.3d at 1052.

Here, as the court notes, plaintiffs were only afforded one substantive opportunity to amend.[6] Order at 76. Further, the Court has not found "undue delay" by plaintiffs or "bad faith or dilatory motive on the part of the movant." Nor have there been "repeated failure[s] to cure deficiencies by amendments previously allowed." *Foman*, 371 U.S. at 182. Lastly, while "prejudice is the 'touchstone of the inquiry under rule 15(a),'" defendants cannot demonstrate any prejudice from the granting of leave to amend at this early stage in the litigation. *Eminence*, 316 F.3d at 1052.

## III.   CONCLUSION

While plaintiffs recognize that the court has devoted significant time and attention to this matter to date, plaintiffs respectfully submit that the court should amend the judgment to

---

[6]     The initial complaint in this action was filed on November 2, 2006.  Dkt. No. 1. Defendants did not respond to the initial complaint.  Dkt. No. 67 at 2.  While the SAC was the third complaint filed in this action, it was only the second operative complaint filed by Lead Plaintiff.

- 13 -

uphold the SAC, at least in part, and to permit plaintiffs to file a motion to amend the

pleadings to cure any defects still remaining after the Court's analysis of issues described

herein.

DATED:  April 28, 2011                    Respectfully submitted,

DENNIS J. HERMAN
CHRISTOPHER M. WOOD


_____s/ Christopher M. Wood_____
CHRISTOPHER M. WOOD

ROBBINS GELLER RUDMAN
  & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
dherman@rgrdlaw.com
cwood@rgrdlaw.com

Lead Counsel for Lead Plaintiff

MOLEVER CONELLY PLLC
MICHAEL SALCIDO
Indian Bend Corporate Centre
8161 E. Indian Bend Road, Suite 103
Scottsdale, AZ  85250
Telephone:  480/268-2655
480/240-9370 (fax)
MS@arizonalegal.com

Liaison Counsel

620745_1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 28, 2011, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 28, 2011.

<u>s/ Christopher M. Wood</u>
CHRISTOPHER M. WOOD

ROBBINS GELLER RUDMAN
   & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
E-mail:  cwood@rgrdlaw.com

# Mailing Information for a Case 2:06-cv-02674-RCB

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Lauren S Antonino**
  lantonino@motleyrice.com

- **James W Barnhouse**
  barnhouse@buckleyking.com,kennelly@buckleyking.com,jsdbarnhouse@cox.net

- **Patrick V Dahlstrom**
  pdahlstrom@pomlaw.com,mzehel@pomlaw.com

- **Robert O Dyer**
  rdyer@stklaw.com,kprentice@stklaw.com

- **Michael J Farrell**
  mfarrell@jsslaw.com,kroberts@jsslaw.com,MinuteEntries@jsslaw.com

- **Joseph E Floren**
  jfloren@morganlewis.com,rluke@morganlewis.com

- **Joshua Ray Forest**
  jforest@snowjensen.com,mbone@snowjensen.com

- **Marc I Gross**
  migross@pomlaw.com

- **Brian A Herman**
  bherman@morganlewis.com

- **Dennis J Herman**
  dennish@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Jeffrey W Lawrence**
  jeffreyl@rgrdlaw.com,e_file_SF@rgrdlaw.com

- **Steven Charles Lawrence**
  slawrence@clarkhill.com,pwhitmore@clarkhill.com

- **Susan Joan Martin**
  smartin@martinbonnett.com,tmahabir@martinbonnett.com,mblawfirm@aol.com

- **Virginia F Milstead**
  virginia.milstead@skadden.com

- **Robert D Mitchell**

robertmitchell@mitchell-attorneys.com,mitchell_atty@msn.com

- **Peter B Morrison**
  pmorriso@skadden.com,jsickler@skadden.com

- **Fei-Lu Qian**
  flqian@pomlaw.com

- **David A Rosenfeld**
  courtnotices@unioncounsel.net,nphillips@unioncounsel.net,bhinkle@unioncounsel.net

- **Samuel H Rudman**
  srudman@rgrdlaw.com,E_file_ny@rgrdlaw.com

- **Michael Salcido**
  ms@arizonalegal.com

- **Jay P Saltzman**
  JAY@SPORNLAW.COM

- **Eric S Waxman**
  ewaxman@skadden.com,allison.velkes@skadden.com,mcouchoi@skadden.com

- **Christopher M Wood**
  cwood@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Louisiana District Attorneys Retirement System**
c/o Martin & Bonnett PLLC
3300 N. Central Ave.
Suite 1720
Phoenix, AZ 85012