WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Teamsters Local 617 Pension and Welfare Funds, *et al.* | ) ) ) | |
| Plaintiffs, | ) ) | No. CIV 06-02674 PHX RCB |
| vs. | ) ) | O R D E R |
| Apollo Group, Inc., *et al.*, | ) ) | |
| Defendants. | ) ) | |

_____

### *Background*

In this securities fraud action, lead plaintiff, Pension Trust Fund for Operating Engineers ("plaintiff"), commenced this action against Apollo Group, Inc. ("Apollo"), and various Apollo officers and directors ("the individuals").[1]  In an effort to satisfy the

_____

[1] Apollo "adopts and incorporates the individual's arguments "to the extent applicable to Apollo[.]" Apollo Resp. (Doc. 149) at 6:25-26, n.1. Similarly, the individuals are relying upon Apollo's reasons, as well as their own, in arguing that plaintiff's motion should be denied.  See Defs.' Resp. (Doc. 148) at 22:19-20.  Thus, unless necessary to distinguish among them, Apollo and the individuals will be collectively referred to throughout as "the defendants."

1   rigorous pleading standards of the Private Securities Litigation

2   and Reform Act ("PSLRA") and Fed.R.Civ.P. 9(b), plaintiff has made

3   literally hundreds of pages of allegations in two separate

4   complaints.[2]   After scrutinizing plaintiff's "cut and paste, . . .

5   puzzle like pleading" in Teamsters Local 617 Pension and Welfare

6   Funds v. Apollo Group, Inc., 633 F.Supp.2d 763 (D.Ariz. 2009)

7   ("Apollo I"), *vacated in part on reconsideration*, 690 F.Supp.2d 959

8   (D.Ariz. 2010), this court found, *inter alia*, that the first

9   amended complaint ("FAC") did not "satisfy the heightened pleading

10  standards for fraud under either Rule 9(b) or the PSLRA."   Id. at

11  786.   The court allowed plaintiff to amend the FAC and it did.

12      That second amended complaint ("SAC") was the subject of

13  another round of dismissal motions by defendants.   Finding that the

14  SAC did not plead falsity with the requisite degree of

15  particularity, the court dismissed the SAC "with prejudice and

16  without leave to amend."   See Teamsters Local 617 Pension and

17  Welfare Funds v. Apollo Group, Inc., 2011 WL 1253250, at *37

18  (D.Ariz. March 31, 2011) ("Apollo III").   Accordingly judgment was

19  entered in favor of defendants and against plaintiff.

20      Currently pending is "Lead Plaintiff's Fed.R.Civ.P. 59(e)

21  Motion to Alter or Amend Judgment[.]"   (Doc. 146) at 1.   Plaintiff

22  is seeking to have the court reopen and modify the Apollo III

23  judgment on the following grounds: (1) two Ninth Circuit cases

24  decided subsequent to Apollo III purportedly represent an

25  intervening change in controlling law; (2) dismissal of certain

26  false and misleading statements was "manifestly erroneous;" and

27

28      [2]      That estimation takes into account the voluminous exhibits incorporated
        in each of the complaints.

1   (3) it was "clear error to dismiss the SAC with prejudice and

2   without leave to amend."  Defendants respond that plaintiff has not

3   satisfied the exceedingly stringent standards to warrant the

4   "extraordinary remedy" of amending a judgment after its entry.  See

5   Allstate Ins. Co. v. Herron, 634 F.3d 1101, 1111 (9th Cir. 2011)

6   (citation and internal quotation marks omitted).

7                          ***Discussion***[3]

8   ***I.  Fed.R.Civ.P. 59(e)***

9        ***A.  Timeliness***

10       Plaintiff specifically styles its motion as one to "alter or

11  amend judgment" pursuant to Fed.R.Civ.P. 59(e).  See Pl.'s Mot.

12  (Doc. 146) at 1.[4]  That Rule mandates that such motions "must be

13  filed no later than 28 days after *entry* of the *judgment*[.]"

14  Fed.R.Civ.P. 59(e) (emphasis added).  Calculating the relevant time

15  frame in accordance with Fed.R.Civ.P. 6(a), the court "exclude[s]"

16  April 1, 2011, the entry date of the judgment, as that is "the day

17  of the event that triggers" Rule 59(e)'s 28 day time "period[.]"

18  See Fed.R.Civ.P. 6(a)(1)(A).  Then, "count[ing] every day,

19  including intermediate Saturdays, Sundays, and legal holidays[,]"

20  means that plaintiff had until April 29, 2011, in which to file its

21  Rule 59(e) motion.  See Fed.R.Civ.P. 6(a)(1)(B).  Plaintiff's

22

23       [3]   Given the court's intimate familiarity with this action and because
the issues have been fully briefed, in its discretion the court denies plaintiff's
24  request for oral argument as it would not aid the decisional process.  See
Fed.R.Civ.P. 78; Partridge v. Reich, 141 F.3d 920, 926 (9th Cir. 1998); Lake at Las
25  Vegas Investors Group, Inc. v. Pac. Dev. Malibu Corp., 933 F.2d 724, 729 (9th Cir.
1991).

26       [4]   For ease of reference, all citations to page numbers of docketed items
27  are to the page assigned by the court's case management and electronic case filing
(CM/ECF) system.

28

1    motion was filed on April 28, 2011, 27 days after the entry of the

2    judgment.  Undoubtedly, that motion was timely under Rule 59(e).

3         Nonetheless, defendants urge the striking of plaintiff's

4    motion as "untimely[.]"  Apollo Resp. (Doc. 149), at 8 n. 5.

5    Defendants posit that because this Court "treats" Rule 59(e)

6    motions "as motions for reconsideration[,]"[5] id., and because

7    plaintiff is seeking to have this court "reconsider its

8    judgment[,]" Pl.'s Mot. (Doc. 146) at 6:7, LRCiv 7.2(g)(2) provides

9    the relevant time frame, not Rule 59(e).  In accordance with that

10   former Rule, "[a]bsent good cause shown, any motion for

11   reconsideration shall be filed no later than fourteen (14) days

12   after the *date* of the *filing* of the *Order* that is the subject of

13   the motion."  LRCiv 7.2(g)(2) (emphasis added).  Defendants proceed

14   to argue that because plaintiff's motion "was filed *28 days* after

15   the *entry* of the *Order* (Dkt. No. 145)[,]" it was not timely under

16   that Local Rule.  See Apollo Resp. (Doc. 149) at 8, n. 5 (emphasis

17   added).

18        There are two primary flaws with this statement.  For

19   starters, it is ambiguous because although Apollo specifically

20   refers to "the Order[,]" it cites to the judgment.  Apollo Resp.

21   (Doc. 149) at 8 n. 5.  An order and a judgment are not necessarily

22   synonymous.  Second, the just quoted statement is internally

23   inconsistent given defendants' proverbial comparison of apples to

24

25   _____

          [5]     In so doing, this court is following well-settled Ninth Circuit

26   precedent denominating Rule 59(e) motions to alter or amend a judgment as motions
     to reconsider.  See, e.g., S.E.C. v. Platforms Wireless Int'l Corp., 617 F.3d 1072,

27   1100 (9th Cir. 2010) (citing United Nat'l Ins. Co. v. Spectrum Worldwide, Inc., 555
     F.3d 772, 780 (9th Cir. 2009) (enumerating the circumstances under which

28   "[r]econsideration under Rule 59(e) is appropriate[]"); Kona Enterprises Inc. v.
     Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000) (recognizing that "Rule 59(e)
     permits a district court to reconsider and amend a previous order[]").

1  oranges.  The defendants indicate that "*entry* of the Order" is the

2  relevant event under LRCiv 7.2(g)(2), <u>see</u> <u>id.</u> (emphasis added),

3  however, pursuant to that Local Rule it is the "*filing* of the

4  Order[,]" not its "entry" which is the triggering event.  <u>See</u> LRCiv

5  7.2(g)(2) (emphasis added).  On the other hand, "entry of the

6  *judgment*, as opposed to the order, is the triggering event under

7  Fed.R.Civ.P. 59(e), which plaintiff argues applies here.

8      Taking defendants' statement at face value, *i.e.*, looking to

9  the date of entry of the Order, they also inaccurately calculate

10  the time frame.  As with the judgment, the order was filed on March

11  31, 2011, but it was not entered until April 1, 2011.  <u>See</u> Doc.

12  144.  Thus, as discussed above with respect to the entry of the

13  judgment, plaintiff's motion was filed *27*, not "*28* days after . . .

14  entry of the Order[,]" as defendants assert.  <u>See</u> Apollo Resp.

15  (Doc. 149) at 8, n. 5 (citation omitted) (emphasis added).

16      With this clarification, the issue remains whether LRCiv

17  7.2(g)(2), as defendants urge, or Fed.R.Civ.P.Rule 59(e), as

18  plaintiff assumes, governs the timeliness of the pending motion.

19  Defendants are mistaken that "constru[ing] plaintiff's Rule 59(e)

20  motion as one for reconsideration means that it "should be

21  stricken" as untimely based upon LRCiv 7.2(g)'s 14 day filing

22  deadline.  <u>See</u> <u>id.</u>  That Local Rule does not apply in this

23  situation because that Rule expressly pertains only to motions to

24  reconsider "orders," as opposed to judgments.  <u>See</u> LRCiv 7.2(g).

25  Federal Rule 59(e), on the other hand, and the explicit basis for

26  plaintiff's motion herein "clearly contemplates entry of judgment

27  as a predicate to any motion[]" thereunder.  <u>See</u> <u>Balla v. Idaho</u>

28  <u>State Board of Corrections</u>, 869 F.2d 461, 466 (9th Cir. 1989)

1  (internal quotation marks and citations omitted).  And here, a

2  judgment within the meaning of Rule 54, was separately entered in

3  accordance with Fed.R.Civ.P. 58.  Thus, in keeping with its

4  "obligation to construe local rules so that they do not conflict

5  with the federal rules," <u>Marshall v. Gates</u>, 44 F.3d 722, 725 (9th

6  Cir. 1995) (citation omitted); Fed.R.Civ.P. 83(a)(1), the court

7  readily finds that LRCiv 7.2(g), directed to reconsideration of

8  orders, does not foreclose a Fed.R.Civ.P. 59(e) motion such as this

9  to alter or amend a judgment.  <u>See</u> <u>Gaut v. Carter</u>, 2012 WL 94479,

10  at *2 (E.D.Cal. 2012) (emphasis added) (local rule governing

11  reconsideration of rulings, decisions or orders did not foreclose

12  Rule 59(e) motion "based on the Court's error in entering judgment

13  on the . . . claim[]").  Further because, as discussed above, Rule

14  59(e) has its own 28 day time frame, despite defendants' contrary

15  suggestion, deeming a Rule 59(e) motion to be one for

16  reconsideration does not mean that LRCiv 7.2(g)(2)'s shorter filing

17  time frame applies.

18      ***B.  Governing Legal Standards***

19      Rule 59(e) does not list "specific grounds for a motion to

20  amend or alter[;]" hence, "the district court enjoys considerable

21  discretion in granting or denying the motion." <u>Herron</u>, 634 F.3d at

22  1111 (internal quotation marks and citation omitted).  "In general,

23  there are four basic grounds upon which a Rule 59(e) motion may be

24  granted: (1) if such motion is necessary to correct manifest errors

25  of law or fact upon which the judgment rests; (2) if such motion is

26  necessary to present newly discovered or previously unavailable

27  evidence; (3) if such motion is necessary to prevent manifest

28  injustice; or (4) if the amendment is justified by an intervening

1   change in controlling law."  <u>Id.</u> (citation omitted).  "[O]ther,

2   highly unusual circumstances," also may "warrant[]

3   reconsideration."  <u>Sch. Dist. No. 11, Multnomah County, Or. v.</u>

4   <u>ACandS, Inc.</u>, 5 F.3d 1255, 1263 (9th Cir. 1993).

5       At the same time, however, "[a] motion for reconsideration may

6   *not* be used to raise arguments or present evidence for the first

7   time when they could reasonably have been raised earlier in the

8   litigation."  <u>Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH &</u>

9   <u>Co.</u>, 571 F.3d 873, 880 (9th Cir. 2009) (case citation and internal

10   quotation marks omitted) (emphasis in original).  Therefore, a

11   party "rais[ing] arguments or present[ing] evidence for the first

12   time when they could reasonably have been raised earlier in the

13   litigation[] . . . raise[s] the concern that [it] has abused Rule

14   59(e)[.]"  <u>Herron</u>, 634 F.3d at 1112 (citation and internal

15   quotation marks omitted).  "Ultimately, a party seeking

16   reconsideration must show more than a disagreement with the Court's

17   decision, and recapitulation of the cases and arguments considered

18   by the court before rendering its original decision fails to carry

19   the moving party's burden." <u>Cachill Dehe Band of Wintun Indians v.</u>

20   <u>California</u>, 649 F.Supp.2d 1063, 1070 (E.D.Cal. 2009) (citation and

21   internal quotation marks omitted).

22       As is abundantly clear, "amending a judgment after its entry

23   remains an extraordinary remedy[.]"  <u>Herron</u>, 634 F.3d at 1111

24   (internal quotation marks and citation omitted).   The Ninth

25   Circuit thus has repeatedly cautioned that such an amendment

26   "should be used sparingly."  <u>Id.</u> (internal quotation marks and

27   citation omitted).  Amendment of judgment is sparingly used to

28   serve the dual "interests of finality and conservation of judicial

1  resources."  See Kona Enterprises, 229 F.3d at 890.  It stands to
2  reason then that plaintiff, as the moving party here, has a "high
3  hurdle."  See Weeks v. Bayer, 246 F.3d 1231, 1236 (9th Cir. 2001).
4  Moreover, denial of a motion for reconsideration under Rule 59(e)
5  will not be reversed absent a showing of abuse of discretion.  See
6  Herron, 634 F.3d at 1111.

7               _1.  "Intervening Change in Controlling Law"_

8       Here, the first basis for plaintiff's Rule 59(e) motion is a
9  claimed intervening change in controlling law.  Shortly after entry
10 of judgment in this case, the Ninth Circuit issued Lynch v. Rawls,
11 429 Fed.Appx. 641 (9th Cir. 2011) ("Finisar III"); and New Mexico
12 State Invest. Council v. Ernst & Young LLP, 641 F.3d 1089 (9th Cir.
13 2011) ("Ernst").  Plaintiff strongly implies that each of those
14 decisions constitutes "an intervening change in controlling law[,]"
15 thus entitling it to relief under Fed.R.Civ.P. 59(e).  See Pl.'s
16 Mot. (Doc. 146) at 5:28-6:1 (internal quotation marks, citation and
17 footnote omitted).  Defendants disagree.

18      There is a dearth of case law, especially in the context of
19 securities litigation, defining precisely what constitutes "an
20 intervening change in controlling law"[6] for Rule 59(e) purposes.
21 See In re Intelligroup Sec. Litig., 527 F.Supp.2d 262 (D.N.J. 2007)
22 ("few federal courts [have] addressed plaintiffs' Rule 59(e)
23 motions within the context of securities litigation for the purpose
24 of establishing whether the precedent entered during the pendency
25

26 _____
       [6]     Judgment was entered in this case on April 1, 2011 (Doc. 145).  The
27 Ninth Circuit filed Ernst, 641 F.3d 1089, on April 14, 2011, and Finisar III, 429
   Fed.Appx. 641, on April 26, 2011.  Consequently, there is no dispute that both
28 decisions were "intervening."  Here, the only contested issue is whether either or
   both of those decisions resulted in a change in controlling law.  Hence, for
   brevity's sake, hereinafter, the court will omit "intervening."

1  of the case constituted an intervening change in the controlling

2  law[]"). Perhaps that explains, but it does not excuse, the

3  relative short shrift which the parties gave this issue.

4      Neither the plaintiff nor Apollo discussed this issue at all.

5  The individuals did, but their treatment was cursory and

6  uninstructive.  They claim that:

7              [I]n contexts analogous to Rule 59(e), courts
             have held that a[] . . . change in controlling
8            law only occurs where 'the reasoning or theory of
             . . . prior authority is clearly irreconcilable
9            with the reasoning or theory of intervening higher
             authority.'

10

11  Defs.' Resp. (Doc. 148) at 8:8-10 (quoting Miller v. Gammie, 335

12  F.3d 889, 893 (9th Cir. 2003) (en banc)).

13      The individuals' reliance on Miller, where the Ninth Circuit

14  was "examin[ing] the effect of an intervening Supreme Court

15  decision on a three-judge panel of th[at] [Circuit] Court[,]" is

16  misplaced.  See United States v. Lindsey, 634 F.3d 541, 548 (9th

17  Cir.), cert. denied, 131 S.Ct. 2475 (2011).  First, even accepting

18  the premise that Miller is analogous to the present case, Miller's

19  holding is not as broad as the individuals imply.  The Miller Court

20  carefully limited its holding to "*circumstances like those*

21  *presented* [t]here[*in*][.]"  See Miller, 335 F.3d at 893 (emphasis

22  added).  In particular, its holding governs "circumstances . . . ,

23  where the reasoning or theory of [a] prior circuit authority is

24  *clearly irreconcilable* with the reasoning or theory of intervening

25  higher authority[.]"  Id. (emphasis added).  The Miller court

26  reiterated that "[i]n future cases of such clear irreconcilability,

27  a three-judge panel of this court and district courts should

28  consider themselves bound by the intervening higher authority and

1  reject the prior opinion of [the Ninth Circuit] as having been
2  effectively overruled." _Id._ at 900.  The individuals' selective
3  quote fails to take into account the context of _Miller_.

4      Second, as discussed next, changes in controlling law for Rule
5  59(e) purposes can occur short of cases of clear irreconcilability,
6  such as _Miller_.  Third, nothing in _Miller_, or, as will be seen,
7  elsewhere, indicates, as the individuals declare, that a change in
8  controlling law "_only_ occurs" under the scenario in _Miller_.  _See_
9  Defs.' Resp. (Doc. 148) at 8:9 (emphasis added).  In sum, the court
10  disagrees with the individuals that _Miller_ provides the governing
11  legal standard here.  Consequently, before examining whether
12  _Finisar III_ or _Ernst_, or both, resulted in a change in controlling
13  law as Rule 59(e) conceives it, the court is compelled to look for
14  guidance to the analyses of other courts which have confronted that
15  issue.  From that, two basic principles emerge.

16      The first is that confirmation or clarification of existing
17  law is not tantamount to a change in controlling law.  _Schiller v._
18  _Physicians Resources Group Inc._, 342 F.3d 563 (5th Cir. 2003),
19  another securities fraud action, is illustrative.  Affirming the
20  denial of plaintiffs' Rule 59(e) motion, the _Schiller_ Court
21  rejected their argument that "_Nathenson v. Zonagen, Inc._, 267 F.3d
22  400 (5th Cir. 2001) represent[ed] a[ ] . . . change in the law[]
23  . . . with respect to the pleading requirements in securities fraud
24  cases."  _Id._ at 568 n. 3.  From the standpoint of the _Schiller_
25  Court, "_Nathenson_ held that the enactment of the [PSLRA] did **not**
26  **generally alter** the substantive scienter pleading requirements for
27  § 10(b) and Rule 10(b)(5) securities fraud claims."  _Id._ (bold
28  emphasis added).  Rather, "_Nathenson_ **merely confirmed** that scienter

1  or severe recklessness remained a valid basis for liability under

2  § 10(b) and Rule 10(b)(5) in light of the plain language of the

3  PSLRA." Id. (bold emphasis added).  As Schiller demonstrates, a

4  change in controlling law requires more than "merely confirm[ing]"

5  the state of existing law.  See id.; see also United States v.

6  Campbell, 168 F.3d 263, 269-270 (6th Cir. 1999) (emphasis added)

7  (defendant not entitled to re-open sentence based upon amendment to

8  Sentencing Guideline which "*merely clarified or explained* it[]" but

9  "did not substantively alter the guideline" and did not "change

10 . . . any underlying principles[]" because that clarification

11 "constitute[d] no 'change' in the law at all[]"); In re

12 Intelligroup, 527 F.Supp.2d at 381-382 (footnote and citations

13 omitted) (applying the Schiller rationale, and holding that neither

14 Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167

15 L.Ed.2d 929 (2007), nor Tellabs, Inc. v. Makor Issues & Rights,

16 Ltd., 551 U.S. 308, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007),

17 "provide[d] th[e] Court with grounds to grant Plaintiffs . . .

18 leave to amend, since both . . . decisions clarified-rather than

19 altered-the applicable pleading standards, which existed at the

20 time of Plaintiffs' filing of all [their] complaints[]").

21      To the contrary, the second emerging principle is that a

22 change in controlling law results where a subsequent decision

23 "creates a *significant shift* in [a court's] analysis[.]"

24 Beckstrand v. Electronic Arts Group Long Term Disability Ins. Plan,

25 2007 WL 177907, at *2 (E.D.Cal. Jan. 19, 2007) (emphasis added).

26 The plaintiff in Beckstrand, for example, was seeking declaratory

27 relief under the Employee Retirement Income Security Act of 1974

28 ("ERISA").  Following a bench trial in which the court employed an

1  abuse of discretion standard, it entered judgment in defendants'

2  favor.

3       In the meantime, the Ninth Circuit in Abatie v. Alta Health &

4  Life Insurance Co., 458 F.3d 955 (9th Cir. 2006) (en banc),[7]

5  "changed how courts are to apply th[at] abuse of discretion

6  standard," Beckstrand, 2007 WL 177907, at *2, explicitly

7  "overrul[ing]" its prior decision in Atwood v. Newmont Gold Co., 45

8  F.3d 1317 (9th Cir. 1995).  Abatie, 458 F.3d at 966.  Instead of

9  employing Atwood's burden shifting approach in ERISA conflict

10 cases, the Ninth Circuit in Abatie held that the abuse of

11 discretion analysis must, inter alia, be "informed by the nature,

12 extent, and effect on the decision-making process of any conflict

13 of interest that may appear in the record."  Id.  Because Abatie

14 "changed how the court is to review administrator decisions under"

15 ERISA, the district court in Beckstrand granted plaintiff's motion

16 to amend the judgment based upon that change in controlling law.

17 Beckstrand, 2007 WL 177907, at *2; see also Beckstrand v.

18 Electronic Arts Group Long Term Disability Ins. Plan, 2007 WL

19 1599769, at *3 (citation omitted); and at *5 (E.D.Cal. Jun. 4,

20 2007) (Abatie provides a "different analytical approach" or a "new

21 analytical method . . . for courts to employ when reviewing, for

22 abuse of discretion, ERISA cases . . . involv[ing] conflicted

23 administrators[]").

24      A significant change in a court's analysis, and hence a change

25 in controlling law, can occur short of directly overruling a prior

26 _____

27      [7]    In Duvall v. Reliance Standard Life Ins. Co., 646 F.Supp.2d 1188
    (E.D.Cal. 2009), the court indicated that "Abatie's holding . . . appears to have
28 been abrogated by the Supreme Court . . . in Metropolitan Life Insurance Company
    v. Glenn, ___ U.S. ___, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008)."  Id. at 198.  That
    possible abrogation has no bearing on the above discussion.

1  precedent, however, as <u>Moretti v. Wyeth, Inc.</u>, 2011 WL 2580356

2  (D.Nev. Jun. 28, 2011), shows.  The court in <u>Moretti</u> granted

3  summary judgment in favor of the defendant drug manufacturer on two

4  grounds.  First, the court held that the warning label on a generic

5  drug "was adequate as a matter of law because it was approved by

6  the FDA [Food and Drug Administration] and complied with the

7  requirement to be the same as the brand name drug."  <u>Id.</u> at *2.

8  Second, the <u>Moretti</u> court held that the plaintiff could not "prove

9  that any alleged deficiency in [the drug's] labeling was the

10 proximate cause of any injury to [p]laintiff, because no genuine

11 issue exists as to the fact that she did not read the labeling or

12 other information provided for [the] drug."  <u>Id.</u> at *1.

13      After entry of final judgment, plaintiff Moretti sought

14 "reinstate[ment] in light of the Ninth Circuit's [then] recent

15 ruling in <u>Gaeta v. Perrigo Pharmaceuticals Company</u>," 630 F.3d 1225

16 (9th Cir. 2011) ("<u>Gaeta I</u>").  <u>Id.</u>  After <u>Gaeta I</u>, with respect to

17 warnings, the <u>Moretti</u> court found "that despite the approval by the

18 FDA and the compliance with the "same as" requirement, it is "clear

19 that generic manufacturers, . . . , *must* take specific steps when

20 they learn of new risks associated with their products," and "*shall*

21 revise their drug labeling to include a warning as soon as there is

22 reasonable evidence of an association of a serious hazard with a

23 drug."  <u>Id.</u> (quoting <u>Gaeta</u>, 630 F.3d 1231–1232; and citing 21

24 C.F.R. § 201.57(e) (2004)) (emphasis added by <u>Moretti</u> court)

25 (internal quotations omitted)).  "In light of *Geata* [sic],"

26 contrary to its prior holding, the <u>Moretti</u> court thus held that

27 "the label's mere compliance with the same as requirement and

28 approval by the FDA d[id] not bar recovery and d[id] not

1   necessarily deem the warnings adequate as a matter of law."   Id. at

2   *3 (internal quotation marks omitted).

3       On the issue of proximate cause, the Moretti court also found

4   that Gaeta I amounted to a "change in controlling law in . . . that

5   there are means by which generic manufacturers can amend their

6   warnings once they learn of risks, i.e. adding an additional

7   warning on the bottle itself[.]" Id. (internal quotation marks

8   omitted).   Given those changes in the controlling law, the court

9   granted plaintiff's Rule 59(e) motion; vacated its prior order;

10  denied defendants' summary judgment motion and ordered the case

11  reinstated.   Id. at *3 – *4.[8]

12      Sequoia Forestkeeper v. U.S. Forest Service, 2011 WL 902120

13  (E.D.Cal. March 15, 2011), also illustrates a change in controlling

14  law absent an outright reversal.   Justice Kennedy, in his

15  concurrence in Rapanos v. United States, 547 U.S. 715, 759, 126

16  S.Ct. 2208, 2236, 165 L.Ed.2d 159 (2006), adopted a "'significant

17  nexus' test" for determining what constitutes "navigable waters"

18  within the meaning of the Clean Water Act ("CWA").   After

19  considering two Ninth Circuit cases, "which recognized Justice

20  Kennedy's opinion in Rapanos to be the 'controlling rule of law,'"

21  the district court applied that standard, holding that the water at

22  issue was not a "navigable water" under the CWA's definition.

23

24      [8]    Since Moretti, the Supreme Court granted certiorari, vacated the
        judgment, and remanded Gaeta "for further consideration in light of PLIVA, Inc. v.

25  Mensing, 564 U.S. –––-, 131 S.Ct. 2567, 180 L.Ed.2d 580 (2011)[,]" wherein the
        Court held, contrary to Gaeta I, that federal law preempts state law claims  for
        failure to warn against generic drug manufacturers.   See L. Perrigo Co. v. Gaeta,

26  ___ U.S. ___, 132 S.Ct. 497, 181 L.Ed.2d 343 (Oct. 23, 2011) ("Gaeta II").   The
        court in Moretti declined to "rul[e] that the claims were not preempted by federal

27  law, . . . and instead ruled on the merits of the motion for summary judgment with
        regards to the issue of adequate warning[,]" as discussed above.   See Moretti, 2011
        WL 2580356, at *1.   Thus, Gaeta II does not impact the Moretti court's analysis of

28  whether, at that time, Gaeta I constituted an intervening change in the controlling
        law.

- 14 -

1  <u>Sequoia Forestkeeper</u>, 2011 WL 902120, at *4.  Shortly thereafter,

2  the Ninth Circuit "made clear that" courts "may also consider the

3  plurality opinion's interpretation [in <u>Rapanos</u>] of the term

4  'navigable water'[.]"  <u>Id.</u>  Thus, because in <u>Sequoia Forestkeeper</u>

5  the court had previously rejected the plurality definition as "not

6  controlling[,]" it granted plaintiff's motion to reconsider the

7  "navigable waters" issue "under the *Rapanos* plurality standard."

8  <u>Id.</u> at *4 n. 3.

9       In sum, the cases outlined above mark two ends of the change

10 in controlling law spectrum.  At one end, are cases which generally

11 or substantively alter existing law, such as by overruling it, or

12 creating a significant shift in a court's analysis.  Those

13 circumstances warrant relief under Rule 59(e).  On the other end of

14 the spectrum, cases which merely confirm, clarify or explain

15 existing case law do not provide a basis for relief under that

16 Rule.  Guided by these principles, the court will separately

17 consider whether either <u>Finisar III</u> or <u>Ernst</u>, or both, amount to a

18 change in controlling law, as plaintiff strongly implies.[9]

19            ***a.  "Finisar III"***

20      In <u>Apollo III</u>, to a certain extent, this court did rely upon

21

_____

22      [9]    The court is compelled to comment upon plaintiff's view common to both
<u>Finisar III</u> and <u>Ernst</u>, *i.e.* that those cases are "new authority" or "new case
23 law[]" justifying relief from judgment under Rule 59(e).  <u>See</u> Pl.'s Mot. (Doc. 146)
at 6:8; and at 11:18.  Plaintiff is misapprehending the scope of that Rule,
24 however.  If the court ultimately determines that one or both of those cases amount
to a change in controlling law, then plaintiff would prevail under Rule 59(e).
But, that Rule does not contemplate setting aside a judgment just because a case
25 is "new."  <u>See</u> <u>In re Intelligroup</u>, 527 F.Supp.2d at 381, n. 84 (citing, *inter alia*,
<u>Foman</u>, 371 U.S. at 182, 83 S.Ct. 227 ("discussing the filtering aspect of Rule
26 15(a)") ("[G]ranting Plaintiff yet another leave to amend on the grounds of
issuance of new clarifying decisions would: (a) create an anomalous precedent
27 preventing any conclusive litigation by enabling securities plaintiffs to
perpetually seek leave to amend their insufficient complaints through a mere act
28 of citing those judicial decisions, which were issued after these plaintiff[s]
filed their complaints, and (b) therefore, frustrate the whole purpose of both Rule
15(a) and PSLRA.")

1   In re Finisar Corp. Derivative Litig., 542 F.Supp.2d 980 (N.D.Cal.

2   2008) ("Finisar I"); and In re Finisar Corp. Derivative Litig.,

3   2009 WL 3072882 (N.D.Cal. 2009) ("Finisar II"), as more fully

4   discussed herein.   And, after Apollo III, the Ninth Circuit in

5   Lynch v. Rawls, 429 Fed.Appx. 641 (9th Cir. 2011) (unpublished mem.)

6   ("Finisar III") did reverse and remand Finisar II.   Based upon

7   Finisar III, plaintiff is seeking, inter alia, "withdraw[al]" of

8   the Apollo III judgment pursuant to Rule 59(e), and to have this

9   court "revisit [Apollo III] to the extent it relied on Finisar I

10  and Finisar II[.]"   Pl.'s Mot. (Doc. 146) at 8:13-14.   Although not

11  couched strictly in terms of a controlling change in law, as will

12  be seen, evidently that is the import of plaintiff's reliance upon

13  Finisar III as a basis for seeking relief under Rule 59(e).

14  Defendants strenuously disagree that Finisar III warrants granting

15  plaintiff relief from judgment under Rule 59(e).

16                     **i.  Unpublished Memorandum**

17      Citing to Fed.R.App.P. 32.1 and Ninth Circuit Rule 36-3,

18  preceding the Finisar III memorandum it notes, "Not for Publication

19  in West's Federal Reporter[.]" Finisar III, 429 Fed.Appx. 641.

20  Within the Finisar III memorandum itself the Ninth Circuit

21  unequivocally stated, "This disposition is not appropriate for

22  publication and is not precedent except as provided by 9th Cir. R.

23  36-3."   Id. at 642 n.** (emphasis added).

24      Because arguably it is dispositive, the court will first

25  address defendants' argument that Finisar III cannot be deemed a

26  controlling change in law because it is a "non-precedential,"

27  unpublished memorandum decision.   Defs.' Resp. (Doc. 148) at 6:18

28  (citation omitted); see also Apollo's Resp. (Doc. 149) at 9:24

- 16 -

1  (emphasis omitted) ("*Finisar III* is 'Not Precedent'").  In making

2  this argument, defendants rely upon Ninth Circuit Rule 36-3(a),

3  significantly limiting the precedential value of its "[u]npublished

4  dispositions and orders[.]" Ninth Circuit Rule 36-3(a).  Neither

5  are "precedent, *except* when relevant under the doctrine of law of

6  the case or rules of claim preclusion or issue preclusion."  <u>Id.</u>

7  (emphasis added).  Because <u>Finisar III</u> is "not precedent[,]" except

8  for the narrow purposes which Rule 36-3(a) lists, defendants

9  contend that that memorandum "could not reflect a 'change in

10 controlling law[.]'" Apollo's Resp. (Doc. 149) at 10:2-3.

11      Relying in part upon Federal Rule of Appellate Procedure

12 32.1, and upon subsection (b) of Ninth Circuit Rule 36-3, plaintiff

13 counters that this court "can and should rely on *Finisar III*[.]"

14 Pl.'s Reply (Doc. 150) at 6:2-3 (emphasis omitted).  Rule 32.1

15 dictates in relevant part that a court "may not prohibit or

16 restrict the citation of federal judicial opinions" that are

17 designated as "'not for publication[.]'"  Fed.R.App.P. 32.1(a)(i).

18 Ninth Circuit Rule 36-3(b), allows "[u]npublished dispositions and

19 orders issued on or after January 1, 2007" to "be cited to the

20 courts of this circuit in accordance with FRAP 32.1."  Ninth

21 Circuit Rule 36-3(b).

22      Plaintiff fails to take into account the distinction between

23 "'consider[ing]'" or citing to an unpublished case, and whether

24 such a case is tantamount to a change in controlling law, as is

25 evident from the cases to which it cites.  <u>See</u> Pl.'s Reply (Doc.

26 150) at 6:14 (quoting <u>Christian Legal Society v. Eck</u>, 625 F.Supp.2d

27 1026 (D.Mont. 2009) ("<u>CLS</u>")).  In both <u>CLS</u> and <u>CGI Techns. &</u>

28 <u>Solutions, Inc. v. Rose</u>, 2011 WL 197772 (W.D.Wash. Jan. 19, 2011),

- 17 -

1  the courts did look to unpublished Ninth Circuit cases, but they
2  did so under entirely different circumstances than are present
3  here.  Moreover, neither CLS nor Rose even remotely suggests or
4  implies that because a court may cite or look to such memoranda,
5  that somehow equates to a change in controlling law.

6      The most significant distinction between CLS and Rose is that
7  those courts were not confronted with the issue here:  whether an
8  unpublished memorandum can result in a change in controlling law.
9  Moreover, the unpublished decision "freely consider[ed]" by the
10 Rose court "*reasserted* the reasoning" of a prior case which
11 "*remain*[ed] controlling authority in the Ninth Circuit."  Rose,
12 2011 WL 197772 at *3 (emphasis added).  Additionally, even without
13 that "recent" unpublished decision, Ninth Circuit case law
14 supported the Rose court's conclusion.  Id.  The foregoing
15 reinforces the view that the issue of a possible change in law did
16 not arise in any form in Rose.

17     CLS, too, involved a vastly different set of facts than the
18 present case.  In CLS, previously the plaintiff had "brought a
19 strikingly similar, if not identical suit" against other
20 defendants.  CLS, 625 F.Supp.2d at 1031.  In that earlier lawsuit,
21 the district court granted summary judgment in defendants' favor.
22 The Ninth Circuit affirmed in an unpublished memorandum.
23 Consistent with Ninth Circuit Rule 36-3, because "[m]any of the
24 Plaintiffs' . . . arguments" in CLS "were also raised in" their
25 prior action, the CLS court "rel[ied] on [that action] for its
26 precedential *guidance*[.]  Id. at 1031, n. 8 (emphasis added).  As
27 is readily apparent, CLS and Rose thus stand in sharp contrast to
28 the present case.  Consequently, the cases upon which plaintiff is

- 18 -

1  relying are inapposite and have no bearing on the issue of whether

2  an unpublished memorandum, such as Finisar III, can result in a

3  change in controlling law.

4      Moreover, it strains logic to imply, as does the plaintiff,

5  that the Ninth Circuit would announce a change in controlling law

6  in an unpublished memorandum (with a dissent), having limited

7  precedential value under the Rules of that Court.  Cf. Continental

8  Western Insurance Co. v. Costco Wholesale Corp., 2011 WL 3583226,

9  at *3 (W.D.Wash. Aug. 15, 2011) ("Whatever legal effect" federal

10  district court decisions designated as 'Not for Publication' . . .

11  might have, as a practical[] matter[,] they serve as a signal to

12  another court that the court issuing the decision did not intend to

13  contribute to the shaping of the law.") Standing alone, the fact

14  that Finisar III is an unpublished memorandum convinces this court

15  that that memorandum did not result in a change in controlling law

16  as plaintiff suggests.

17      For the sake of completeness, however, the court will assume

18  *arguendo* that Finisar III's status as an unpublished memorandum

19  does not foreclose the possibility that it represents a change in

20  controlling law.  Proceeding with that assumption, the court will

21  turn to the issue of whether plaintiff has met its burden of

22  showing that, substantively, Finisar III resulted in such a change.

23                       **ii.  Merits**

24      First, some clarification is necessary.  Plaintiff gives the

25  inaccurate impression that the Ninth Circuit reversed Finisar I, as

26  well as Finisar II.  See Pl.'s Mot. (Doc. 146) at 6:19-21 (emphasis

27  added) ("The Ninth Circuit's reversal [in Finisar III] demonstrates

28  that th[is] Court's reliance on *Finisar I* and *Finisar II* was

                                - 19 -

1  misplaced."); <u>see</u> <u>also</u> <u>id.</u> at 8:8-9 (emphasis added) ("*Finisar III*

2  demonstrates that <u>two</u> substantial decisions [<u>Finisar I</u> and <u>Finisar</u>

3  <u>II</u>] on which this Court relied were fundamentally flawed.")  Only

4  <u>Finisar II</u> was appealed though.  What is more, <u>Apollo III</u> cited

5  <u>Finisar II</u>, the appealed district court decision, only twice; and,

6  neither time did it cite <u>Finisar II</u> for a proposition later

7  reversed by the Ninth Circuit.  These are just two of the many

8  factors severely undercutting plaintiff's theory that <u>Finisar III</u>

9  entitles it to relief from judgment pursuant to Rule 59(e).

10      Plaintiff claims that <u>Finisar III</u> impacts the <u>Apollo III</u>

11  analysis in a variety of ways.  Tellingly, only one of those ways

12  is even suggestive of a change in controlling law.  Plaintiff reads

13  <u>Apollo III</u> as "cit[ing] *Finisar I* in support of its finding that

14  the SAC's allegations regarding the October 20, 2003 grant were not

15  sufficient to allege that the grant had been backdated."  Pl.'s

16  Mot. (Doc. 146) at 6:22-23 (citations omitted).  Plaintiff then

17  baldly contends that "*Finisar III* fundamentally alters this

18  analysis[;]" but it has not shown, nor could it, how that is so.

19  <u>See</u> <u>id.</u> at 7:4.

20      To begin with, plaintiff mischaracterizes how <u>Finisar I</u>

21  factored into this court's analysis of whether the SAC sufficiently

22  alleged backdating as to the October 20, 2003 grants.

23  Significantly, in <u>Apollo III</u> this court first discussed <u>Finisar I</u>

24  because of plaintiff's reliance thereon.  In responding to

25  defendants' argument that a reasonable inference of backdating

26  could not be drawn as to those grants because they "were publicly

27  disclosed by the timely filing of Form 4s with the SEC[,]"

28  plaintiff relied, *inter alia*, upon "selective quotes" from <u>Finisar</u>

1    I.   _See_ _Apollo III_, 2011 WL 1253250, at *6.   Distinguishing _Finisar_
2    _I_, and explaining how plaintiff's reliance thereon was
3    "unavailing[,]" this court stressed that "of the 12 purportedly
4    backdated stock options [in that case], the Form 4s related to 9 of
5    them were filed _late_."   _Id._ at *3; and *7 (internal quotation marks
6    and citations omitted) (emphasis added by _Apollo III_ court).   In
7    contrast, in _Apollo III_, "where, undisputably, the Form 4s were
8    timely filed[,]" this court concluded that "_Finisar I_['s] . . .
9    recognition that it is 'theoretically possible to backdate where
10   Form 4s are late, has no bearing on the October 20, 2003 grants at
11   issue[.]"   _Id._ at *7.

12        _Finisar III_ does not alter, much less "fundamentally alter"
13   the foregoing because "the related Forms 4 identifying the
14   challenged grants" in _Finisar III_ "were filed months or even more
15   than a year late, allowing ample opportunity for mischief (e.g.
16   selecting more favorable retrospective grant dates)."   _See_ _Finisar_
17   _III_, 429 Fed.Appx. at 644.   Given that obvious and important
18   factual distinction between _Finisar III_ and _Apollo III_, _Finisar III_
19   does not evince a change in controlling law as to whether a
20   reasonable inference of backdating can be drawn when, _inter alia_,
21   as here, Form 4s are timely filed.

22        The second way plaintiff claims that _Finisar III_
23   "fundamentally alters" the _Apollo III_ analysis is with respect to
24   Apollo's Restatement.   Based upon the SAC's allegations, which in
25   turn, "quot[ed] verbatim" from the Restatement, in _Apollo III_, this
26   court stressed that as to certain October 20, 2003 grants, the SAC
27   alleged "that the _original stated grant date_ is the _most likely_
28   _measurement date_ for . . . grants" post August 2002.   _Apollo III_,

1  2011 WL 1253250, at *5 (citations omitted) (emphasis added by

2  <u>Apollo III</u> court).  This court found that such an allegation,

3  "especially when coupled with the timely filed Form 4s, severely

4  erode[d] a strong inference of scienter to engage in intentional

5  backdating as to the October 20, 2003 grants."  <u>Id.</u>   Plaintiff

6  believes that <u>Finisar III</u> "fundamentally alters this analysis[]" as

7  well.  Pl.'s Mot. (Doc. 146) at 7:4.

8       Plaintiff accurately recites the <u>Finisar III</u> Court's comment

9  that:

10              Plaintiffs may rely on the self-incriminatory
                portions of Finisar's 10-K without having to take
11              the 10-K's self-serving, self-exonerating
                conclusion of no malfeasance on behalf of the
12              majority of Finisar's board as true. *See* <u>Williamson</u>
                <u>v. U.S.</u>, 512 U.S. 594, 600, 114 S.Ct. 2431, 129
13              L.Ed.2d 476 (1994)[.]

14 <u>Finisar III</u>, 429 Fed.Appx. 643 n. 1 (other citation omitted).  From

15 plaintiff's viewpoint, that footnote "demonstrates that defendants'

16 self-serving conclusions regarding whether options were backdated

17 after 2002, or whether there was evidence of backdating, is

18 irrelevant and carries no probative value."  Pl.'s Mot. (Doc. 146)

19 at 7:25-8:1 (citation and footnote omitted).  Additionally,

20 plaintiff construes that footnote as a "ruling, in almost identical

21 circumstances presented here, [which] calls into question this

22 Court's holding that falsity cannot be plead if plaintiff's

23 allegations contradict Apollo's restatement."  <u>Id.</u> at 7:21-23

24 (citation omitted).

25      Accepting *arguendo* plaintiff's viewpoint, as the cite to

26 <u>Williamson</u> vividly shows, the quoted proposition had been

27 recognized well before <u>Apollo III</u>.  Thus, <u>Finisar III</u> does not

28 change or expand the controlling law on that issue.  Rather, that

1  footnote merely confirmed the state of existing law as to self-
2  exculpatory statements.  Thus, it does not support a finding that
3  Finisar III represents a change in controlling law.

4       Broadly stated, plaintiff's remaining claims fall into two
5  categories: (1) those which are more appropriately raised, if at
6  all, on appeal; and (2) those which are irrelevant because they beg
7  the dispositive issue of whether Finisar III constitutes a change
8  in controlling law.

9       Falling into that first category is plaintiff's contention
10 that like the district court in Finisar III, this court
11 impermissibly "drew inferences in favor of Defendants rather than
12 Plaintiffs, resolved factual inconsistencies without discovery, and
13 analyzed Plaintiffs' allegations individually rather than
14 collectively."  See   Finisar III, 429 Fed.Appx. at 644.[10]  The sole
15 basis for this argument is, as discussed, the following statement
16 in Apollo III, quoting verbatim from the Restatement:  "Apollo
17 generally determined the *original stated grant date* is the *most*
18 *likely measurement date* for Section 16 Officer grants *after* August
19 2001."  Apollo III, 2011 WL 1253250, at *5 (internal quotations and
20 citation omitted) (emphasis added by Apollo III court).  By
21 focusing on this singular statement, plaintiff is doing precisely
22 what it faults this court for doing  – viewing the SAC's
23 allegations individually, rather than collectively.  That quote
24 from the SAC, taken directly from the Restatement, was one of a
25 number of factors, in combination, which in the end compelled the
26

27        [10]      According to plaintiff, that finding "fundamentally rejects the
28 approach taken by the district court in *Finisar I*[,]" but as earlier noted, in
   Finisar III, the Ninth Circuit reversed and remanded Finisar II – not Finisar I.
   See Pl.'s Reply (Doc. 150) at 7:6-7 (bold emphasis added).

1    court to find that plaintiff could not "rely upon the October 20,

2    2003 grants as a circumstance contributing to a strong inference of

3    scienter[.]" See Apollo III, 2011 WL 1253250, at *10 (internal

4    quotations marks, citation and footnote omitted).  In any event, as

5    is readily apparent, the foregoing amount to nothing more than a

6    disagreement with this court's decision in Apollo III; but that is

7    not a basis for the extraordinary remedy of reopening a judgment

8    under Rule 59(e).  See  Cachill Dehe Band of Wintun Indians, 649

9    F.Supp.2d at 1070.[11]

10       Plaintiff's remaining contentions are irrelevant because, as

11   earlier noted, they beg the critical issue of whether Finisar III

12   constitutes a change in controlling law.  First, plaintiff asserts

13   that because "defendants cited at least one of the *Finisar*

14   decisions in every single brief they submitted attacking ths SAC,

15   [they] cannot credibly claim that *Finisar III* does not represent a

16   fundamental rejection of their contentions in support of dismissal

17   of the SAC."  Id. at 8:3-6 (citations omitted).  Even if Finisar

18   III "fundamental[ly] reject[ed]" defendants' contentions, as

19   opposed to this court's holdings, that is irrelevant to whether

20   Finisar III signaled a change in controlling law.  See id. at 8:5.

21       Plaintiff's assertion that "[t]he Ninth Circuit's reversal in

22   *Finisar* is critical because the Court and defendants relied on

23   [Finisar I and Finisar II] *extensively*[]" similarly has no bearing

24   on the change in controlling law issue.  See id. at 5:6 (emphasis

25   added).  A close look at defendants' previously filed briefs, and

26

27       [11]    Plaintiff's remaining claims such as Finisar III is "inconsistent with"
     this court's analysis in Apollo III, or Finisar III "calls into question" an Apollo
28   III holding, likewise fall into the category of issues which are more appropriately
     raised, if at all, on appeal.  See Pl.'s Mot. (Doc. 146) at 6:3; 7:22.

1  the fact that in <u>Apollo III</u> this court cited to <u>Finisar II</u>, which
2  was subsequently reversed, only twice (and then not for a reversed
3  proposition), belies this assertion.  Even if accurate, nothing
4  about defendants' and the court's alleged "extensive" reliance upon
5  <u>Finisar I</u> and <u>Finisar II</u>, could render <u>Finisar III</u> "critical" under
6  these circumstances.

7      Picking up where plaintiff left off, Apollo devotes the bulk
8  of its <u>Finisar III</u> argument to disputing how "heavily" this court
9  relied upon the underlying <u>Finisar</u> decisions in <u>Apollo III</u>.[12]
10 Taking a slightly different tack, the individuals similarly dispute
11 that they "extensively" relied upon those decisions.  <u>See</u> Defs.'
12 Resp. (Doc. 148) at 9:28-10:24-28, n. 2.  This focus, by all
13 parties, misses the point.  The number of times a case is cited, by
14 the court or the parties, whether one time or 100 times, is
15 immaterial to the issue of whether a change in controlling law has
16 occurred.  As defendants aptly stated, "[t]he mere fact that this
17 Court and the parties cited *Finisar I* and *II*[,]" and <u>Finisar II</u> was
18 "later reversed does not undermine th[is] Court's [<u>Apollo III</u>]
19 opinion[,]" absent a showing of an intervening change in
20 controlling law.  <u>See</u> Defs.' Resp. (Doc. 148) at 8:13-14 (emphasis
21 omitted).

22     Also irrelevant is plaintiff's blanket statement that "*Finisar*
23 *III* . . . credited plaintiffs' use of a statistical analysis in
24 alleging backdating."  Pl.'s Mot. (Doc. 146) at 7:8-9 (citation
25
26
27

28     [12]   <u>See</u> Apollo's Resp. (Doc. 149) 12-19 (concluding after a nearly three page analysis, "[i]n sum, Plaintiff's assertion that the Court relied heavily on the underlying district court *Finisar* decisions is simply false[]").

1   omitted).[13]  Plaintiff does not endeavor to show that <u>Finisar III</u>

2   changed the controlling law with respect to the use of statistical

3   analyses in cases of alleged backdating.  More than two years prior

4   to <u>Finisar III</u>, based upon then-extant case law, this court

5   recognized that such analyses can play a role in alleging

6   backdating.  "Initially th[is] court found . . . somewhat

7   troubling" the FAC's omission of a statistical analysis, especially

8   "given defendants' position that such an analysis is a necessary

9   predicate to pleading backdating." <u>Apollo III</u>, 633 F.Supp.2d at

10  793.  After a review of relevant case law, however, this court

11  opined "that while a statistical analysis may be preferable, and

12  certainly would strengthen the backdating allegations herein, *at*

13  *this point* the lack of such an analysis is not fatal."  <u>Id.</u>

14  (emphasis added).  The court hastened to add, "[t]hat is not to say

15  that at some point in this litigation plaintiff's backdating

16  allegations cannot be defeated due to the lack of a sound financial

17  analysis, but not now." <u>Id.</u> at 794.  In <u>Apollo III</u>, this court

18  "continue[d] to adhere to the view that lack of a sound financial

19  analysis is not critical or necessarily dispositive at the pleading

20  stage when backdating is a part of an alleged section 10(b)

21  fraudulent scheme." <u>Apollo III</u>, 2011 WL 1253250, at *17 (internal

22  quotation marks and citation omitted).

23      Instead of explaining how <u>Finisar III</u> generally altered the

24

_____

25      [13]   There, plaintiffs "included a statistical 'Merrill Lynch' type
    analysis[,]" which "calculates the annualized returns of options grants at twenty
26  days after the grant and compares it with the company's overall annual return."
    <u>Finisar III</u>, 429 Fed.Appx. at 644 and at n. 2.  The <u>Finisar III</u> plaintiffs used
27  that analysis "to demonstrate that the disputed options were granted at periodic
    lows in stock price and/or before substantial increases in stock price, and
28  resulted in annualized returns for directors and officers ranging from 200% to more
    than 3000%, compared to much smaller or even negative returns for average
    investors." <u>Id.</u>

substantive law regarding the use of statistical analyses in a case

such as this, plaintiff takes a somewhat unusual tack.  Plaintiff

declares that "[b]ecause . . . th[is] Court expressly stated that

such an analysis was **not** required . . . , [they] did not include

one in the SAC."  Pl.'s Mot. (Doc. 146) at 7:13-14 (citation

omitted) (emphasis in original).[14]   Plaintiff's strained reading of

Apollo I is problematic, although the court is willing to disregard

it.  The court is unwilling, however, to countenance plaintiff's

seeming failure to take responsibility for what appears to be a

calculated strategy on its part - to delay including a statistical

analysis until it was backed into a legal corner.  Its two prior

complaints had been found wanting in a number of critical ways.

But, literally at the eleventh hour, or so it appears, plaintiff

presents a DTAC which it believes can cure the numerous pleading

deficiencies identified by this court in two prior comprehensive

decisions.  This is akin to "rais[ing] arguments or present[ing]

evidence for the first time when they could reasonably have been

raised earlier in the litigation[.]"  See Herron, 634 F.3d at 1112

(citation and internal quotation marks omitted).  That, in turn,

"raise[s] the concern" of "abuse[] of Rule 59(e)[.]"  See id.

Plaintiff's timing notwithstanding, despite the many and varied

ways in which it undertook to establish that Finisar III

constitutes a change in controlling law, plaintiff has not met its

burden.  Fundamentally, it defies logic to assert that a change in

---

[14]      Plaintiff does indicate that "in light of" Apollo III, they "are
undertaking the same kind of statistical analysis as was expressly sanctioned by
Finisar III."  Pl.'s Mot. (Doc. 146) at 7:15-16.  And, the draft third amended
complaint ("DTAC") which plaintiff attaches to its reply herein, "include[s] such
an analysis performed by an independent expert."  Pl.'s Reply (Doc. 150) at 15:5-6
(citation omitted).

1  controlling law would be announced in an unpublished memorandum.
2  Beyond that, plaintiff has wholly failed to show that <u>Finisar III</u>
3  "generally alter[ed]" or "create[]d a significant shift" in the
4  pertinent substantive law.  <u>See</u> <u>Schiller</u>, 342 F.3d at 568 n. 3;
5  <u>Beckstrand</u>, 2007 WL 177907, at *2.  At the very most, it is
6  possible to read <u>Finisar III</u> as "merely confirming," or "merely
7  clarif[ying] or explain[ing]" the state of existing law.  <u>See</u>
8  <u>Schiller</u>, 342 F.3d at 568 n. 3; <u>Campbell</u>, 168 F.3d at 269.  Such
9  confirmation is not equivalent to a change in controlling law
10 sufficient as courts define it, however.  Thus, the only way
11 plaintiff can prevail on its change in controlling law theory is if
12 it can show that <u>Ernst</u> constituted such a change.

13                        ***b.  "Ernst"***

14      Not long after entry of the <u>Apollo III</u> judgment, the Ninth
15 Circuit in <u>Ernst</u> reversed and remanded the dismissal of a
16 securities fraud complaint for failure to adequately plead
17 scienter.  That lawsuit had its genesis in an "improper stock
18 option backdating scheme" by Broadcom Corporation, a semiconductor
19 company.  <u>Ernst</u>, 641 F.3d at 1093. As a result of that scheme,
20 Broadcom issued a Restatement of its financial statements, wherein
21 it "acknowledged that [i]t had improperly accounted for $2.8
22 billion in income, largely due to improper option backdating."  <u>Id.</u>
23 "Additionally, every financial statement, and quarterly and annual
24 report issued during the time period covered by the Restatement,
25 was false and misleading."  <u>Id.</u>  Broadcom therefore "agreed to a
26 civil penalty of $12 million in connection with a SEC [Securities
27 Enforcement Commission] civil securities fraud investigation[.]"
28 <u>Id.</u>

1    Broadcom shareholders then brought a securities fraud action

2  against Ernst & Young ("EY"), Broadcom's outside auditors, for

3  "fraudulent accounting practice, alleging they caused Broadcom's

4  stock price to be artificially inflated." Id. at 1092-1093.

5  Plaintiff alleged that EY "knew of, or recklessly disregarded,

6  Broadcom's fraudulent backdating actions yet issued unqualified

7  audit opinions attesting to the validity of Broadcom's financial

8  statements." Id. at 1092.  The district court dismissed the

9  complaint for failure to adequately plead scienter against EY.

10    Reversing, the Ninth Circuit held that plaintiffs had

11  adequately plead scienter "based on three specific points when EY

12  was faced with circumstances that would compel a reasonable auditor

13  to further investigate and disclose Broadcom's backdating of

14  options[.]" Id. at 1095.  The Ernst Court found the following

15  "factual allegations were each sufficient to support an inference

16  of scienter by EY[:]

17                (1) a large grant of options on May 26, 2000
                  for which EY was given no documentation;
18                (2) options granted in 2001 during a period
                  when Broadcom's compensation committee did
19                not have a quorum due to the death of one of
                  its members; and (3) EY's direct involvement
20                in 2003 with corrective reforms to Broadcom's
                  prior options practices."
21

22  Id.   Thus, the Ernst Court found "a holistic review . . .

23  unnecessary[.]" Id.  Nonetheless, the Court found that "these

24  primary allegations supported an inference of scienter when viewed

25  collectively with other claims that EY received no documentation

26  for many option grants, knew Broadcom's internal controls were

27  weak, and ignored other red flags." Id.

28    Rather than explaining how Ernst constitutes a change in

1  controlling law, plaintiff's motion centers on what it believes are

2  the similarities between the <u>Ernst</u> allegations and the SAC's

3  allegations examined in <u>Apollo III</u>.  Plaintiff asserts, for

4  example, that "[t]he description of Broadcom's restatement was

5  strikingly similar to Apollo's restatement."  Pl.'s Mot. (Doc. 146)

6  at 9:14-15.  Plaintiff likewise claims that "the allegations of

7  falsity[15] contained in the complaint that the [Ninth Circuit][16]

8  upheld . . . were substantially similar to the allegations

9  contained in the SAC at issue here."  <u>Id.</u> at 9:5-8 (citation and

10 footnote omitted) (footnote added).  Given these claimed

11 similarities, and others, in its motion plaintiff argues that

12 "*Ernst confirms* that [it] ha[s] stated a claim arising from

13 Apollo's practices of issuing non-management grants without having

14 actually set a grant date."  <u>Id.</u> at 10:17-18 (citations omitted)

15 (emphasis added).

16      Deeming the foregoing as an argument that <u>Ernst</u> reflects a

17 change in controlling law, defendants' response is three-fold.

18 First, <u>Ernst</u> does not reflect a change in controlling law as that

19 Court was "restat[ing] long standing principles of law," and

20 "appl[ying] precedents that this [c]ourt also applied in" <u>Apollo</u>

21 <u>III</u>.  Apollo Resp. (Doc. 149) at 17:10-12 (citations omitted).

22 Second, <u>Ernst</u> is irrelevant because the issue there was the

23

24      [15]   Actually, the issue in <u>Ernst</u> was the sufficiency of the scienter
   allegations under <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 127
25 S.Ct. 2499, 168 L.Ed.2d 179 (2007), which requires the weighing of competing
   inferences. "[W]hile the scienter and falsity inquiries overlap significantly[,]"
26 <u>Scott v. ZST Digital Networks, Inc.</u>, 2012 WL 538279, at *8 (C.D.Cal. Feb. 14,
   2012), those terms are not completely interchangeable.

27      [16]   Plaintiff actually stated that the "district court" upheld the
   allegations in <u>Ernst</u>. Pl.'s Mot. (Doc. 146) at 9:6.  Obviously plaintiff is
28 mistaken. It was the Ninth Circuit, in reversing the district court's ruling
   granting EY's motions to dismiss, that "upheld" the sufficiency of those
   allegations.

1  sufficiency of scienter allegations against an outside auditor –

2  not, as here, the sufficiency of falsity allegations.  Third, as

3  Apollo put it, <u>Ernst</u> involved "radically different facts" than

4  those which the SAC alleges.  <u>See</u> <u>id.</u> at 16:10.

5      In rejoinder, plaintiff claims that defendants are "wrong that

6  *Ernst* merely applied existing law and cannot be considered new

7  authority."  <u>See</u> Pl.'s Reply (Doc. 150) at 10:21 (citation

8  omitted).  Plaintiff observes that "**Apollo** still cites *Edward J.*

9  *Goodman Life Income Trust v. Jabil Circuit, Inc.*, 595 F. Supp. 2d

10  1253, 1277 (M.D. Fla. 2009) for the proposition that the accounting

11  issues in this action are highly technical."  <u>Id.</u> at 10:22-25

12  (citation omitted) (bold emphasis added).  "Yet," according to

13  plaintiff, *Ernst* "rejects such contentions with respect to

14  determining a measurement date in these circumstances under APB

15  25."  <u>Id.</u> at 10:25-26 (citation omitted).

16      Standing alone, a party citing a case, as Apollo did <u>Jabil</u>, is

17  not, in the slightest, indicative of a change in controlling law.

18  Such a change could be shown if, for example, <u>Apollo III</u> cited

19  <u>Jabil</u> for a proposition which <u>Ernst</u> later overruled.  That is not

20  the situation here, however.  <u>Apollo III</u> cited <u>Jabil</u> once, to

21  "bolster[]" its "conclusion" that the timely filing of Forms 4 by

22  defendants Nelson and Gonzales "negate[d]" an inference of

23  scienter.  <u>See</u> <u>Apollo III</u>, 2011 WL 1253250, at *5.  Hence, in

24  <u>Apollo III</u>, this court's reliance upon <u>Jabil</u> had nothing to do with

25  APB 25.  Plaintiff has, therefore, utterly failed to show how <u>Ernst</u>

26  resulted in a change in controlling law based upon the foregoing.

27      Further, even if, as plaintiff describes it, <u>Ernst</u> is "one of

28  the only decisions from the Ninth Circuit specifically addressing

1    allegations of stock option backdating, and *provid*[*ing*] *guidance*

2    regarding such claims which at best had only been previously

3    discussed by district courts in this Circuit[,]"  Pl.'s Reply (Doc.

4    150) at 10:27-12:2 (emphasis added), that is not equivalent to a

5    change in controlling law.  "[P]roviding guidance" is far afield

6    from generally or substantively altering existing law, or creating

7    a significant analytical shift in the law.

8         Plaintiff's discussion of <u>Ernst</u> was a continual effort to draw

9    similarities between the allegations in that case and those in the

10   SAC.  That discussion did nothing to advance plaintiff's argument

11   that <u>Ernst</u> constitutes a controlling change in law.  Trying to draw

12   factual similarities between two cases is a very different analysis

13   than explaining why a case amounts to a change in controlling law.

14   That latter analysis is wholly missing here.  As with <u>Finisar III</u>,

15   plaintiff thus has not met its burden of establishing that <u>Ernst</u>

16   amounts to a change in controlling law.  This finding renders moot

17   defendants' assertions that <u>Ernst</u> also is factually and legally

18   irrelevant.

19        In short, plaintiff did not meet its burden of proof in

20   showing that either <u>Finisar III</u> or <u>Ernst</u> constituted a change in

21   controlling law so as to warrant setting aside the judgment in this

22   case.

23              ***2.  "Manifestly Erroneous" and "Clear Error"***

24        Here, the plaintiff also is seeking relief from the judgment

25   asserting: (1) it was "manifestly erroneous" to dismiss certain

26   false statements, Mot. (Doc. 146) at 11:21 (emphasis omitted); and

27   (2) the court "committed clear error" in denying amendment of the

28   SAC.   Reply (Doc. 150) at 13:18.  Manifest error is, effectively,

1  clear error.  See Ybarra v. McDaniel, 656 F.3d 984, 998 (9th Cir.
2  2011) (internal quotation marks and citation omitted)("A rule 59(e)
3  motion may be granted if[,] [for example,] . . . the district court
4  committed clear error or made an initial decision that was
5  manifestly unjust[.]").  So the same standards govern these
6  remaining two aspects of plaintiff's motion.
7       The difficulty lies, however, in the lack of a definition of
8  clear error for Rule 59(e) purposes in the Ninth Circuit.  Campion
9  v. Old Republic Home Protection Co., 2011 WL 1935967, at *1
10 (S.D.Cal. May 20, 2011).  The Ninth Circuit is not alone; "[c]ourts
11 have generally not defined what constitutes 'clear error' under
12 [that] Rule[.]"  Pet Food Express Limited v. Royal Canin USA, Inc.,
13 2011 WL 6140874, at *4 (N.D.Cal. Dec. 8, 2011) (internal quotation
14 marks and citation omitted).  Given that lack of definition, as in
15 Campion and Pet Food Express, courts routinely look to the "clearly
16 erroneous" standard invoked in the context of the law of the case
17 doctrine.  In that context, "'clearly erroneous' is a very exacting
18 standard[,]'"  Campion, 2011 WL 1935967, at *1 (quoting Hopwood v.
19 Texas, 236 F.3d 256, 273 (5th Cir. 2000) (citation omitted)), such
20 that "a court should have a clear conviction of error."  Pet Food
21 Express, 2011 WL 6140874, at *4 (internal quotation marks and
22 citation omitted).  Thus, "'[m]ere doubts or disagreement about the
23 wisdom of a prior decision of this or a lower court will not
24 suffice[.]'"  Campion, 2011 WL 1935967, at *1 (quoting Hopwood, 236
25 F.3d at 273 (citation omitted)).  "'To be clearly erroneous, a
26 decision must strike [a court] as more than just maybe or probably
27 wrong; it must be dead wrong.'"  Id.
28      Within the Ninth Circuit, courts also have looked to Black's

1  Law Dictionary, stating that "[a] manifest error of fact or law
2  must be one 'that is plain and indisputable, and that amounts to a
3  complete disregard of the controlling law or the credible evidence
4  in the record.'" See, e.g. In re Wahlin, 2011 WL 1063196, at *2
5  (Bankr.D. Idaho March 21, 2011) (quoting In re Oak Park Calabasas
6  Condo. Ass'n, 302 B.R. 682, 683 (Bankr.C.D.Cal. 2003); quoting in
7  turn Black's Law Dictionary 563 (7ᵗʰ ed. 1999)).  This definition
8  comports with the Seventh Circuit's "high standard for a party
9  filing a motion for reconsideration on the basis of error[.]"
10 Campion, 2011 WL 1935967, at *1.  In that Circuit, "the movant must
11 demonstrate a wholesale disregard, misapplication, or failure to
12 recognize controlling precedent."  Id. (citation and internal
13 quotation marks omitted).  By the same token, "manifest error of
14 law is not merely a party's disagreement with how the trial court
15 applied the law."  In re Wahlin, 2011 WL 1063196, at *2.  Nor is
16 "[m]anifest error . . . demonstrated by the disappointment of the
17 losing party."  Id.  (Citations and internal quotation marks
18 omitted).

19     With these standards firmly in mind, the court will first
20 discuss whether, as plaintiff contends, it was "manifestly
21 erroneous" for this court to dismiss certain allegedly false and
22 misleading statements in Apollo I.

23               ***a.  APB 25, IRS Code § 162(m) & SOx Certifications***
24     For a number of the SAC's allegedly false and misleading
25 statements, including those pertaining to compliance with IRS Code
26 § 162(m) and APB No. 25, and the SOx certifications (Nos. 36-48),
27 the Restatement was the sole basis for pleading falsity.  See
28 Apollo III, 2011 WL 1253250, at *27.  Dismissing the foregoing

1  statements, among others, for failing to plead falsity with the

2  requisite particularity, this court concluded:

3                    The SAC's reliance on the Restatement does
                     not provide the necessary particularity because

4                    it does not draw a specific nexus between the
                     allegedly fraudulent statement and the facts upon

5                    which the allegation of fraud is dependent[,]
                     *i.e.* the Restatement, or, at least, a clear

6                    statement of why and how the plaintiff has reached
                     the conclusion that a particular statement is

7                    fraudulent. . . . Even if the SAC provided that
                     missing link, it still could not withstand these

8                    dismissal motions because in relying upon the
                     Restatement as a basis for falsity, the SAC does

9                    not always comport with the Restatement.

10 Id. (internal quotation marks and citation omitted).  Plaintiff

11 argues that dismissal of false statements 36-48 on that basis "was

12 manifestly erroneous[,]" but it does not identify any specific

13 error, let alone a manifest or clear error.  See Pl.'s Mot. (Doc.

14 146) at 11:25-26 (citations omitted).  Instead, plaintiff first

15 urges this court to reach a different result by examining three

16 paragraphs in the SAC, "coupled" with what it terms the "compelling

17 allegations of . . . scienter that the Court found sufficient in"

18 Apollo I.  Id. at 12:3-4.

19      Plaintiff's suggested approach has two significant

20 shortcomings.  First, this is a thinly veiled attempt "'asking the

21 court to rethink what it ha[s] already thought through – rightly or

22 wrongly.'"  See Occupy Fresno v. County of Fresno, 2011 WL 6066500,

23 at *1 (E.D.Cal. 2011) (quoting United States v. Rezzonico, 32

24 F.Supp.2d 1112, 1116 (D.Ariz. 1998) (other quotation marks and

25 citation omitted)).  The court declines to do so.

26      Second, the issue of the falsity of such statements was

27

28

1  briefed by the parties and examined in <u>Apollo III</u>.[17]  Plaintiff did

2  not like the outcome in <u>Apollo III</u>; now, it is seeking a different

3  one.  However, manifest error is not "demonstrated by the

4  disappointment of the losing party."   <u>In re Wahlin</u>, 2011 WL

5  1063196, at *2 <u>Id.</u> (citations and internal quotation marks

6  omitted).  Further, as this court has previously stated, "a motion

7  for reconsideration is not designed merely to provide a

8  dissatisfied litigant with additional opportunity to sway the

9  Court."  <u>Hassayampa Steering Committee v. Arizona</u>, 1991 WL 71769,

10  at *1 (D.Ariz. March 26, 1991) (citation omitted), <u>aff'd without</u>

11  _____

12      [17]    Plaintiff states that <u>Apollo III</u> dismissed the allegedly false and
13  misleading statements pertaining to APB 25, IRC § 162(m) and the false SOx
    certifications "with one line, implying that because it found . . . plaintiff's
    allegations of falsity insufficient with respect to Apollo's financial statements,
14  allegations with respect to  APB 25, IRC § sec. 162(m) and false SOx certifications
    must also necessarily fail."  Reply (Doc. 150)  at 11:20-23  (citation omitted).
15  That is an accurate  statement, but to the extent it gives the impression that
    <u>Apollo III</u> did not adequately consider those types of false statements, the court
16  disagrees.  The "impl[ication]" was strong and patently obvious, given the analysis
    preceding the dismissal line, as the following excerpt shows:

17              The SAC's broad, conclusory allegations that Apollo
18          overstated its net income and understated its compensation
            expenses as a result of granting stock options below the
            fair market value of Apollo's common stock on the date of
19          the grant do not satisfy the exacting pleading standards
            of the PSLRA and Rule 9(b). The SAC's reliance on the
20          Restatement does not provide the necessary particularity
            because it does not 'draw a specific nexus between the
            allegedly fraudulent statement and the facts upon which the
21          allegation of fraud is dependent[,]' i.e. the Restatement,
            'or, at least, a clear statement of why and how the plaintiff
22          has reached the conclusion that a particular statement is
            fraudulent.' See Ferro, 2007 WL 1691358, at *19 (citation,
23          internal quotation marks and emphasis omitted). Even
            if the SAC provided that missing link, it still
24          could not withstand these dismissal motions because
            in relying upon the Restatement as a basis for falsity,
            the SAC does not always comport with the Restatement.
25          Consequently, the court grants defendants' motions to dismiss
            insofar as it is predicated upon those false and misleading
26          statements where the Restatement is the sole basis for pleading
            falsity . . . . That includes the allegations pertaining to
27          compliance with IRS Code § 162(m) and APB No. 25,
            and the SOx certifications. . . .

28  <u>Apollo III</u>, 2011 WL 1253250, at *27 (citations omitted).

1   pub'd opinion, 942 F.2d 791 (9ᵗʰ Cir. 1991).  Additionally, simply

2   stating, as plaintiff does, that a given finding was "manifestly

3   erroneous," does not make it so.

4        Plaintiff devotes the remainder of its argument regarding the

5   dismissal of certain false and misleading statements to discussing

6   Glazer Capital, 594 F.3d 736.  Plaintiff maintains that that case

7   "illustrates" that "defendants' SOx certifications and their

8   statements regarding [Apollo's] compliance with APB 25 and IRS

9   § 162(m)[] . . . were pled with the requisite particularity."

10  Pl.'s Mot. (Doc. 146) at 12:24.  Plaintiff strenuously contends

11  that "[t]he allegations with respect to defendants' compliance with

12  APB 25 and IRC § 162(m) are **far stronger** than plaintiff's

13  allegations in *Glazer*."  Pl.'s Reply (Doc. 150) at 12:11-12

14  (emphasis in original).

15       Notably, plaintiff cited to Glazer in its opposition to

16  defendants' motion to dismiss the SAC, but for a different

17  proposition than it now does.  At that time, plaintiff accused

18  defendants of "confusing falsity and scienter" – a "tactic[] . . .

19  rejected" in Glazer).  Pl.'s Omnibus Opp'n to Defs.' Motions to

20  Dismiss the SAC (Doc. 129) at 21:9-11 (citation omitted). Thus,

21  obviously plaintiff was aware of Glazer in opposing defendants'

22  motions to dismiss the SAC.  And even though, as plaintiff now

23  contends, Glazer Capital "provides a clear example of how simple

24  [a] task [it] can be" to satisfy the PSLRA's heightened pleading

25  standards as to falsity, Pl.'s Mot. (Doc. 146) at 12:24, plaintiff

26  did not make that argument until this motion to alter or amend the

27  judgment.

28       "It is not the purpose of allowing motions for reconsideration

1  to enable a party to complete presenting his case after the court

2  has ruled against him[,]" yet that is precisely what plaintiff is

3  attempting here by belatedly relying upon <u>Glazer Capital</u> to support

4  upholding certain false and misleading statements in the SAC.  <u>See</u>

5  <u>Frietsch v. Refco, Inc.</u>, 56 F.3d 825, 828 (7th Cir. 1995).  Further,

6  plaintiff is improperly using this motion to "raise arguments or

7  present evidence for the first time when they could reasonably have

8  been raised earlier in the litigation." <u>See</u> <u>Marlyn Nutraceuticals</u>,

9  571 F.3d at 877 (quoting <u>Kona Enterprises</u>, 229 F.3d at 890).  Were

10 this court to countenance allowing amendment where, as here,

11 plaintiff has done nothing more than "request" leave to amend

12 without providing any factual or legal justification whatsoever,

13 compounded by not submitting a proposed amended complaint, "*some*

14 *lawsuits might never end, rather than just seeming endless.*"  <u>See</u>

15 <u>Frietsch</u>, 56 F.3d at 828 (Posner, J.) (emphasis added).

16                **<u>b.  Leave to File Motion to Amend</u>**

17      In the last part of this motion plaintiff argues that this

18 court committed clear error by not giving it "an opportunity to

19 amend the [SAC] prior to dismiss[al] . . . with prejudice" in

20 <u>Apollo III</u>.  Pl.'s Mot. (Doc. 146) at 13:16-17 (emphasis omitted).

21 Hence, plaintiff is seeking to have the judgment reopened and

22 modified pursuant to Rule 59(e) to allow it to "file a motion to

23 amend the [SAC] to cure any defects still remaining[.]"  <u>Id.</u> at

24 18:1-2.  The defendants raise three procedural challenges to this

25 aspect of plaintiff's motion -- all of which can be readily

26 disposed of before turning to the merits.

27               ***<u>i.  "Jurisdiction"</u>***

28      Stressing that this "[m]otion *is* a motion for leave to amend,

1  the defendants assert that the court "lacks jurisdiction to

2  entertain" such a motion "if it denies the Rule 59(e) motion[.]"

3  Defs.' Resp. (Doc. 148) at 17:28 (emphasis in original); and 17:18.

4  In <u>Lindauer v. Rogers</u>, 91 F.3d 1355 (9th Cir. 1996), the Ninth

5  Circuit "adopted the requirement that, once judgment has been

6  entered in a case, a motion to amend the complaint can only be

7  entertained if the judgment is first reopened under a motion

8  brought under Rule 59 or 60." <u>Id.</u> at 1357.  The defendants contend

9  that the <u>Lindauer</u> "requirement" effectively bars the amendment

10  aspect of plaintiff's Rule 59(e) motion.

11      The defendants misapprehend the nature and scope of the

12  current motion, however.[18]  Plaintiff is not arguing that it should

13  be granted leave to amend now.  Rather, plaintiff is claiming that

14  it was clear error in the first instance in <u>Apollo III</u> to dismiss

15  the SAC with prejudice and without permitting amendment.  On that

16  basis, among others, plaintiff is seeking to have the judgment re-

17  opened and modified pursuant to Rule 59(e) to "permit [it] to *file

18  a motion to amend* the [SAC] to cure any defects still remaining."

19  <u>See</u> Reply (Doc. 150) at 13:11-12 (internal quotation marks and

20  citation omitted)(emphasis added).  Accordingly, because

21  plaintiff's motion is not, as the defendants construe it, a motion

22  for leave to amend, <u>Lindauer</u> and its progeny are inapplicable here.

23

24  [18]    To a certain extent, the defendants' misapprehension is understandable, given plaintiff's explicit "request that the Court modify the Order to provide plaintiffs with an *opportunity to replead* their claims[.]" <u>See</u> Pl.'s Mot. (Doc.

25  146) at 13:18-19 (emphasis added).  Immediately thereafter, however, plaintiff does indicate that it will be prepared to file an amended complaint *and* a motion to

26  amend[]" after the resolution of this motion.  <u>Id.</u> at 13:21-22 (emphasis added). Plaintiff echoes that request in concluding its motion.  <u>See</u> <u>id.</u> at 18:1-3.

27  Further, although the defendants could not have known it when they filed their responses, plaintiff's reply reiterates that it is "ask[ing] the Court to grant

28  *this Rule 59(e) motion* so they *may file* a *motion to amend*." Reply (Doc. 150) at 15:18-19 (emphasis added).

1 Thus, as plaintiff frames it, the amendment issue is properly

2 before this court as part of its motion for relief from judgment

3 under Rule 59(e).

4                    ***ii.  Governing Legal Standards***

5     The defendants' second, related argument is that because final

6 judgment has been entered, "Rule 15(a)'s liberal principles do not

7 apply[.]"  Defs.' Resp. (Doc. 148) at 18:6-7 (emphasis omitted).

8 Defendants contend that "Plaintiff must overcome Rule 59(e)'s 'high

9 hurdles' and show" it was "clear error" for this court to deny

10 plaintiff leave to amend in Apollo III.  See id. at 19:1-3 (quoting

11 Weeks v. Bayer, 246 F.3d 1231, 1236 (9th Cir. 2001)).  The

12 defendants' position is well-taken.  In analyzing whether it was

13 clear error to dismiss the SAC with prejudice and without leave to

14 amend, the case law discussed in section 2 above, albeit scant,

15 guides this court's inquiry.  Accord Fannon v. Guidant Corp., 583

16 F.3d 995, 1003-1004 (7th Cir. 2009) (where investors moved to set

17 aside the judgment and for leave to file an amended complaint, Rule

18 59(e) rather than Rule 15(a) standards applied).

19                         ***iii. LRCiv. 5.1***

20     Again characterizing this aspect of plaintiff's motion as one

21 "for leave to amend[,]" the defendants urge "outright" denial

22 "because the Plaintiff, *yet again*, has failed to comply with

23 [LRCiv] 15.1.  Defs.' Resp. (Doc. 148) at 19:7-9 (emphasis added).

24 As this court highlighted in Apollo III when commenting upon

25 plaintiff's failure to provide a proposed amended complaint:

26                [T]hat [Local] Rule requires that if "[a]
                party *moves* for leave to amend," it "*must*
27              attach a copy of the proposed amended
                pleading[,]" and it "*must* indicate in what
28              respect it differs from the pleading which
                it amends, by bracketing or striking through

                              - 40 -

1                     the text to be deleted and underlining the

2                     text to be added.

3 <u>Apollo III</u>, 2011 WL 1253250, at *37 n. 28 (emphasis added in <u>Apollo</u>

4 <u>III</u>).  At the risk of repetition, in the pending Rule 59(e) motion,

5 plaintiff is not moving to amend the SAC.  That is the relief which

6 it desires in moving to reopen the judgment; it wants to be able to

7 file such a motion.  Thus, because at this juncture plaintiff is

8 not moving to amend the SAC, the lack of a proposed amended

9 complaint is not fatal to its Rule 59(e) motion.

10                   ***iv.  "Clear Error"***

11       Having found no procedural barriers to the amendment aspect

12 of plaintiff's motion, the court is now free to address the merits.

13 In its reply,[19] plaintiff asserts that this court "committed clear

14 error by failing to follow leading precedents on leave to amend[,]

15 *i.e.*, <u>Eminence Capital, L.L.C. v. Aspeon, Inc.</u>, 316 F.3d 1048, 1052

16 (9th Cir. 2003), and <u>Foman v. Davis</u>, 371 U.S. 178, 83 S.Ct. 227,

17 9 L.Ed.2d 222 (1962).  Reply (Doc. 150) at 13:18-19.  More

18 specifically, plaintiff asserts that it was clear error to deny

19 amendment based upon "a finding that amendment would be futile[,]"

20 and this court's prior warning that plaintiff's claims "could be

21 dismissed if not properly pled on amendment[] . . . without

22 discussing *Eminence* or the *Foman* factors."  Mot. (Doc. 146) at

23 14:21-25.  Plaintiff also argues that "[a]mendment would not be

24

25         [19]  Once again disregarding the standards for relief under Rule 59(e),

26 plaintiff claims that <u>Apollo III</u>'s amendment analysis was "*inconsistent* with Ninth Circuit law[,]" and that "denial of leave to amend was *inappropriate*."  See Pl.'s

27 Mot. (Doc. 146) at 14:25; and at 15:21 (emphasis added).  As earlier discussed, however, to obtain the "extraordinary remedy" of amending a judgment under that

28 Rule, <u>Herron</u>, 634 F.3d at 111 (citation and internal quotation marks omitted), requires a much more stringent showing, which, as indicated above, plaintiff did recognize in its reply.

1  futile because [it] can . . . address the deficiencies identified

2  in [Apollo III][.]" Id. at 14:25-26 (bold emphasis omitted).

3  Plaintiff advances that argument another step in its reply.  Based

4  upon the DTAC, belatedly attached thereto,  plaintiff claims that

5  now it can "demonstrate that leave to amend would not be futile[.]"

6  See Reply (Doc. 150) at 14:24, n. 2; 13:1-2 (emphasis added).

7      Defendants counter that plaintiff cannot show clear error

8  given a district court's "particularly broad" discretion to deny

9  leave to amend where "the plaintiff has previously been granted

10  leave to amend and has subsequently failed to add the requisite

11  particularity to its claims[.]" See Zucco Partners, 552 F.3d at

12  1007 (internal quotation marks and citations omitted).

13  Additionally, they argue that the court properly dismissed the SAC

14  with prejudice because plaintiff did not set forth any facts that

15  could cure the SAC's deficiencies.  Further, defendants dispute

16  plaintiff's assertion that it can "correct any discrepancies and

17  inconsistencies between the [SAC]'s allegations and the accounting

18  errors admitted as part of Apollo's restatement[.]" See Mot. (Doc.

19  146) at 16:11-13.  Based upon certain findings in Apollo III,[20]

20  defendants contend that the inconsistencies which Apollo III

21  identified are "incurable[.]"  Defs.' Resp. (Doc. 148) at 22:1.

22  Finally, plaintiff cannot show clear error, from defendants'

23  standpoint, because there is Ninth Circuit precedent affirming

24  denial of leave to amend a SAC after one amendment as a matter of

25  course, and one dismissal with prejudice.  See Zucco Partners, 552

26  F.3d at 1007.

27      Before delving into these arguments, a fairly close

28

[20]    See Defs.' Resp. (Doc. 148) at 16:19-22:5

1  examination of how the issue of amendment arose in <u>Apollo III</u>, and

2  this court's reasoning is necessary.   In opposing defendants'

3  motions to dismiss the SAC, in the last sentence of plaintiff's

4  opposition, it merely stated: "Should the Court grant any portion

5  of defendants' motions to dismiss, . . . plaintiff respectfully

6  *requests* leave to amend."   Pl.'s Resp. (Doc. 129) at 39:20-22

7  (emphasis added).   That single sentence was the only mention of

8  amendment in plaintiff's opposition.   Plaintiff did not proffer any

9  reasons whatsoever as to why it should be allowed to amend its

10 complaint after having been given the opportunity to do so once as

11 a matter of right in <u>Apollo I</u>.   Plaintiff claims that defendants

12 did not "oppose" that request, Mot. (Doc. 146) at 13:20, but

13 actually their replies were silent on the amendment issue.   <u>See</u>

14 <u>Apollo III</u>, 2011 WL 1253250, at *36.

15      In considering plaintiff's "perfunctor[]y 'request[]'" for

16 leave to amend, this court found that "'request' . . . a somewhat

17 telling, although not entirely dispositive, distinction."   <u>Id.</u> at

18 *37 n. 28.   Giving plaintiff considerable leeway,[21] this court also

19 found that "[b]ecause plaintiff sought leave to amend in the form

20 of a request arguably it was not required to attach a proposed

21 amended complaint or otherwise comply with the dictates of LRCiv

22 15.1."   <u>Id.</u>   This court raised the possibility, however, that

23 "plaintiff made th[at]'request' as a means of circumventing that

24 Local Rule and because it does not have any additional facts."   <u>Id.</u>

25 "Otherwise, surely plaintiff would have brought them to the

26 _____

27      [21]      The court just as easily could have deemed plaintiff's "request" to be
a motion and denied it for non-compliance with LRCiv 15.1, leaving plaintiff with
28 little recourse in terms of amendment.

1  attention of the court and defendants[,]" this court reasoned.  <u>Id.</u>

2       In <u>Apollo III</u>, this court reiterated that in previously

3  allowing amendment, it had "explained that '[t]he pleading

4  deficiencies in the FAC did not lie in the raw content of the FAC,

5  but in the absence of rigorously particularized allegations in

6  accordance with the PSLRA.'" <u>Apollo III</u>, 2011 WL 1253250, at *36

7  (quoting <u>Apollo I</u>, 633 F.Supp.2d at 832) (other citations and

8  internal quotation marks omitted).  Further, this court commented

9  that earlier it had "expressly 'advised' plaintiff 'that failure to

10 cure the pleading deficiencies identified therein, *and* failure to

11 comply with the relevant case law in that regard, *may well lead to*

12 *dismissal* of these claims *in the future*." <u>Id.</u> (quoting <u>Apollo I</u>,

13 633 F.Supp.2d at 832) (emphasis added by <u>Apollo III</u> court).

14 Moreover, well before <u>Apollo III</u>, in its motion to reconsider

15 <u>Apollo I</u>, filed on April 2, 2009, plaintiff had explicitly

16 "acknowledged that it [was] [m]indful that [*Apollo I*] required [it]

17 to amend [its] Complaint to more particularly allege[ ] . . .

18 falsity[.]" <u>Id.</u> (citations and internal quotation marks omitted).

19 "Nonetheless, even after amendment, as thoroughly discussed [in

20 <u>Apollo III</u>], the hallmark of the SAC [wa]s, *still*, the absence of

21 rigorously particularized allegations in accordance with the

22 PSLRA[] and Rule 9(b)." <u>Id.</u> (citation and internal quotation marks

23 omitted) (emphasis added).

24      In light of that history, in <u>Apollo III</u>, the court started

25 with this settled proposition: "[W]here the plaintiff has

26 previously been granted leave to amend and has subsequently failed

27 to add the requisite particularity to its claims, [t]he district

28 court's discretion to deny leave to amend is particularly broad.'"

1  Id. (quoting Zucco Partners, 552 F.3d at 1007 (citations and

2  internal quotation marks omitted)).  This court further noted the

3  Ninth Circuit's "repeated[] recogni[tion]" that a plaintiff's

4  failure "to correct the deficiencies in its [FAC] is 'a strong

5  indication that the plaintiffs have no additional facts to plead.'"

6  Id. (quoting In re Vantive Corp. Sec. Litig., 283 F.3d 1079, 1098

7  (9th Cir. 2002)).  "Likewise," this court explained, "[w]here the

8  plaintiff fails to set forth any additional facts that could save

9  the complaint, . . . , dismissal with prejudice is appropriate."

10  Id. (quoting Finisar II, 2009 WL 3072882, at *15[22] (citing, inter

11  alia, In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 991

12  (9th Cir. 1999), abrogated on other grounds, Tellabs, 551 U.S. at

13  322–24, 127 S.Ct. 2499, 168 L.Ed.2d 179)) (footnote added).

14      Applying those principles, in Apollo III, this court

15  enumerated the following reasons for dismissing the SAC with

16  prejudice and without leave to renew.  First, "[p]laintiff ha[d]

17  been given the opportunity to amend once, following a fairly

18  comprehensive analysis of the FAC's deficiencies and overall

19  weaknesses."  Id. at *37.  Second, "[t]he SAC did not correct those

20  deficiencies; nor [did] plaintiff offer[] any additional facts in

21  its response that could be alleged in a third amended complaint,

22  and that would save the SAC from dismissal with prejudice."  Id.

23  (footnote and citation omitted).  Third, "in contrast to many

24  securities fraud cases, plaintiff's allegations herein are not

25  based upon the statements of confidential witnesses and/or

26  employees and former employees[.]" Id. (citation and internal

27  quotation marks omitted).  "Therefore, . . . it is difficult to

28

---

[22]      The Ninth Circuit did reverse Finisar II, but not on this basis.

1   imagine what additional facts Plaintiff could allege to satisfy the
2   strict pleading requirements of the PSLRA and Rule 9(b)."  _Id._
3   (citation and internal quotation marks omitted).  Fourth, the court
4   observed that plaintiff was "represented by experienced counsel who
5   routinely practice in the area of securities class action
6   litigation, were given an adequate opportunity to file an amended
7   complaint addressing this court's concerns in _Apollo I_, and
8   satisfying the governing pleading standards as developed in the
9   applicable case law."  _Id._ (footnote omitted).  "Plaintiff did not
10  avail itself of that opportunity[,]" however.  _Id._

11      Plaintiff has not satisfied the stringent standards for
12  establishing clear error on this record for a variety of reasons.
13   First, the Ninth Circuit grants courts "particularly broad
14  discretion," to deny leave to amend "[w]here the plaintiff has
15  previously been granted leave to amend and has subsequently failed
16  to add the requisite particularity to the claims[.]" _Zucco_
17  _Partners_, 552 F.3d at 1007; quoting in turn _In re Read-Rite Corp._,
18  335 F.3d 843, 845 (9th Cir. 2003); quoting in turn _Vantive_, 283 F.3d
19  at 1097-98).  That was the situation in _Apollo III_.

20      This court found In _Apollo I_ that the FAC did "not satisfy the
21  heightened pleading standards for fraud under either Rule 9(b) or
22  the PSLRA[,]" due to a number of pleading irregularities outlined
23  therein.  _Apollo I_, 633 F.Supp.2d at 786.  Rather then "tak[ing]
24  the drastic step of dismissal based on . . . form[,]" the court
25  "require[d] . . . plaintiff to streamline and reorganize the
26  complaint before allowing it to serve as the document controlling
27  discovery."  _Id._ (citation and internal quotation marks omitted).
28  The court instructed plaintiff, to "be clear and concise in

1  identifying the false statements and articulating the factual

2  allegations supporting an inference that the statement is false or

3  misleading." Id. at 786-787 (citation and internal quotation marks

4  omitted).  Plaintiff attempted to do that, but as Apollo III

5  comprehensively discussed, "[t]he SAC's changes in form only

6  highlight[ed] [its] substantive deficiencies . . . , revealing that

7  it does not plead falsity with the requisite degree of

8  particularity." Apollo III, 2011 WL 1253250, at *18.

9      Plaintiff disregards that "particularly broad discretion," as

10  well as Apollo III's rationale.  Plaintiff focuses instead on the

11  fact that in Apollo III this court did not "discuss[] the Foman

12  factors[,][23]" or Eminence Capital, as it did in Apollo I.[24]  Mot.

13  (Doc. 146) at 14:21.  With respect to the Foman factors, plaintiff

14  implies that a court has no latitude at all and must always discuss

15  those factors when faced with the issue of amendment.  In Eminence

16  Capital, the Ninth Circuit did reiterate, "[a] district court's

17  failure to consider the relevant factors and articulate why

18  dismissal should be with prejudice instead of without prejudice *may*

19  constitute an abuse of discretion." Eminence Capital, 316 F.3d at

20  1053 (citations omitted) (emphasis added).  Given that permissive

21  language, the court does not read Ninth Circuit case law as

22  restrictively as plaintiff does.  That is especially so where, as

23  here, experienced counsel, fully aware of the PSLRA's rigorous

24  pleading standards, in effect, chose to "roll the dice."  They did

25

26      [23]    In Foman, the Supreme Court enumerated factors which may justify
27  dismissal without granting leave to amend: undue delay, bad faith, repeated failure
   to cure deficiencies by previous amendments, undue prejudice and futility. Foman,
   371 U.S. at 182, 83 S.Ct. 227.

28      [24]    See Apollo I, 633 F.Supp.2d at 831-832.

1   that by off-handedly requesting leave to amend without providing
2   any legal or factual justification whatsoever.   Cf. James Cape &
3   Sons Co. v. PCC Cost. Co., 453 F.3d 396, 401 (7th Cir. 2006) (no
4   abuse of discretion in dismissal with prejudice where, even
5   construing plaintiff's "expressed . . . intention to 'describe in
6   even greater detail the damages it suffered[]' . . . in the
7   penultimate paragraph of its response to defendants' motion to
8   dismiss[]" as a "proper[] mo[tion] to amend," the district court
9   "had no way of knowing what the proposed amendment entailed[]").
10  Compounding those omissions was that plaintiff sought amendment in
11  the form of a "request," seemingly, it now appears, to circumvent
12  LRCiv. 15.1's requirement of submitting a proposed amended
13  complaint, showing "in what respects it differs from the pleading
14  which it amends[.]" See LRCiv 15.1.

15      While claiming that it was clear error not to discuss the
16  Foman factors in Apollo III, at the same time, plaintiff readily
17  concedes that one of the Foman factors – futility – was a basis for
18  denying leave to amend.   Id. at 14:21-22 (citation omitted) ("[T]he
19  Court refused to grant leave to amend based on . . . a finding that
20  amendment would be futile[.]")   This concession weakens plaintiff's
21  contention that Apollo III's "'failure to consider the relevant
22  factors' (Eminence Capital, 316 F.3d at 1052) is 'clear error'
23  requiring the altering of the judgment under Rule 59(e)[.]" Reply
24  (Doc. 150) at 11-13 (other citation omitted).

25      Further weakening plaintiff's position is the fact that, in
26  accordance with Foman, there were both "apparent [and] declared
27  reason[s]" for denying amendment, as the earlier discussion of
28  amendment in Apollo III shows.   See Foman 371 U.S. at 182, 83 S.Ct.

1   227.  In <u>Foman</u> either "apparent <i>or</i> declared reason[s]" must be

2   given for denying amendment; so either would suffice, but here

3   there were both.  <u>See</u> <u>id.</u> (emphasis added).  The "declared reasons"

4   were previously enumerated.  The "apparent reasons" – particularly

5   futility – can be gleaned from the <u>Apollo III</u> analysis.  Therefore,

6   plaintiff has not met the "very exacting standard" of showing clear

7   error due to the fact that <u>Apollo III</u> did not expressly discuss the

8   <u>Foman</u> factors.

9        Plaintiff's argument that it was clear error not to "discuss,"

10  "address," or "follow" <u>Eminence Capital</u>" in <u>Apollo III</u> is equally

11  unpersuasive.[25]  <u>See</u> Mot. (Doc. 146) at 14:22; Reply (Doc. 150) at

12  13:26.  The apparent basis for this argument is the Court's

13  realization in <u>Eminence Capital</u> that because of the difficulty in

14  establishing a "bright-line" rule for pleading securities fraud,

15  "[a]dherence to th[e] principle[]" of "extreme liberality" in grant

16  of leave to amend "is especially important in the context of the

17  PSLRA."  <u>Eminence Capital</u>, 361 F.3d at 1052; and 1051 (citations

18  and internal quotation marks omitted).  Consistent with that view,

19  the Ninth Circuit held that a district court's denial of leave to

20  amend in a securities fraud action was an abuse of discretion.

21       There was no clear error in <u>Apollo III</u> by not "<i>follow</i>[<i>ing</i>]

22  <u>Eminence Capital</u>, however.  <u>See</u> Reply (Doc. 150) at 13:26 (emphasis

23  added).  That is because, <i>inter alia</i>, there is one critical factual

24  distinction between that case and the record before this court in

25  <u>Apollo III</u>.  There, in "defend[ing] the dismissal with

26  prejudice[,]" plaintiffs advised the district court "that the

27

28       [25]    In <u>Apollo I</u>, this court did discuss <u>Eminence Capital</u> in some depth.
         <u>See</u> <u>Apollo I</u>, 633 F.Supp. at 831-832.

1  special committee will release a report that will provide all the

2  requisite details [required to plead a case under PSLRA]."

3  Eminence Capital, 316 F.3d at 1053 ((internal quotation marks

4  omitted).  When considering whether to grant plaintiff's one line

5  "request" for leave to amend in Apollo III, plaintiff did not make

6  a similar "proffer that additional evidence was forthcoming which

7  would enable them to add necessary details to their [SAC]."  See

8  id.  Plaintiff did nothing.  Thus, it has not shown that it was

9  clear error for this court not to "follow" Eminence Capital.

10 Likewise, given that important factual distinction, the court fails

11 to see how it could be clear error to neither "discuss" nor

12 "address" Eminence Capital.  It is difficult to conceive of a

13 situation, like the present one, where a plaintiff can avail itself

14 of the relatively liberal amendment standards set forth in Eminence

15 Capital, while simultaneously making no effort to show why it

16 should be allowed to amend its complaint, and circumventing the

17 Local Rules by not submitting a proposed amended complaint.

18     Plaintiff also is unable to establish clear error for another

19 reason – its failure to come forward, when requesting leave to

20 amend, with any additional facts to satisfy the PSLRA's pleading

21 requirements.  DSAM Global Value Fund v. Altris Software, Inc., 288

22 F.3d 385 (9th Cir. 2002), is illustrative of how that can be fatal

23 when seeking leave to amend for a second time.  In DSAM Global, the

24 district court dismissed the FAC with leave to amend because

25 plaintiff failed to properly plead scienter under the PSLRA.  After

26 plaintiffs filed their SAC, finding that amendment would be futile,

27 the district court dismissed it "for the same reason but this time

28 without leave to further amend."  Id. at 388.  Affirming that

1  dismissal without leave to amend, the Ninth Circuit reasoned that
2  plaintiff had "conducted extensive factual investigation, ha[d] all
3  of the necessary documents, and . . . failed to come forward with
4  additional facts that would meet the scienter pleading
5  requirements.  Id. at 391; see also Silicon Graphics, 183 F.3d at
6  991 ("appropriate" to dismiss with prejudice a derivative action
7  where plaintiff "failed to set forth any facts which he could add
8  to save his complaint[]").

9      Here, based upon the content of the SAC and its accompanying
10 exhibits, it is reasonable to infer that plaintiff conducted at
11 least a fairly extensive factual investigation.  Likewise, much
12 like DSAM Global, there is nothing to suggest that plaintiff does
13 not have all of the necessary documents, at least with respect to
14 publicly filed documents.  The SAC relies extensively upon such
15 documents and, with two exceptions, all of the 40 exhibits filed
16 with the SAC are public documents.  See SAC Index of Exhibits (Doc.
17 122-1) at 1-3.  Most important, however, is that as in DSAM Global,
18 plaintiff did not include additional facts of any kind to support
19 its cursory request for leave to amend.  That omission was
20 particularly glaring in the absence of a proposed amended
21 complaint.  As this court reasoned in Apollo III, when noting the
22 absence of a proposed draft complaint, perhaps plaintiff "does not
23 have any additional facts[;] [o]therwise, surely plaintiff would
24 have brought them to the attention of the court and defendants."
25 Apollo III, 2011 WL 1253250, at *37 n. 28 (emphasis added).  In
26 that respect this case is not unlike Vantive, where the Ninth
27 Circuit found it was "not unreasonable for the district court to
28 conclude that it would be pointless to give the plaintiffs . . .

- 51 -

1  another chance to amend[]" where, for one thing, they "declined to

2  say what additional facts they might plead if given the chance to

3  amend." Vantive, 283 F.3d at 1097-1098.

4      For all of the reasons discussed above, plaintiff, as the

5  party seeking to reopen the judgment, has not met the "very

6  exacting standard" of showing clear error with respect to this

7  court's denial of its request to amend in Apollo III. See Campion,

8  2011 WL 1935967, at *1 (citation and internal quotation marks

9  omitted).

10     Plaintiff is trying to rectify this serious omission, by

11 claiming, as earlier stated, "[t]hat amendment would not be futile

12 because [it] can . . . address the deficiencies identified in

13 [Apollo III[.]" See Mot. (Doc. 146) at 14:25-26 (emphasis omitted).

14 Plaintiff would do that "by submitting an amended complaint which"

15 would supposedly:

16              (i) correct[] any 'discrepancies and inconsistencies'
                between the [SAC's] allegation and the accounting
17              errors admitted as part of Apollo's restatement on
                which plaintiffs rely; (ii) provide[] a more detailed
18              explanation of how Apollo's restatement supports their
                allegations of falsity and fraud; (iii) further
19              describe[] how defendants' false accounting for options
                backdating led to the errors in Apollo's financial
20              statements; (iv) explain[] in more detail how such
                practices clearly violated the applicable accounting
21              rules; (v) include[] additional financial analysis
                of the stock option grants issued by Apollo consistent
22              with those pled and approved by the Ninth Circuit
                in Finisar III; and (vi) plead[] additional facts
23              sufficient to respond to the Court' findings with
                respect to other false statements alleged in the
24              complaint.

25 Id. at 16:11-20.  Based upon this list, plaintiff contends that

26 "because it is not clear . . . that the [SAC] would not be saved by

27 any amendment, the Court should modify its judgment to provide

28 plaintiff[] with an opportunity to" do so.  Id. at 16:21-24

1  (citation and internal quotation marks omitted).  As the court

2  construes the foregoing, plaintiff is contending that it was clear

3  error to dismiss the SAC without leave to amend because amendment

4  would not be futile.

5      The flaw in this reasoning is that when this court denied

6  plaintiff's wholly unsupported request to amend, it had just

7  engaged in a comprehensive and detailed analysis of the SAC which,

8  with attached exhibits, was approximately 500 pages.  See Apollo

9  III, 2011 WL 1253250, at *18, n. 15.  In so doing, a number of ways

10 in which both the SAC's backdating allegations and its false and

11 misleading statements were not plead with the requisite degree of

12 particularity were identified and discussed.  As to the backdating

13 allegations, "a critical part of the alleged fraudulent scheme[,]"

14 there was "a culmination of pleading deficiencies . . .

15 compel[ling] the conclusion that the SAC's backdating allegations

16 [we]re not plead with the requisite particularity."  Id. at *17.

17 That was "evidenced by internal inconsistencies, ambiguities, and

18 erroneous and misleading factual allegations which do not comport

19 with Apollo's own stock chart[,]" discussed in depth in Apollo III.

20 Id.[26]

21      Further, "the SAC include[d] precisely th[e] same five grant

22 allegations" as the FAC, "and add[ed] a sixth grant date – October

23 20, 2003."  Id. at *1.  Additionally, there were a "a number of

24 [other] similarities between the FAC and the SAC."  Id. at *2, n.4.

25 As to the October 20, 2003, grants, however, "[t]he ambiguous,

26 inconsistent and sometimes erroneous allegations of th[os]e . . .

27 grants[,]" as discussed in Apollo III, "magnified the court's

28 
_____

[26]    See also Apollo III, 2011 WL 1253250, at *2 – *17.

- 53 -

1  concern, *inter alia*, regarding the factual accuracy of allegations
2  as to th[]e [original] five grant dates." <u>Id.</u> at *12.   In <u>Apollo I</u>
3  the court "accepted at face value the accuracy of the FAC's
4  allegations pertaining to the five grant dates therein[.] <u>Id.</u>   The
5  court could not do that in <u>Apollo III</u> because "the factual
6  inaccuracies in the October 20, 2003 grant allegations mandate[d]
7  closer examination of the other five grant date allegations." <u>Id.</u>
8  The court proceeded to engage in an undeniably tedious analysis
9  revealing the shortcomings as to the original five grant dates.
10 <u>See id.</u> at *13-*17.   In that respect, "plaintiff offer[ed] very
11 little substantively to refute any of defendants' arguments[.]" <u>Id.</u>
12 at *12.

13      The SAC included 54 allegedly false and misleading statements,
14 which the court divided into two categories for analytical
15 purposes.   The starting point for analyzing the accounting
16 statements were "those . . . which undermine[d] rather than
17 advance[d] plaintiff's fraud theory[.]" <u>Id.</u> at *20.   Among other
18 things, for the sake of argument, the court assumed that "Apollo's
19 Restatement [wa]s an admission that certain accounting statements
20 were false when made[.]" <u>Id.</u> at *23.   That assumption could not
21 "cure the SAC's failure to plead falsity with particularity[,]"
22 because:

> 23  The lack of particularity primarily
>      arises from the manner in which the SAC relies
> 24  upon the Restatement. It is not enough to simply
>      allege that a given statement is false and
> 25  misleading and then baldly rely upon a restatement.
>      Rule 9(b) and the PSLRA demand more. That is
> 26  especially so here where the Restatement does
>      not always support the SAC's allegations and,
> 27  on its face, the correlation between the Restatement
>      and the false statements is fairly attenuated.
28

1  Id.  Further, "[a]lthough the form ha[d] changed, plaintiff did not

2  cure what this court previously found to be "[p]erhaps the most

3  troubling aspect of the [FAC] – the vague allegations of deception

4  . . . unaccompanied by a particularized explanation stating why the

5  defendant[s'] alleged statements or omissions [we]re deceitful."

6  Id. at *24 (quoting Apollo I, 633 F.Supp.2d at 786) (other citation

7  and internal quotation marks omitted).  Indeed, "[t]he SAC's

8  changes in form only highlight[ed] the substantive deficiencies of

9  the SAC, . . . revealing that it d[id] not plead falsity with the

10  requisite degree of particularity."  Id. at *18.  From the

11  foregoing, it is apparent why, when confronted with the plaintiff's

12  completely unsupported request for leave to amend, this court

13  "quite reasonably believed that [another] amended complaint would

14  suffer the same fatal flaws as the [SAC][,]" and perhaps the FAC,

15  given the similarities between the two.  See James Cape, 453 F.3d

16  at 401.  Consequently, given the perfunctory nature of plaintiff's

17  request to amend in Apollo III, and the entire record as

18  constituted at that time, this court could not anticipate how the

19  SAC could be saved by further amendment.  Therefore, the court

20  gives no credence to the notion that amendment was not futile.

21  Hence, it was not clear error to dismiss the SAC without leave to

22  amend.

23        As earlier noted, plaintiff's reply claims that its 74 page

24  DTAC, which includes allegations based upon "the services of a

25  leading independent statistical expert on backdating," which

26  plaintiff "retained[,]" DTAC (105-1) at 17:13, ¶ 48, now

27  "demonstrates that leave to amend is not futile[.]" Reply (Doc.

28  150) at 13:1-2 (bold emphasis omitted) (italicized emphasis added).

1  Plaintiff describes that DTAC as "essentially an offer of proof
2  demonstrating that amendment would not clearly be futile[.]"  <u>Id.</u>
3  at 15:1.

4       Quite simply, it is too late in the day for this argument.
5  This is the type of argument and "offer of proof," even if not in
6  the form of a DTAC, which plaintiff should have brought to the
7  court's (and the defendants') attention when requesting leave to
8  amend in opposition to defendants' motion to dismiss the SAC.
9  Plaintiff's failure to do so runs afoul of the Ninth Circuit's
10  well-settled rule that "[a] motion for reconsideration may *not* be
11  used to raise arguments or present evidence for the first time when
12  they could reasonably have been raised earlier in the litigation."
13  <u>See</u> <u>Marlyn Nutraceuticals</u>, 571 F.3d at 877 (case citation and
14  internal quotation marks omitted) (emphasis in original).

15       Before concluding, it is necessary to briefly consider
16  plaintiff's assertion that "standing alone, the Court's warning
17  that claims could be dismissed was not a sufficient basis to
18  warrant denial of leave to amend[.]"  Mot. (Doc. 146) at 16:25-26
19  (emphasis omitted).  The record contradicts this assertion.  The
20  court enunciated four specific reasons for denying the request for
21  leave to amend, set forth herein.  The court's prior "warning" was
22  not a basis for that determination.  Even if plaintiff so construes
23  <u>Apollo III</u>, as is evident, that was not the only reason given.
24  There is, thus, no merit to this assertion.

25       In sum, with respect to the amendment issue, plaintiff has not
26  met the "very exacting standard" necessary to show clear error so
27  as to justify reopening a final judgment pursuant to Fed.R.Civ.P.
28  59(e).  <u>See</u> <u>Campion</u>, 2011 WL 1935967, at *1 (citation and internal

quotation marks omitted).  It has not shown, based upon the entire
record before the court when it denied plaintiff's request for
leave to amend, that the alleged clear error was "one that is plain
and indisputable, and that amounts to a complete disregard of the
controlling law[.]"  *See* In re Wahlin, 2011 WL 1063196, at *2
(citations and internal quotations omitted).  Given the unique
situation facing this court in Apollo III, certainly it was not
"dead wrong" to deny amendment.  *See* Campion, 2011 WL 1935967, at
*1 (quoting Hopwood, 236 F.3d at 273 (citation omitted)).

### *Conclusion*

In moving to reopen and modify the final judgment in this case
pursuant to Fed.R.Civ.P. 59(e), plaintiff endeavored to show that:
(1) Finisar III and Ernst each constituted a change in controlling
law; (2) dismissal of its claims based on defendants' allegedly
false and misleading statement as to APB 25, IRS Code § 162(m) and
the SOx certifications was manifestly erroneous; and (3) denial of
its request for leave to amend was clearly erroneous.  Plaintiff
was unsuccessful.  Because plaintiff has not shown that it is
entitled to the extraordinary remedy of relief under Rule 59(e),
for all of the reasons set forth herein, the court hereby **DENIES**
"Lead Plaintiff's FED.R.CIV.P. 59(e) Motion to Alter or Amend
Judgment" (Doc. 146).

DATED this 30th day of March, 2012.

_____
Robert C. Broomfield
Senior United States District Judge

1

2  Copies to counsel of record

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28